# EXHIBIT A

Page 3

```
 1        UNITED STATES DISTRICT COURT

 2          DISTRICT OF MASSACHUSETTS

 3   * * * * * * * * * * * * *
                              *
 4   LIBERTY MUTUAL           *
              Plaintiff       *
 5                            *
       VERSUS                 *   CA-96-10804-DPW
 6                            *
     BLACK & DECKER           *
 7              Defendant      *
                              *
 8   * * * * * * * * * * * * *

 9      BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

10        UNITED STATES DISTRICT COURT JUDGE

11                    HEARING

12                JULY 10, 2003

13   APPEARANCES:

14      RALPH T. LEPORE, III, ESQ. AND JANICE KELLEY
        ROWAN, ESQ., Holland & Knight, LLP, 10 St. James
15      Avenue, Boston, Massachusetts 02116, on behalf
        of the Plaintiff
16
        JACK R. PIROZZOLO, ESQ. AND RICHARD L. BINDER, ESQ.,
17      Willcox, Pirozzolo & McCarthy, 50 Federal Street,
        Boston, Massachusetts 02110, on behalf of the
18      Defendants

19

20   ALSO PRESENT:  Linda Biagioni

            Courtroom No. 1 - 3rd Floor
21             1 Courthouse Way
               Boston, Massachusetts 02210
22             9:10 A.M. - 11:00 A.M.

23      Pamela R. Owens - Official Court Reporter
        John Joseph Moakley District Courthouse
24          1 Courthouse Way - Suite 3200
            Boston, Massachusetts 02210
25
```

1   permit Ms. Rowan to continue as counsel.

2        THE COURT:  What's the story?

3        MR. PIROZZOLO:  Your Honor, on the experience

4   that we objected, at the deposition, I pointed out that

5   it can be anticipated that Ms. Rowan will be a witness

6   at the trial.  It may be too early to know for sure.

7        THE COURT:  When you say witness at the

8   trial, with respect to the 93A claim?

9        MR. PIROZZOLO:  There were conversations --

10       THE COURT:  No.  Just let me understand.

11       MR. PIROZZOLO:  Certainly.

12       THE COURT:  With respect to the 93A claim?

13       MR. PIROZZOLO:  Probably.  I don't know if it

14  extends to anything else.

15       THE COURT:  How could it?

16       MR. PIROZZOLO:  That's what I identified now.

17       THE COURT:  How could it extend to anything

18  else?

19       MR. PIROZZOLO:  Pardon me?

20       THE COURT:  How could it extend to anything

21  else?

22       MR. PIROZZOLO:  I don't see it now, but who

23  knows.

24       THE COURT:  Well, the reason I raise the issue

25  in that fashion is there's a differential that I would

Page 2

1        CA-96-10804-DPW

2           JULY 10, 2003

3        THE COURT:  Well, I want to go through some of

4   the underbrush here first before turning to the Ansonia

5   Derby sites.  And it's raised by Liberty's status

6   report.

7        Maybe I'll focus on the provocative suggestion

8   there was going to be a filing with respect to the

9   status of counsel.  What does that mean?

10       MR. LEPORE:  Your Honor, recently in a

11  deposition in March, Ms. Rowan, who has been with us

12  since the beginning of the case, was about to begin a

13  deposition.  Black & Decker objected to her taking the

14  deposition for reasons that I will get into in a moment.

15  And at that point, we adjourned the deposition and I

16  took the deposition at a later date.  The rationale that

17  has been presented to us is that back in '96 before this

18  case was filed, there was allegedly a telephone

19  conversation between counsel for Black & Decker and Ms.

20  Rowan which apparently, we understand, is going to form

21  the basis for part of its 93A bad faith claim with

22  respect to the filing of the lawsuit itself way back

23  when.  At this point in time, we are prepared to file a

24  motion.  It seems silly that we have to do this, but we

25  are going to do it if they intend to pursue this and not

Page 4

1   draw between non-jury matters and jury matters.

2        MR. PIROZZOLO:  That's a good point.  It

3   is -- I mean, let me just me clear up what I said.

4   I think Ms. Rowan or Mr. Lepore have their ethical

5   responsibilities.  And I just pointed it out at the

6   deposition, that I would feel no restraint in calling

7   Ms. Rowan as a witness or cross-examining her or

8   commenting on her absence if we ever reached such an

9   issue.

10       THE COURT:  Commenting on her absence?

11       MR. PIROZZOLO:  Well, if she doesn't testify.

12  Supposing we have our witness testify and she opts not

13  to rebut something, I guess it would be fair to comment.

14  And that is something I foresaw and I just didn't feel

15  it fair to sit by and not alert Mr. Lepore to that

16  possibility.  And it was his choice not to have Ms.

17  Rowan proceed with that deposition and to take it

18  himself.  We adjourned the deposition and accommodated

19  each other's schedules.  But this is not really my

20  issue.  I think this is -- everyone has their ethical

21  responsibilities that will -- I'm not going to -- I'm

22  not going to move to disqualify or to object to

23  testifying or whatever.  But I do reserve the right to

24  call a witness if it's in my client's best interest to

25  do so or to cross-examine him or in the event that

Page 5

1 witness doesn't testify to comment on that.
2    THE COURT: All right. Well, Mr. Lepore,
3 anything else you want to say about that?
4    MR. LEPORE: No.
5    THE COURT: Do you intend to file some sort of
6 motion?
7    MR. LEPORE: In view of what Mr. Pirozzolo has
8 just said, I don't expect that we will need to anymore.
9    THE COURT: Okay. All right. So we'll deal
10 with that at some future point. But that deals -- takes
11 us right into the question of the protective order which
12 I will allow here. I'm not going to let this case be
13 distracted by the parties engaging in that kind of
14 discovery. There will be enough to do here to move the
15 case along. We can deal with the 93A aspects at a later
16 point.
17    Now, turning to Beverly Materials, I know that
18 the time hasn't run yet, Mr. Pirozzolo. But what's the
19 story on this?
20    MR. PIROZZOLO: Your Honor, again, on Beverly,
21 I think it's a non-issue. We have not and do not plan
22 to withhold any documents that we have. Mr. Lepore
23 raised a question that it seemed odd to him that there
24 were not documents produced for periods of time earlier
25 than 1980. I have made further inquiry about the

Page 6

1 possible fate of such documents. And as he knows, these
2 old industrial sites were sold and operational documents
3 went with the sale. That was true of Farrell. That's
4 true of Bostick.
5    THE COURT: Well, let me just --
6    MR. PIROZZOLO: And I have a letter ready --
7 but I wasn't able to get it out -- prepared for today to
8 advise Mr. Lepore of the names of the corporate history
9 of the purchaser of the USM facility. It was Abel kind
10 and then they went to bankruptcy. And there's an
11 intricate corporate history. But I'm giving him -- I
12 will give him the names of the people to contact for
13 the purpose of trying to ascertain whether they have
14 documents.
15    The other possibility of documents that may
16 not -- we may not have is after the business was sold,
17 the actual building was sold to another purchaser.
18 And I'm giving him the information relating to that
19 purchaser. So, it could be that things like blueprints
20 or diagrams of the building, that type of thing, may
21 have gone to the purchaser of the building.
22    THE COURT: Let me stop you, though. Do you
23 or your clients have any other documents?
24    MR. PIROZZOLO: Well, we redoubled our efforts
25 to search. I sent somebody to Maryland, in an excess of

Page 7

1 caution, to spend the better part of two days going
2 through archives to see if, by chance, there's anything
3 there. I don't have a report yet, but I intend to give
4 a complete disclosure to Mr. Lepore on that.
5    And in the course of discovery, in the course
6 of working on the case, we did discover that Choate,
7 Hall & Stewart, which I hadn't known before, represented
8 Black & Decker or Emhart or USM for a while. And some
9 documents emerged from their files which we are
10 providing. I think -- I think actually much of this is
11 duplicative. I think the Haley & Aldrich Technical
12 Advisors probably have collected all of the relevant
13 documents that there are. And those, of course, have
14 long since been produced. But I guess my point is we
15 are not withholding anything. I have made efforts --
16 further inquiry, further efforts, instructed the client
17 -- Ms. Biagioni is here -- to take another look at the
18 archives. And if anything emerges from that, we'll
19 produce it. I am considering perhaps giving Mr. Lepore
20 a description of what there are in the archives. I
21 haven't even seen it myself yet. I have associates
22 working on that.
23    THE COURT: What did you mean by a description?
24    MR. PIROZZOLO: Well, just a corporate
25 history. Emhart --

Page 8

1    THE COURT: Is it a privilege log or something
2 like that?
3    MR. PIROZZOLO: No, no, no, no, no. That's a
4 different issue. USM was acquired by Emhart. Emhart
5 was then acquired by Black & Decker. And in the course
6 of these transactions, some documents were moved first
7 from USM to Emhart in Connecticut; then from Emhart in
8 Connecticut to Maryland at Black & Decker. From a look
9 at what is there, it looks to me like most of it is
10 employee records, pension and profit-sharing and that
11 kind of records, human resources. But because Mr.
12 Lepore is pressed, in fairness to him, we are just --
13 not going to, we have -- going through the index to see
14 if there's anything there. But if it's not documents to
15 withhold -- if there are privileged documents, of course,
16 we'll put it on the log. But I don't think that's the
17 issue there.
18    THE COURT: All right.
19    MR. PIROZZOLO: As to the privilege, that
20 probably is the only legal issue between us. As the
21 Court recalls, there were -- or may recall, there was an
22 order early in the case that we would withhold as
23 privileged documents pertaining to coverage. But that
24 documents pertaining to the handling of the ongoing
25 litigation pursuant to the Court's order, we are



Page 9

1 producing.
2      Well, as it turns out, there's a third
3 category. There are documents that pertain neither
4 to coverage nor to the underlying litigation, but
5 coincidentally to other legal issues. And when Black &
6 Decker shipped documents to us to review for production,
7 we find there is this third category.
8      THE COURT: Well, but is the third category
9 relevant to the response --
10      MR. PIROZZOLO: They're not relevant.
11      THE COURT: -- or responsive to the --
12      MR. PIROZZOLO: We put them on the log. And
13 Mr. Lepore is pressing for them. I always believe in
14 full disclosure. They came to us. They're on the log.
15 They're not relevant.
16      THE COURT: Well, but do you contend that
17 these documents are unrelated to either of the first two
18 categories?
19      MR. PIROZZOLO: That's our view. Yes.
20 Reasonable minds can differ, but that is certainly our
21 view.
22      THE COURT: Okay. Well, it is premature
23 because it's simply in not quite the time period for
24 response.
25      MR. PIROZZOLO: I might say we are going to

Page 10

1 respond by saying we are producing all relevant
2 documents and we are producing a privileged log and are
3 prepared to submit on whatever procedure the Court deems
4 appropriate for a ruling on privilege.
5      THE COURT: All right. Now, let me understand,
6 Mr. Lepore, just timing on a motion for summary judgment
7 with respect to Beverly in light of -- I understand you
8 don't have all the discovery and all of that. But what
9 do you think is the --
10      MR. LEPORE: Reasonably, we would probably do
11 it within 30 days, Your Honor.
12      THE COURT: You're that far along?
13      MR. LEPORE: Yes. They've produced -- in all
14 fairness to Black & Decker, they have produced hundreds
15 of thousands of pages with respect to the Beverly site.
16 The peculiar thing and the focus of our motion is that
17 there are only 14 or 15 or 20 documents predating 1980.
18 And that's really the focus of our motion to compel.
19 But, realistically, I think we've got -- we've had very
20 good cooperation with respect to the depositions at
21 Beverly, both sides. And I think that we've come a long
22 way with respect to the Beverly discovery that started
23 back in September.
24      THE COURT: Right.
25      MR. LEPORE: And realistically, I think that

Page 11

1 the only thing left is to figure out about these
2 documents.
3      THE COURT: How much is involved in Beverly?
4      MR. LEPORE: Beverly?
5      THE COURT: What --
6      MR. LEPORE: It's big dollars.
7      THE COURT: That would be another one of these
8 kind of --
9      MR. LEPORE: Yes. That's correct. Big
10 dollars. And we didn't know -- and Mr. Pirozzolo didn't
11 know either -- until last summer of perhaps how big it
12 was.
13      MR. PIROZZOLO: We're talking 3-1/2 million,
14 Your Honor.
15      THE COURT: Okay. Now, putting -- as opposed
16 to a test of manhood -- a realistic time period for the --
17      MR. LEPORE: May I?
18      THE COURT: Yes.
19      MR. LEPORE: No. We can do it in 30 days,
20 Your Honor.
21      THE COURT: All right. Okay. So, why don't we
22 set that for filing August 11, and a response September 5.
23      MR. PIROZZOLO: I'm sorry?
24      THE COURT: September 5 for a response.
25      MR. PIROZZOLO: Sure.

Page 12

1      THE COURT: That's three weeks.
2      MR. LEPORE: Fine, Your Honor. Thank you.
3      THE COURT: Motion for summary judgment in
4 respect of the Beverly site.
5      Now, with respect to the Bostick matter -- and
6 that segways into some procedural approaches that I want
7 to take here -- what I would like to do and intend to do
8 is take up the several -- and I think there are five
9 more sites that the parties specifically carved off for
10 presentation at my request. They are Bostick itself;
11 BROS, if that's the way you pronounce it; W.W. Cross,
12 Jaffrey; Whitman; and the long-term exposure sites.
13      I want to take up at least one, maybe more, on
14 an every two-week basis for final argument with respect
15 to summary judgment in the hopes that I will be able to
16 -- shortly after each one of them -- give you a written
17 treatment of the summary judgment resolutions.
18      What I have in mind -- having in mind my own
19 schedule of cases this summer -- is a hearing on
20 Wednesday, July 23rd; one on August 6th; one on August
21 20th. I think that transition issues and also the
22 holiday -- Labor Day -- suggests that September 10th
23 will be the next one, and September 24th would be the
24 following one. Now, I don't mean to interfere with
25 people's vacation schedules if that's a problem, but

Page 13

1 those are, it seems to me, the available dates properly
2 sequenced for me to do what I want to do with those
3 motions for summary judgment. And I frankly look to you
4 for those that would be -- the order that you'd want to
5 do them in.
6 　　But that takes me back then to Bostick. I
7 have no particular -- particularly given the duration of
8 this case -- problem with updating of expert reports,
9 although I don't want them to be a movable feast. I do
10 want them to come to rest at some point, but I recognize
11 there are additional things or law. That raises the
12 question: (a) Is that what's really happening -- that
13 is, additional information that's being provided in
14 Bostick or is this simply a reformulation of some new
15 theory on it? And, so, maybe, Mr. Pirozzolo, you can
16 talk to that.
17 　　MR. PIROZZOLO: Actually, the situation with
18 Jim Ashe of Bostick as the person who did the original
19 report is just no longer available. So, he is picking
20 up where she left off. I think his report is virtually
21 done and updated.
22 　　THE COURT: Is it simply updating?
23 　　MR. PIROZZOLO: I believe so.
24 　　THE COURT: Would there be a material change
25 in the record that I'd be looking at for purposes of

Page 14

1 summary judgment?
2 　　MR. PIROZZOLO: I suppose it could. I mean, I
3 can imagine that it might. But we can get that in
4 immediately. And when I say immediately, within a few
5 days. That's been done. It just needs to be polished
6 and presented.
7 　　THE COURT: Okay.
8 　　MR. LEPORE: Your Honor, may I address this?
9 　　THE COURT: Sure.
10 　　MR. LEPORE: So that there's no confusion, the
11 reason we objected at that time was because we thought
12 we had a June 2nd trial date.
13 　　THE COURT: Right.
14 　　MR. LEPORE: And we were working backwards
15 and we didn't have time to deal with the rebuttal and so
16 forth. If Your Honor is inclined, I have no objection
17 to their filing this motion now so long as we have an
18 opportunity -- I mean, filing a new report -- so long as
19 we have an opportunity to file a rebuttal.
20 　　THE COURT: All right.
21 　　MR. LEPORE: That's really the point, Your
22 Honor.
23 　　THE COURT: Okay. Well, that's why I say it
24 segways into this. I would put Bostick, then, toward
25 the end of that list of hearing dates.

Page 15

1 　　MR. PIROZZOLO: Thank you, Your Honor.
2 　　THE COURT: But let me just -- and I don't
3 want to see the report until it's been looked at and
4 both parties have thought it through. And I would
5 simply look to any supplemental filing with respect to
6 the Bostick site. And why don't I say that that would
7 be -- any supplemental filings would be August 13th.
8 　　MR. PIROZZOLO: August 13th?
9 　　THE COURT: Is that enough time for --
10 　　MR. PIROZZOLO: Well, certainly enough time
11 for us.
12 　　THE COURT: Well, but you're going to have it
13 in a couple of days, as I understand it.
14 　　MR. PIROZZOLO: A couple of days, maybe within
15 the week, say the middle of next week.
16 　　THE COURT: Does that give you enough time,
17 Mr. Lepore?
18 　　MR. PIROZZOLO: I'm assuming Mr. Ashe is
19 around. I'll communicate if he's not.
20 　　THE COURT: Right.
21 　　MR. LEPORE: We'll do our best. It's hard to
22 say, Your Honor, because I don't know what they're going
23 to say.
24 　　THE COURT: Okay. Well, let me just put it
25 this way. The parties will by, let's say, July 23 --

Page 16

1 give me just a status report that tells me when I might
2 expect to receive any additional materials concerning
3 the Bostick site that would be relevant to the question
4 of summary judgment that's been framed as of now.
5 　　MR. PIROZZOLO: Yes.
6 　　THE COURT: Okay. Now, turning to -- I think
7 that deals with all of the relevant issues here.
8 　　I have allowed the motion for protective order
9 with respect to the amended deposition notice.
10 　　We've got a time period for the submission of
11 the expert reports with respect to Bostick.
12 　　We've got a schedule, anyway, to deal with
13 Beverly.
14 　　Okay. Now, let me frame a bit more clearly my
15 views with respect to Ansonia Derby for purposes of
16 argument, anyway. My expectation is that I will be
17 granting Liberty Mutual's Motion for Summary Judgment in
18 a limited form with respect to certain of the relevant
19 policies, particularly the 1930-1940 USM policies,
20 the 1927 through 1940 Farrell policies. I just don't
21 think there's enough evidence here, their existence of
22 terms to merit a trial.
23 　　With respect to the USM policies from 1950 to
24 1952 and 1959 to 1960, the Farrell policies from 1955
25 through 1959, 1959 through 1961, the Black & Decker

Page 17

1 policies from 1937 to 1955, the 1955 to 1963, 1963 to
2 1970, I think there's sufficient secondary evidence,
3 anyway, for the matter to be resolved. So, I'm going to
4 deny the Motion for Summary Judgment with respect to
5 that. That's Liberty's Motion for Summary Judgment.
6      And I'm going to allow Black & Decker's motion
7 with respect to the 1954 through '55 USM policy and the
8 1961 through '62 and '62 through '63 Farrell policies.
9      That's the framework, I think, of the policy
10 determinations that I'm going to make.
11     Now, with respect to what I will call the
12 substantive claims, I think that I want to focus -- I
13 want to do two things. One, there was a waiver argument
14 that's made by Liberty. I don't accept it. I'm going
15 to permit the several assertions that -- excuse me, made
16 by Black & Decker -- the several assertions of exclusion
17 of a defense that had been raised here going beyond the
18 question of pollution exclusion. And the ones that have
19 me -- well, let me sharpen the framework. I do find
20 that it is unlikely that I'm going to permit claims
21 after 1971 because of the pollution exclusion provision.
22 I am concerned about the period 1961 through 1967,
23 having to do with the one-year reporting requirement.
24 And let's assume for the moment that I'm going to find
25 for Liberty with respect to that as well. Now, where

Page 18

1 does that put the case for purposes of trial on the
2 Ansonia Derby claim?
3      MR. PIROZZOLO: There remain policies as to
4 which that provision is not there.
5      THE COURT: Right.
6      MR. PIROZZOLO: And I think it's at least four
7 to six years for sure where that provision is not
8 applicable. At some point, if the Court would hear us
9 on that --
10     THE COURT: Yes. No, I intend to.
11     MR. PIROZZOLO: -- we would want to argue it.
12     THE COURT: But what I wanted to do is shape
13 my understanding of what the implications would be with
14 respect to that.
15     And, so, what that means is that to the degree
16 that I find that there was a duty to defend for that
17 several year period of time --
18     MR. PIROZZOLO: Yes. Adequate coverage for
19 the loss.
20     THE COURT: Right.
21     MR. PIROZZOLO: There was enough money in the
22 remaining years so that it should cover.
23     THE COURT: It is enough money?
24     MR. PIROZZOLO: There is. I believe there is
25 enough money.

Page 19

1      THE COURT: Is that your --
2      MR. PIROZZOLO: What could be reasonably
3 anticipated.
4      THE COURT: Is that your understanding?
5      MR. LEPORE: I wouldn't have that information
6 at all. I don't know where that's coming from.
7      THE COURT: And we're talking about something
8 like six million dollars, aren't we?
9      MR. PIROZZOLO: I'm sorry?
10     THE COURT: We're talking about something like
11 six million dollars, aren't we, for Ansonia Derby?
12     MR. PIROZZOLO: Requests are running to 10
13 million.
14     THE COURT: Ten million?
15     MR. LEPORE: There isn't --
16     THE COURT: You think there's coverage that's
17 adequate?
18     MR. PIROZZOLO: In the remaining policies,
19 sure. Primary and excess are about seven million a
20 year, something like --
21     MR. LEPORE: Not for those years, not for '67
22 to '71.
23     THE COURT: Well, '67 through '71, there
24 aren't?
25     MR. PIROZZOLO: Yes, '67, '68, '69 --

Page 20

1      MR. LEPORE: But that's --
2      THE COURT: But go ahead.
3      MR. LEPORE: But that's not the policy limits
4 for those years, '67 to '71.
5      THE COURT: What is the policy limits?
6      MR. LEPORE: Significantly less. I don't have
7 it off the top of my head. It's in one of the --
8      THE COURT: Okay. Well, I mean, that's --
9      MR. LEPORE: And I'll get you that information
10 as soon as I can. But it's not anywhere near that.
11     THE COURT: I don't need to -- it's more a
12 passing interest --
13     MR. LEPORE: Okay.
14     THE COURT: -- for me. Now, let's talk about
15 the one-year reporting requirement.
16     MR. PIROZZOLO: Your Honor, I think to talk
17 about the one-year forfeiture, we need to focus on the
18 so-called amendatory endorsement. The policies were
19 amended by paragraph 7 of the amendatory endorsement.
20 And it reads specifically, "Worldwide coverage, policy
21 period modified, insuring agreement four is amended to
22 read" -- and I emphasize the word "amended." Because
23 if we go to both Black's Law Dictionary, the Oxford
24 Dictionary and Webster's Dictionary, one would find that
25 an amendment is a change for the better, an

Page 21

1 amelioration, as according to Black's and from the Fromm
2 & Webster's International --
3      THE COURT: You really want me to accept that
4 --
5      MR. PIROZZOLO: I'm sorry?
6      THE COURT: -- that it's the Whig view of
7 history, that things only get better when there's an
8 amendment?
9      MR. PIROZZOLO: An amendment -- the dictionary
10 definition of "amendment" -- and actually contrary to my
11 original instinct -- is it makes it better. It's added,
12 it improves in some way. I checked it in every big
13 dictionary, major dictionary there is. And that is
14 reinforced. But that's not the beginning and end to it.
15 In the same amendment -- it's in the --
16      THE COURT: Yes. It's a beginning. I guess I
17 -- maybe I --
18      MR. PIROZZOLO: It's contrary to instinct.
19      THE COURT: It shows my own attitude toward
20 life perhaps. But I have in mind substitute the word
21 "amendment" for "reform." But I have in mind the
22 observation made by a Torey Statesman, who was asked
23 what his view of a particular reform was. And he said,
24 "Reform. Why would anyone want to reform? Things are
25 bad enough as they are." And it seems to me that an

Page 22

1 amendment doesn't really --
2      MR. PIROZZOLO: In another context, if Your
3 Honor does any gardening, where you talk of soil
4 amendments, which is what made me think about it, when
5 you put fertilizer and whatever in the soil and that's
6 an amendment.
7      THE COURT: Well, it is, although you picked
8 the wrong person to suggest that to since mine is what I
9 supposed you would call a gray thumb. And, so, soil
10 amendments don't make things better when I do them.
11 Well, isn't that interesting, though? I'm just pulling
12 out what's ironically, I guess, called the Shorter
13 Oxford. "Correct errors, heal, reform," of course.
14 Well, I guess having always a comfy view, the glass is
15 half empty, I guess I --
16      MR. PIROZZOLO : Having begun there, we go to
17 the four corners of the amendatory endorsement, which
18 has a number of policy changes.
19      THE COURT: Right. I have it.
20      MR. PIROZZOLO: On number three, Liberty
21 Mutual's amendatory endorsement says that the provisions
22 are substituted for the words of the policy.
23      Number four says the words are eliminated and
24 substituted.
25      Number five says the words are eliminated and

Page 23

1 substituted.
2      So, that in the very document that Liberty
3 Mutual relies upon, when it intends to eliminate words
4 from the existing policy and put new words in, it uses
5 the phrase "eliminated and substituted," which is very
6 clear, whereas "amendment" has either the meaning I
7 suggest or, at best, ambiguity. Assuming that
8 "amendment" means that you tack onto the existing
9 provision, which is coverage in the United States, a
10 provision that says "worldwide, but subject to the one-
11 year reporting requirement," a reasonable reading is
12 that the one-year reporting requirement applies to
13 claims arising elsewhere in the world, that there is no
14 change to claims arising in the United States as is part
15 of the original policy terms.
16      THE COURT: How could I read that -- I mean, I
17 look at the language. It says "anywhere in the world."
18 Anywhere in the world except the United States --
19      MR. PIROZZOLO: That --
20      THE COURT: -- is supposed to read into that?
21      MR. PIROZZOLO: I think that intent should be
22 gleaned from it. Their intention was to provide
23 additional coverage for everywhere else in the world
24 subject to this condition. And that condition makes
25 sense in that context because they probably did not want

Page 24

1 to have the responsibility of defending claims anywhere
2 in the world if they weren't continuing to write this
3 kind of coverage.
4      Now, we're supported even further by the
5 July 11, 1960, letter in the Liberty files from Sanborn
6 to Stedman, which explains this endorsement. And it
7 says that the change -- it repeats it. If the claim
8 brought elsewhere in the world, other than within the
9 United States" -- and it refers to this amendatory
10 endorsement -- "foreign countries and worldwide --
11 settlement in foreign countries and worldwide coverage,
12 the change of wording is nominal and does not affect
13 coverage." The intent can be gleaned from the meaning
14 of the word "amendments." The other amendments or
15 the other changes in the amendatory endorsements and the
16 explanatory memoranda, that what Liberty Mutual intended
17 was to provide coverage everywhere else in the world
18 subject to the one-year reporting requirement. But as
19 they say, the change does not affect coverage. They
20 intended to leave what coverage there was but for this
21 amendment intact. Now, the draftsmanship probably is
22 faulty. They should have said "elsewhere in the world"
23 or "in the world otherwise than the United States."
24 But I'm sure the Court has had cases where companies
25 refer to worldwide coverage or worldwide sales or

## Page 25

1 worldwise to mean other than the United States. Indeed,
2 United States is in the world, so there's an ambiguity.
3 But we then go to really universal rule of construction
4 insurance policies is that where there is an ambiguity,
5 it should be construed against the company. It should
6 be construed in favor of coverage and in favor of the
7 policyholder. So, the correct construction, given the
8 evidence we have of that provision, is that the one-year
9 reporting requirement applies to claims arising outside
10 of the United States, but that the coverage for claims
11 within the United States remains intact.
12      THE COURT: So, I have to reject Textron?
13      MR. PIROZZOLO: You have to --
14      THE COURT: Reject Textron?
15      MR. PIROZZOLO: Reject --
16      THE COURT: Textron.
17      MR. PIROZZOLO: Well, Textron, yes,
18 exactly. Textron is not binding on this Court.
19      THE COURT: No, it's not binding.
20      MR. PIROZZOLO: It was badly decided. It was
21 -- I don't know what argument was made. Indeed, quite
22 candidly, when this came up, the last time it was
23 argued, I myself had not carefully read that amendatory
24 endorsement. And I don't think I explained to the Court
25 sufficiently the reason why there is the ambiguity and

## Page 26

1 the reason why it should be construed against Liberty
2 I was aware of the Textron case. That's not -- I think
3 it simply is not binding on this Court and it's wrongly
4 decided.
5      THE COURT: But on point?
6      MR. PIROZZOLO: Well, except that the Court
7 made a mistake.
8      THE COURT: Yes. Well, that happens.
9      MR. PIROZZOLO: The Court erred.
10      THE COURT: Courts do that, but --
11      MR. PIROZZOLO: Well, I shouldn't say the
12 Court made a mistake. So, maybe the Court didn't make a
13 mistake. Maybe it wasn't argued appropriately to the
14 Court. Maybe the -- we don't have the briefing. We
15 don't know what the argument was. So, it could be that
16 the points that I'm inviting this Court's attention to
17 were not sufficiently explained or explicated in the
18 proceedings on that case.
19      THE COURT: Well, but what it comes down to
20 is I take what I find to be a -- still find to be a
21 somewhat counter intuitive definition of amendment as
22 "making things better" as opposed to "modify." I take
23 the existence of other changes that are not referred to
24 as amendments, but are called substitutions and this
25 explanatory letter.

## Page 27

1      MR. PIROZZOLO: Well, also within the four
2 corners of the document, if you follow the rules of
3 construction --
4      THE COURT: I have to say "anywhere" doesn't
5 mean -- this is kind of the critique of the Bush foreign
6 policy, that anywhere in the world doesn't include the
7 United States.
8      MR. PIROZZOLO: But we don't even have to go
9 there, Your Honor. The plain rules of construction, we
10 have a document. And they say in one place "eliminated
11 and substituted." And they say in another place
12 "amended." If you say amended means eliminated and
13 disputed, then you're equating the two. And when a
14 document uses two different expressions, they must be
15 construed as having a difference in meaning --
16      THE COURT: Well, but I'm searching for --
17      MR. PIROZZOLO: -- and there, again, at least
18 an ambiguity.
19      THE COURT: Well, searching for an ambiguity
20 to hold it against contra preferentia against the
21 insurance company --
22      MR. PIROZZOLO: Well, we can.
23      THE COURT: I take the plain language of the
24 amendment. And the plain language of the amendment says
25 "anywhere in the world." I take the title of the

## Page 28

1 endorsement "worldwide coverage." And what I have to
2 say is that there are other aspects of the writing
3 which suggests that there, worldwide doesn't mean all
4 of the world. Anywhere in the world doesn't mean
5 everywhere in the world.
6      MR. PIROZZOLO: Well, you have to leave --
7 what's already there has to stay there --
8      THE COURT: Yes.
9      MR. PIROZZOLO: -- to construe it correctly.
10 So then you're going to have duplication --
11      THE COURT: What is --
12      MR. PIROZZOLO: -- here in the United States
13 and then -- in other words, if you take the -- if you
14 were to write it up, put it on a piece of paper what
15 already is there in the policy, and the amendment as the
16 next paragraph, you would have one saying United States.
17 The next is going to say "anywhere in the world." You
18 need to differentiate. Why would you say the United
19 States if you meant everywhere in the world? It was
20 added to the existing language. So, the existing policy
21 language refers to the United States. So you've got
22 something to say we cover you in the United States and
23 I'm paraphrasing -- and this pertains to worldwide
24 coverage. You have to reasonably interpret worldwide
25 coverage to mean other than the United States.

Page 29

1 Otherwise, the first sentence wouldn't make any sense.
2     THE COURT: Mr. Lepore, do you want to be
3 heard on this aspect of it?
4     MR. LEPORE: Yes.
5     MR. PIROZZOLO: Can I make this just a little
6 more graphic?
7     MR. LEPORE: Yes.
8     MR. PIROZZOLO: Get the jacket. The thing
9 that is amended is the -- yes -- policy period and
10 territory. "This policy applies only to access which
11 occurred during the policy period within the United
12 States of America, its territories or possessions, or
13 Canada." Now, what we're doing is now adding language
14 to that.
15     You can't discard what I have just read in
16 construing the document. So that I suggest, to make
17 sense out of it, it means -- "anywhere in the world"
18 means other than the United States or Canada. Canada
19 isn't relevant to this case, so we don't have to worry
20 about Canada. It is also reasonable. I mean, this
21 is --
22     THE COURT: Why is it reasonable?
23     MR. PIROZZOLO: Well, because Liberty Mutual
24 is an American company insuring American business
25 interests, the principles of underwriting, the

Page 30

1 principles of handling and settling claims, the legal
2 systems, not to speak of political turmoil, political
3 unrest. You really have different situations outside of
4 the U.S.
5     THE COURT: But there's no question that
6 they're different situations. But if that's the case --
7 that is, they undertake to underwrite something more,
8 which is something more and something more dangerous
9 in the sense that their ability to make reasonable
10 underwriting determinations is to be undertaken in
11 a more challenged environment, then you'd expect,
12 wouldn't you, that the premium would increase?
13     MR. PIROZZOLO: As to the more challenging
14 environment, as to the more -- as to everywhere else in
15 the world. But nothing has changed as far as the United
16 States --
17     THE COURT: Right.
18     MR. PIROZZOLO: -- and nothing has changed if
19 we continue as a policyholder, but has the premium
20 changed?
21     THE COURT: Right. But has the premium
22 changed? I mean, my --
23     MR. PIROZZOLO: I think not.
24     THE COURT: My reading of it is that there's
25 really, you know, more or less the same premium being

Page 31

1 applied from those periods prior to the introduction of
2 the one-year reporting requirement suggesting that
3 there's no additional underwriting risk taken on. In
4 fact, there is a change in the way in which they view
5 the underwriting risks.
6     MR. PIROZZOLO: I think there are. I don't
7 know if there's a significant premium change off the top
8 of my head. I have to get back to the Court on that.
9 But it's substantial -- when I say about being
10 reasonable, what Liberty Mutual is doing on worldwide
11 coverage is taking a risk a year at a time. They are
12 saying, "Okay. This year, we're willing to give you
13 that extra. And maybe we will do it next year and maybe
14 we'll do it the following year."
15     THE COURT: But on your theory, "this year
16 we're willing to do that for nothing if there's no
17 policy -- if there's no premium change."
18     MR. PIROZZOLO: Probably. You know, probably
19 they're trying to sell the policy. And they come in and
20 say, "we're going to give you a little extra this year."
21 But they're limiting their exposure by saying, "Okay,
22 we're not going to" -- "if we don't write this another
23 year, we're not going to have a not ending worldwide
24 liability." But they also say -- the economists -- we're
25 not taking anything away, which means that as to U.S.

Page 32

1 coverage, it remains as it has been.
2     THE COURT: When you say they're not taking
3 anything away, that's the Stedman letter?
4     MR. PIROZZOLO: Well, under their
5 construction, the U.S. coverage then becomes more of a
6 claims-made policy than an occurrence policy. And
7 they've styled this an occurrence policy. It is an
8 occurrence policy. I believe at that time, that claims-
9 made policies were unknown. So they are now saying --
10     THE COURT: But certainly it wasn't unknown as
11 to your theory of worldwide coverage.
12     MR. PIROZZOLO: Yes. I suppose they were
13 beginning to --
14     THE COURT: Elsewhere. I should say elsewhere
15 in the worldwide coverage.
16     MR. PIROZZOLO: Yes. They were beginning to
17 get there. You have flaws in the drafting. They should
18 have said "elsewhere." They should have said
19 "elsewhere." But, again, that's why you go to the rules
20 of construction, the contract of adhesion. By the way,
21 the Murphy case in Connecticut says on a different
22 issue that -- the Supreme Court in Connecticut --
23 insurance contracts are contracts of adhesion and that
24 sophistication of the policyholder is not relevant. I
25 think it's a 1990 case by Judge Peters there.

## Page 33

1     THE COURT: All right.

2     MR. PIROZZOLO: So, you combine reasonable

3 reading of the amendment, reading of their commentary.

4 I suggest the definition of "amendment" that I have

5 suggested to the Court, in the end, the best you have

6 for Liberty Mutual is an ambiguity and the rules of

7 construction require the ambiguity to be resolved

8 against Liberty Mutual.

9     THE COURT: All right.

10     MR. LEPORE: May I have -- may I take that --

11     THE COURT: That's a typographical.

12     MR. LEPORE: I understand. May I just take a

13 moment, Your Honor?

14     THE COURT: Yes.

15     MR. LEPORE: I believe that for the last 10 or

16 15 minutes, what we've seen is an attempt to create an

17 ambiguity from some very plain language. The use of

18 dictionary definitions is interesting. It doesn't help

19 us much. We're dealing with some language that has been

20 construed by the Rhode Island Supreme Court as being

21 very clear and unambiguous. We have yet to find a case

22 on the other side that says that the one-year reporting

23 requirement is somehow ambiguous. There is no court

24 that's ever said it was ambiguous, because it's not

25 ambiguous. The concept somehow that the United States

## Page 34

1 and now Canada -- because one of the things that I did

2 want to point out to Your Honor was that the language

3 says "United States, its territories or possessions or

4 Canada" certainly doesn't mean everything else except

5 United States, its territories or Canada. Some of its

6 territories back in the '60s, I think, are part of the

7 world today. I mean, they may have been territories

8 then, but they're now countries or at least maybe part

9 of the United States. Didn't we have some in the

10 Caribbean that were territories at that time?

11     THE COURT: I don't think there's been any

12 change in the --

13     MR. LEPORE: Since we added --

14     THE COURT: -- sovereignty status since 1960.

15 It's kind of interesting. I mean, this is like a trivia

16 question. It's kind of interesting.

17     MR. LEPORE: Well, the point has its -- the

18 United States and Canada are part of the world. There's

19 no way around that language. But we can't fall back on

20 this, when the language hurts the insured that somehow

21 it's ambiguous. And, in fact, Your Honor, as Your Honor

22 ruled early on, the Farrell policies are going to be

23 controlled by Connecticut law. Do you remember you said

24 that?

25     THE COURT: Right.

## Page 35

1     MR. LEPORE: As opposed to the USM policies

2 that are going to be controlled by Mass. law. They

3 both have some application at Ansonia Derby. The

4 Connecticut issue -- the Connecticut law with respect to

5 ambiguity isn't the same as Massachusetts. It's not as

6 strict.

7     THE COURT: I haven't gone back to look at

8 Murphy.

9     MR. LEPORE: I don't know anything about

10 Murphy. I apologize. It's the first I've heard of

11 that case.

12     THE COURT: Okay.

13     MR. LEPORE: And I can't imagine that it has

14 any relevance with respect to an adhesion contract case.

15 This is an insurance contract. They paid premiums. We

16 gave them coverage. And now they're fighting over the

17 coverage claiming, 40 years later, that somehow the

18 language is ambiguous, citing to some letter in 1960

19 that Liberty allegedly prepared that has no bearing on

20 this. If we're going to start dealing with what Liberty

21 thought were provisions, that's interesting and we'll be

22 happy to tell Your Honor where Liberty's opinions are

23 with respect to its interpretation of its own language.

24 This isn't one of them. This is irrelevant. It has

25 nothing to do with it.

## Page 36

1     And Your Honor understands this situation very

2 clearly. The '61 through '67 policies have the one-year

3 reporting requirement. It is not, as Black & Decker

4 continues to say, some sort of forfeiture. It's a

5 requirement. It says that if you want the coverage,

6 you've got to report it within a year. Now, thereafter,

7 if you don't, there is no claim. That's fine. But it's

8 not a forfeiture provision. It's a requirement. It's a

9 notice requirement. I think everything else is in our

10 brief, Your Honor. There's really nothing else for me

11 to add.

12     THE COURT: All right.

13     MR. PIROZZOLO: Your Honor, Murphy is

14 cited at 538 A.2d --

15     THE COURT: Hold on -- I'm sorry.

16     MR. PIROZZOLO: I'm sorry.

17     THE COURT: Go ahead.

18     MR. PIROZZOLO: 538 A.2d 219. And the

19 Connecticut cite is 206 Conn. 409. This is Judge Peters

20 from the Connecticut Supreme Court, which is the highest

21 appellate court. The contractual provisions presently

22 at issue are contained in an insurance policy that is a

23 contract of adhesion. The parties to this form of

24 contract, having notification, have been bargaining

25 about its consequence. there was real issues dealing

**Page 37**

1  with notice issues in that case.

2     THE COURT: Well, but you took it farther.

3  Obviously, I'm going to go back and read it. You took

4  it farther to say that even the sophistication of the

5  parties made no difference.

6     MR. PIROZZOLO: Yes. Somewhere in here -- I

7  haven't found it -- there is "without regard to

8  sophistication of the parties" -- I may be mistaken. It

9  may be a different Connecticut case that says that. I

10  thought it was this. Have you found it?

11     Okay. She says, "There can be no question

12  that an insurance policy is this case is a contract of

13  adhesion. The term was first introduced in the American

14  legal vocabulary by Professor Edmund Peterson who noted

15  that life insurance contracts are contracts of adhesion

16  because it's drawn up by the insurer. Standardized

17  insurance policies continue to be prime examples of

18  contracts of adhesion subject to normal bargaining --

19  I'm sorry, Your Honor.

20     THE COURT: Well, I'll go look --

21     MR. PIROZZOLO: I will --

22     THE COURT: I will go look at it. It just

23  strikes me as if ever there were bargaining over --

24     MR. PIROZZOLO: If it isn't that case, I'll --

25     THE COURT: This is it.

**Page 38**

1     MR. PIROZZOLO: If it isn't that case, I'll

2  submit, Your Honor, a supplemental letter with the

3  citation of the one I have in mind. I know there is a

4  case that says without regard to the sophistication.

5     THE COURT: All right. Well, I'd like it --

6     MR. PIROZZOLO: The Connecticut case?

7     THE COURT: Yes. I guess I'd like it, you

8  know, by next Monday.

9     MR. PIROZZOLO: No problem.

10     THE COURT: The next Monday. The parties can

11  just tell --

12     MR. PIROZZOLO: I just didn't have the papers

13  here.

14     THE COURT: -- I understand -- to deal with

15  that.

16     Now, are there any other aspects -- having

17  outlined where I think I am on this, any other aspects

18  that you want to be heard on today --

19     MR. LEPORE: May I be heard?

20     THE COURT: -- on the Ansonia Derby?

21     MR. LEPORE: Yes, Your Honor.

22     THE COURT: Okay.

23     MR. LEPORE: Because what we're dealing with

24  then, Your Honor, is the period from July 1st of 1967 to

25  July 1st of 1971. Those are the Farrell policies that

**Page 39**

1  have neither the one-year reporting requirement nor the

2  pollution exclusion.

3     THE COURT: Right.

4     MR. LEPORE: And, so, we're dealing with a

5  four-year period of time. And if I may be heard on

6  those, Your Honor, as to why we believe that we're

7  entitled to summary judgment?

8     There are two primary reasons. One is that

9  these are occurrence-based policies and that there has

10  been no occurrence. And number two, there is the owned

11  property exclusion in these policies. So, as Your Honor

12  is well aware, the first analysis is to determine

13  whether or not there is any coverage under the terms of

14  policy when you compare the complaints that have been

15  filed against Black & Decker or Emhart or whomever the

16  insured is for that period of time. That's the first

17  analysis.

18     And then the next question is what kind of

19  exclusions or defenses did the insurance company have at

20  this particular -- to that period of time.

21     So, let's just focus, if we can, on that

22  period of time from '67 to '71.

23     The first thing to do, I think, is to look at

24  the complaints. And we have two complaints to start

25  with. There's the SHW complaint versus Emhart. And

**Page 40**

1  then there's the Farrell v. Emhart complaint. Both

2  of those complaints seek recovery, Your Honor, for

3  breach of contract for fraud, for misrepresentation, for

4  deceit, for things that, quite frankly, are not covered

5  under CGL policies under any set of circumstances.

6  There is one case that is cited that has to do with --

7  admittedly, it's Massachusetts law, that it strains

8  credulity to suggest that a CGL policy would cover a

9  breach of contract claim.

10     Now, here we are in a situation where Black &

11  Decker sold contaminated property. They sold it and

12  made significant money on it. Then they got sued by the

13  subsequent owners for fraud, misrepresentation, deceit,

14  hiding contamination. Now, the complaints themselves --

15  that's the essence of the complaint. Now, if you look

16  at the substance of the complaints, they all allege

17  long-term operational contamination. They recite

18  pollution-prone activities dating back decades. Now,

19  looking at the facts -- and we'll just step back for a

20  moment -- there's no dispute about that. Ansonia Derby

21  sites date back to the 1800s. For decades and decades

22  and decades, there were pollution-prone activities going

23  on at the site. They would discharge daily into the

24  soil. There was contamination everywhere.

25     Now, in order for there to be coverage under

Page 41

1 the '67 to '71 policies, there has to be some sort of
2 allegation that an accident happened that resulted in
3 property damage that was neither expected nor intended
4 from the standpoint of the insured. Now, a fair reading
5 of those particular complaints, Your Honor, does not
6 lend itself to the conclusion that there was an accident
7 alleged. What it alleges is that Black & Decker
8 deceived the buyers of the property into the condition
9 of the property. It goes on to recite the contamination
10 that occurred for decades. There's no allegation
11 whatsoever of an accident. And we don't have to get
12 into dictionary definitions of "accident" or
13 "occurrence" because the case law is very clear on that.
14 We understand what an accident is. It's something that
15 happens by accident. This recites -- these complaints
16 recite deliberate intentional harm, deliberate
17 intentional activities.
18      THE COURT: Well, what they say -- what I read
19 them to say is that there were ongoing operations there
20 of which the insured was aware. And what I understand
21 you to be saying is that effectively prohibits
22 application of the contract because operations could not
23 be accidental. Now, the problem, I guess, for me is how
24 best to describe the state of the law in Connecticut on
25 this set of issues. And my preliminary view is -- I say

Page 42

1 "preliminary" because I haven't issued it finally, but
2 given quite a bit of thought to it -- is that
3 Connecticut law is relatively forgiving in the duty-to-
4 defend area. A neutral allegation concerning a set of
5 factual matters can be sufficient to trigger a duty to
6 defend. And the real issue is does the complaint state
7 sufficient facts which appear to bring the matter within
8 coverage? So, what I have to say is here are the facts.
9 They had operations of which they were aware that
10 led to pollution. The plaintiff styles the case
11 misrepresentation, breach of contract. But it's the
12 underlying facts that we're looking at for purposes of
13 Connecticut law. And reading it in that kind of
14 fashion, don't I have to say, you know, once tendered,
15 you have to respond to that?
16      MR. LEPORE: We have to respond at some --
17      THE COURT: No. I mean, you have to provide a
18 defense?
19      MR. LEPORE: No, Your Honor. I think -- the
20 fact is I understand your point. I think the
21 Connecticut law, however, is not as neutral in that
22 regard. I believe the Buell decision that came down
23 this past year which admittedly focuses primarily on the
24 pollution exclusion --
25      THE COURT: Right.

Page 43

1      MR. LEPORE: -- and I understand that -- still
2 goes through the history of the other cases, the
3 Rikehole (ph.) case, the Line Master case, the -- I
4 think it's the Charco case. These are all cases in
5 Connecticut that don't provide coverage under these types
6 of facts.
7      Now, let's keep in mind from one perspective.
8 And maybe it's the political perspective. We couldn't
9 expect Connecticut courts, quite frankly, to be ruling
10 significantly against insurance companies since that's
11 where the insurance companies started. There is no --
12 the case law is not the way it's been portrayed.
13 Connecticut has been very pro-insurer throughout the
14 history. They have not in many cases ended up in a
15 situation --
16      THE COURT: This is kind of interesting in a
17 larger sort of way. I'm not sure that I find it
18 compelling because, apart from whether or not I should
19 be thinking about things like this in an official
20 capacity, but also because Connecticut is a highly
21 industrialized state with a strong tradition of
22 environmentalism.
23      MR. LEPORE: Absolutely.
24      THE COURT: And at least the early treatment
25 of case law in this area, including Connecticut, was to

Page 44

1 say let's find somebody with deep pockets to finance
2 this so that the state itself doesn't have to end up
3 financing it. And --
4      MR. LEPORE: I couldn't agree more with you.
5      THE COURT: -- it's a burden, but frequently a
6 pleasure, to have the client who has deep pockets. It's
7 a burden for the client. It's a pleasure for counsel.
8 But the short of it is I'm not sure I read it any way
9 other than there are these competing considerations,
10 particularly in an industrialized state like Connecticut
11 with a highly-educated voting populous who are concerned
12 about it.
13      MR. LEPORE: I think that's a very fair point,
14 Your Honor. And I want to point out -- and this is
15 where I was headed with that -- Black & Decker makes a
16 big point in their papers about the Connecticut public
17 policy. The Connecticut public policy is to suggest
18 that clean water is a necessity. Well, who's going to
19 argue against clean water? I mean, that's silly.
20 Everyone is in favor of clean water. Everyone is in
21 favor of environmental protection.
22      The question is not whether or not the state
23 and the public policy is in favor of a clean
24 environment. Of course, everyone is. The question is
25 who is the responsible party. And, Your Honor put the

Page 45

1 nail on the head, which is -- I mean, the head on the
2 nail, whatever it is -- who is ultimately going to be
3 responsible for it. And what they haven't done is focus
4 on the insurance companies. Instead, in fact, where
5 they did talk about the public policy, they pointed out
6 -- it was -- they were looking to the Federal Government
7 under the CERCLA guidelines and for reimbursement. They
8 weren't looking to the insurance companies. And that's
9 where I was headed, Your Honor.
10       The public policy that's set forth isn't the
11 case in Connecticut. The case law instead is
12 controlling on this. And we're dealing with a situation
13 where they have yet to find a case to come to a
14 conclusion where there was duty to defend in a
15 pollution-prone activity or pollution-prone situation.
16 They have bent over backwards not to find coverage in
17 these types of cases. The cases that Black & Decker is
18 citing to -- and they continue to throw in the rhetoric
19 of Missionaries. Missionaries has nothing to do
20 with this case. Missionaries was an interesting
21 case that was decided on horrible facts. You're dealing
22 with, you know, a nunnery that's suing. Who's going to
23 rule against the nunnery? And they went one step
24 further. And what's interesting is that the Supreme
25 Court of Connecticut has stepped back from that over the

Page 46

1 last few years in some of their decisions. Some of the
2 decisions we have cited, Your Honor, where they actually
3 did find a duty to defend under certain circumstances,
4 they have not gone to the automatic indemnity. They
5 have actually analyzed it.
6       THE COURT: Well, but that's the point. But
7 I'm not sure that -- that is, analysis. I'm not sure
8 that the analysis is quite the same as code pleading.
9 And, so, what I'm looking at are the facts, the
10 underlying facts involved.
11       MR. LEPORE: Agreed. And the first thing you
12 do is you look at the complaint, as Your Honor has
13 acknowledged.
14       THE COURT: Right.
15       MR. LEPORE: The other thing you do is we look
16 at the facts that have developed at this particular
17 time. And it's very clear.
18       THE COURT: Well, you say the facts as
19 developed at this particular time.
20       MR. LEPORE: To determine whether or not
21 there's coverage.
22       THE COURT: Well, don't I look simply at the
23 complaint? I'm not looking at extrinsic evidence.
24       MR. LEPORE: To deal with the duty to defend.
25       THE COURT: Right.

Page 47

1       MR. LEPORE: I understand that. But there are
2 facts. And this is the confusion. You determine a duty
3 to defend. Does that mean that there's coverage? No,
4 not necessarily. And that's what the Connecticut cases
5 have come to conclude.
6       THE COURT: Well, that may be so. The problem
7 is that an insurance company declines the duty to defend
8 at its own risk. One of the incentives that puts it into
9 place is you can deny the duty to defend. If you do it
10 improperly or improvidently, you may be stuck with the
11 indemnity duty.
12       MR. LEPORE: Well, I don't think that's true
13 in Connecticut, but that's --
14       THE COURT: Without doing a careful kind of
15 analysis or separate analysis of indemnity.
16       MR. LEPORE: Well, yes. But a careful
17 analysis of the indemnity here indicates that we have no
18 coverage. And that's because there are documents that
19 have been submitted to Your Honor.
20       THE COURT: But I can't think of that for
21 purposes --
22       MR. LEPORE: Oh, I think you can.
23       THE COURT: For purposes of duty to defend?
24       MR. LEPORE: For duty of coverage, Your Honor,
25 for determining -- our Motion for Summary Judgment is

Page 48

1 that there's no coverage. And I understand your point.
2       THE COURT: Okay. That's the thrust of your
3 motion. But I do have a differentiated analysis for
4 purposes of duty to defend. Maybe I have Connecticut
5 law wrong on this. I don't think I do. The duty is to
6 view the complaint as it's alleged and not to inquire
7 further. Inquiring further may mean that at some point
8 in the course of its evaluation of the case, they say we
9 no longer have a duty to defend.
10       MR. LEPORE: I understand that. And if I just
11 may address that for one moment?
12       THE COURT: Sure.
13       MR. LEPORE: If Your Honor is focused only on
14 the four corners of the complaint --
15       THE COURT: Which is -- let me -- I don't mean
16 to press you too much on this --
17       MR. LEPORE: Yes.
18       THE COURT: -- but I want to be sure I'm not
19 getting it wrong. That's what I'm supposed to do for
20 purposes of Connecticut duty-to-defend law, isn't it?
21       MR. LEPORE: Not necessarily. That's where
22 I'm headed. Because we don't believe that that is the
23 law in Connecticut. We understand you're supposed to
24 look at the complaint and compare it against the terms
25 of the policies. But if there are facts that are known,

Page 49

1 they should be brought into the mix.
2     But let's focus on the four corners of the
3 complaint.
4     THE COURT: Known at the time of the tender.
5     MR. LEPORE: Okay. When were these tendered?
6 Not until 1990.
7     MS. ROWAN: '95.
8     MR. LEPORE: '95 in one of them, '95, after
9 the case had been settled. But let's focus for a moment
10 on the four corners.
11     The first complaint, Your Honor, is against
12 Emhart. One of the complaints is filed against Emhart.
13 Do you see that?
14     THE COURT: Yes.
15     MR. LEPORE: Emhart wasn't an insured. Now,
16 if you're only looking at the four corners of the
17 complaint -- and the Farrell policies are the ones that
18 are applicable, which they are from July '67 to July '71
19 -- Emhart isn't an insured. Farrell was the insured.
20 So, how does that -- if you're looking at just the four
21 corners, how does that translate into a duty to defend
22 when we're not even sued?
23     THE COURT: All right. You're not sued at the
24 time that the lawsuit is brought?
25     MR. LEPORE: Right.

Page 50

1     THE COURT: You become subject to that lawsuit
2 at a later point?
3     MR. LEPORE: Okay.
4     THE COURT: And, so, a piece of extrinsic
5 evidence I have to look at is: Are these, in fact, the
6 insured? But that's different.
7     MR. LEPORE: Okay.
8     THE COURT: That's substantially different, it
9 seems to me, from saying what is the likelihood of
10 success on the merits and to what degree is there a
11 compelling showing in the complaint itself, which we'd
12 look to we've got experts, we've got this, we've got
13 that, we're going to win on this.
14     MR. LEPORE: I understand, Your Honor. And I
15 point out that that's our response to the four corners
16 argument, that Farrell wasn't even sued in these
17 complaints. So, how can we be responsible for failing
18 to defend? And I understand your point. What I say is
19 that further investigation indicates that there are
20 facts that developed. The history of this site is that
21 there were facts developed and established to date,
22 without any dispute, that this was a pollution-prone
23 problem. This happened and continued for decades.
24     THE COURT: Okay. But that goes to the
25 question of operations. If you see operations in the

Page 51

1 complaint and your insured is covered by the complaint,
2 which your insured was here, then do you say, "well,
3 operations are the kinds of things that really take you
4 outside of any of our coverage." Now, I say you can
5 do that for purposes of pollution exclusion. That seems
6 to me to be clear. It's not so clear to me that that
7 applies for the roughly '67 through '71 policies --
8     MR. LEPORE: I understand.
9     THE COURT: -- unless I say something
10 categorical about, you know, if it's operations, that's
11 that. You're effectively out on owned property.
12     MR. LEPORE: Okay. Can I jump to owned
13 property --
14     THE COURT: Yes.
15     MR. LEPORE: -- since we don't seem to -- I
16 understand your point. And let me deal with the owned
17 property. All of the contamination that's alleged in
18 the complaint, without question, is the property that
19 was sold. There is no allegation of off-site
20 contamination. There is none. In fact, there is no
21 off-site contamination. The facts that have developed
22 -- and I'll just --
23     THE COURT: So I have to deal with ground
24 water contamination?
25     MR. LEPORE: Okay. Now, assume that for a

Page 52

1 moment.
2     THE COURT: Right.
3     MR. LEPORE: We get into again this public
4 policy argument that Black & Decker raises.
5     THE COURT: Right.
6     MR. LEPORE: Their statements that somehow
7 ground water is third-party or state-controlled or
8 state-owned just isn't the case, Your Honor. The
9 Connecticut Legislature had the opportunity to say that.
10 They didn't. There was an amendment which, in the
11 legislative world, apparently, is different.
12     THE COURT: Made things better for you; is
13 that it?
14     MR. LEPORE: Yes. I'm not getting it, but it
15 was different. And they had that opportunity to say
16 that it was public policy, that it was owned -- the
17 ground water was owned by the state. They didn't do
18 that. In fact, the only state that has done that is
19 California as best we can determine. And there has been
20 no decision whatsoever in Connecticut that would lead
21 Your Honor to conclude, I think, that the ground water
22 is owned by a third party. There is no contamination
23 off-site. They haven't been sued for contamination
24 off-site. They've been sued for contamination on-site.
25 All of this contamination was either owned by -- was

Page 53

1 owned by Farrell -- I mean, that's the bottom line --
2 from '67 to '71. So, that's the focus.
3      And then I guess we have to get into the next
4 question, which is what property damage occurred in that
5 period of time -- which, right now, I don't think we
6 have any answer to.
7      THE COURT: Right.
8      MR. LEPORE: But --
9      THE COURT: But, again, not a question for
10 purposes of --
11      MR. LEPORE: I understand. But one of the
12 questions for Your Honor is the application of the owned
13 property exclusion as of the date that the complaint was
14 tendered to us and whether that was a legitimate defense
15 and exclusion. There is no question that it was an
16 exclusion. There's no question that it was in the
17 policy. And in our view, there's no question that it
18 was applicable to the point that it would negate any
19 coverage.
20      And, again, Your Honor, going back, the
21 analysis, as Your Honor is aware, you start with whether
22 or not there was an occurrence -- and that means an
23 accident -- against the terms of the complaints with
24 contamination and property damage, that it was neither
25 expected nor intended. And if that's the case, if they

Page 54

1 establish that -- and it's their burden to establish all
2 of this, Your Honor, it's not my burden, it's their
3 burden -- then we switch to the establishment of the
4 exclusion.
5      THE COURT: Which is your burden.
6      MR. LEPORE: Which is our burden. And I think
7 that it's very clear that this was owned property
8 because they sold it and they got sued for it. It's
9 their property. The alienated part of it is that they
10 sold it. But it's still -- that's the focus of this
11 dispute.
12      Once we establish that the contamination is
13 on-site and there's no allegation in the complaints of
14 any off-site contamination, then the exclusion takes
15 precedence and there's no duty to defend because there's
16 no coverage.
17      And I understand Your Honor wants to just
18 focus on the duty to defend at this point. I think,
19 just for present purposes, I might just throw out one
20 other thing, which is the expected or intended argument.
21      THE COURT: All right.
22      MR. LEPORE: Over the past several years, we
23 have done a lot of discovery at Ansonia Derby. And
24 there have been hundreds of thousands of documents that
25 have been produced, some of which we have submitted to

Page 55

1 Your Honor as exhibits, some of which we've only
2 recently come across because these productions are
3 ongoing. I would like to be able to submit a couple of
4 them to you. It's entirely up to Your Honor. I
5 understand that there's some question about whether the
6 summary judgment record is open or closed. But these
7 are documents --
8      THE COURT: Well, but let me ask you --
9      MR. LEPORE: Yes.
10      THE COURT: -- because it goes to this duty to
11 defend.
12      MR. LEPORE: Yes.
13      THE COURT: Let us assume that I accept --
14 which I do -- that the time of tender is the time for
15 consideration; that, at the very minimum, extrinsic
16 evidence is substantially reduced, although I don't know
17 how you could understand time of tender in the context
18 of corporate reorganization without having some
19 extrinsic evidence concerning who the insured is. But
20 for purposes of the occurrence that is alleged to be
21 covered, I don't know that I look at anything else or
22 that you look at anything else. What you can do is
23 assume the duty to defend on the basis of the document
24 itself, and then when you develop the additional
25 information, choose to say "we no longer have this duty

Page 56

1 to defend on the basis of our determination." But you
2 didn't do that. You simply deny it and continue to deny
3 it. And that, it seems to me, is the critical point.
4 And that's why the courts generally -- Connecticut
5 included -- seem to be particularly interested in having
6 people defend and trust and verify.
7      MR. LEPORE: I understand Your Honor's point.
8 It's well taken. If I may just address that again?
9      THE COURT: Okay.
10      MR. LEPORE: And I'll come back. I understand
11 your point about the duty to defend being the first
12 issue. Our point is the overriding coverage position,
13 which is that given the facts that have developed, I
14 conclude and have established, I believe, that there's
15 no coverage under the policy without all the facts that
16 have been shown.
17      Now, there are a couple of Connecticut cases
18 that deal with this scenario directly. And that's why I
19 raised the Missionaries point, Your Honor. There
20 was one case that said that there was no coverage.
21 There may have been a duty to defend. But since there's
22 no coverage, there's no indemnity. That's the point.
23 The automatic indemnity provision of the Missionaries
24 case has no application here. Assume that there was a
25 duty to defend for present purposes -- and I'm not

**Page 57**

1 conceding that at all -- that doesn't mean that we're
2 automatically obligated to the indemnity provisions
3 because there's no coverage. And that's the point that
4 I just want to leave with Your Honor on that point.
5      If I may just address one point -- I know I've
6 taken up an awful lot of your time -- having to do with
7 the tender arguments. I'm not going to spend a lot of
8 time on this. But with respect to the -- there's three
9 complaints that we're dealing with here. One of them --
10 and this is when Your Honor decides to parse out how
11 we're doing this in your analysis dealing with the '61
12 to '71 and '78 and so forth as the way we have done it,
13 you need to look at what flows from the late tender of
14 the second one, the third complaint, whatever --
15      MS. ROWAN: Third.
16      MR. LEPORE: -- is the third complaint, and
17 tell us about it after they have settled the case. Now,
18 when you start parsing it out, how can we have a duty to
19 defend that complaint when we didn't know about it?
20 They have already settled it. Their argument, Your
21 Honor, is that somehow we should have known about it,
22 that somehow we were supposed to be monitoring the
23 docket? That confounds me. But that's basically their
24 argument that they've set forth in the brief.
25      THE COURT: Well, but let's take that for a

**Page 58**

1 moment --
2      MR. LEPORE: Yes.
3      THE COURT: -- because I hadn't thought it
4 through sufficiently. Is the thrust of your argument,
5 then, we move directly onto for that one --
6      MR. LEPORE: I'm sorry?
7      THE COURT: We move directly onto for that one
8 the indemnity issue. We simply avoid the duty-to-defend
9 issue. The defense has already been completed. So
10 there's no defense clause. You may have had a duty to
11 defend if you had known about it in a timely fashion.
12 But for that, you simply deal with have they proved
13 indemnity? And there, you are free from whatever
14 lingering Missionaries problem you may have.
15      MR. LEPORE: Well, that's one way to look at
16 it. The way that we're looking at it is that we go --
17 the way we analyze it is there any coverage? Okay.
18 And we're coming at that from the outset, that was so late
19 -- it was after the case had settled -- that there was
20 no coverage, no duty to defend, no indemnity, irrelevant
21 because there's no coverage. It was so late. They
22 apparently are claiming that we need to show prejudice.
23 That's not the law in Connecticut. It may be in
24 Massachusetts, but these are -- the Farrell policies
25 we're dealing with, they're controlled by Connecticut

**Page 59**

1 law. So, I understand your point. And all I'm getting
2 at --
3      THE COURT: I just want to understand whether
4 or not you are contending that it's different, that
5 there is a different legal framework for the analysis.
6      MR. LEPORE: No. It's just an additional
7 defense.
8      THE COURT: My analysis of that, as I focused
9 on it, is, okay, so they don't get defense costs, but
10 probably there aren't defense costs for that. What
11 do you do when you've been tendered a claim that's
12 already been settled? I just have not thought through
13 enough to know, except to say that, at a minimum, we
14 would be -- in the light least favorable to you -- in
15 the position of saying have they shown a covered
16 occurrence and maybe in a position of saying that you
17 get to dispute the good faith of their settlement and
18 all of that on it.
19      MR. LEPORE: That's a fair point. But our
20 point is the more extreme position, which is that if
21 they have already settled the case and then they tell us
22 about it, they've waived any claim against us. It's the
23 late notice provision in the policy, Your Honor.
24      THE COURT: All right.
25      MR. LEPORE: Your Honor, I have taken up

**Page 60**

1 enough of your time.
2      THE COURT: No. I appreciate it.
3      MR. LEPORE: Thank you.
4      THE COURT: Mr. Pirozzolo, anything else you
5 want to talk about?
6      MR. PIROZZOLO: Your Honor, I have a few
7 things, if I may.
8      First, in response to a couple of points made
9 by Mr. Lepore, he emphasized at the beginning of his
10 argument "accident." He is neglecting an amendatory
11 endorsement that says "accident is amended to read
12 'occurrence' and 'occurrence' includes continuous
13 exposure to conditions" and probably is neglecting
14 secondary evidence in the Liberty Mutual files that say
15 that this kind of policy is intended to cover exactly
16 the kind of thing we're dealing with here. And to give
17 an example of supposing you dump some things down in the
18 ground and it goes downstream, and it reaches your
19 neighbor's cows and the cows drink the water and they
20 die, we're covering you for that. That is clearly in
21 the record. And the notion that you need an accident as
22 opposed to continuous exposure to conditions, and that
23 this is not the kind of occurrence this is designed to
24 cover is just belied by the record.
25      As to the pollution to ground water, I believe

**Page 61**

1 we cited in our case really quite a beautiful decision,
2 the common law of Connecticut that the ground water
3 belongs to everyone. And somehow the case isn't -- the
4 name of the case isn't coming to mind. But the salient
5 thought is just like the air, we can breathe what we
6 need, but we're not allowed to appropriate it and send
7 polluted air on to someone else.
8      THE COURT: Well, I think you --
9      MR. PIROZZOLO: The ground water is there to
10 take what we need and allow it to go on undisturbed to
11 our neighbors. It's clear that Connecticut uses ground
12 water.
13      THE COURT: You're talking about Star, I
14 assume. And beauty, of course, is in the eyes of the
15 beholder. But I think it is one of those cases in
16 this context in which it is both beautiful and thin.
17 And I'm not sure that it covers this set of
18 circumstances. It has a radiation of some sort, but I'm
19 not sure it quite does it for you here. I think you
20 have to do a bit more work to reach the point of ground
21 water that is not alleged to have migrated in some
22 fashion to somebody else's property. The idea of public
23 ownership that Star seems to suggest in some
24 fashion is not one that I think the later cases have
25 necessarily upheld.

**Page 62**

1      MR. PIROZZOLO: The remediation, that is the
2 preferred migration of -- and the migration was
3 principally through the ground water.
4      THE COURT: Right. But I think I have to find
5 -- I'm not sure about this yet. But I think I have to
6 find that it is instinct with the opportunity for
7 migration to take us outside of the owned property
8 exclusion.
9      MR. PIROZZOLO: I think the record supports
10 that, Your Honor.
11      THE COURT: Okay.
12      MR. PIROZZOLO: Going to the Missionaries
13 rule, we argued that last time. And as I re-read the
14 argument, I think there was a little confusion in the
15 argument.
16      First of all, the notion of tender, as was
17 argued the last time, was just bad law. The case relied
18 upon itself was effectively overruled by the Supreme
19 Court of Illinois. And Connecticut has specifically
20 held that tender is not required, that all that's
21 required is notice or knowledge. And Mr. Lepore and
22 Mr. Whitney had argued vehemently -- I believe he said
23 it this morning -- that Liberty Mutual did not know of
24 the Federal Court case until 1995 after it was settled.
25 That just is not correct. The record includes a letter

**Page 63**

1 from Day, Berry & Howard to Aetna, including the various
2 state court and various Federal Court complaints. And
3 they were forwarded in 1993. And there is a letter from
4 Aetna forwarding those on to Liberty Mutual. And we
5 have found those letters in the Liberty Mutual file so
6 that we know that Aetna's letter, Aetna's draft letter
7 mentioning the Federal Court case was forwarded to
8 Liberty Mutual and is found in Liberty Mutual's file.
9 And the letter with the complaints is found in Liberty
10 Mutual's files. So that it is absolutely clear that
11 Liberty Mutual knew about the Federal Court case and
12 all the other state court cases at the time of those
13 letters. And that is July 15, 1993.
14      The letter from Aetna to Liberty Mutual says,
15 "Attached is a spreadsheet. Attached is information
16 that may be of assistance to you in determining Liberty
17 Mutual's duty to defend these actions. Attached is a
18 spreadsheet showing expenses to date prepared by Black &
19 Decker. Also attached is a draft reservation letter
20 accepting a portion of the cost of defense. I will not
21 send this letter to Black & Decker until Liberty Mutual
22 got back to them. Hopefully, we can come up to a
23 sharing agreement and avoid further litigation with this
24 insured. Finally, attached are copies of the suits
25 filed in this matter." This comes from Liberty Mutual's

**Page 64**

1 file.
2      Within the file is the spreadsheet. The
3 spreadsheet has Day, Berry & Howard bills, Arrero (ph.)
4 Engineering, Smith & Rogers tabulated, showing the costs
5 to date. And the draft letter in its opening paragraph
6 -- I won't read the whole thing -- says "By letter of
7 June 22, 1993, Day, Berry & Howard provided Aetna with
8 four complaints filed by the plaintiffs. The complaints
9 were filed in the Superior Court, Milford" and so on.
10 It gives the dates. And "one complaint was filed in the
11 United States District Court for the District of
12 Connecticut." And he includes that in the letter that
13 is found in Liberty Mutual's files.
14      THE COURT: All right.
15      MR. PIROZZOLO: And, further, the Day, Berry &
16 Howard letter in Liberty Mutual's files contains
17 handwritten notations giving the Superior Court
18 complaints of 5-12-89, 12-7-89, 9-21-90 is the United
19 States District Court complaint; and 10-4-90, the
20 Superior Court complaint. Those are all in the record,
21 Your Honor.
22      Then there is a handwritten note in the
23 Liberty Mutual file in March of '94. "I note six
24 cases." And it talks about adding those to the DJ list
25 and that they have a block reserved. The amount is

Page 65

1 blocked out. So, well before settlement, Liberty Mutual
2 knew about the case or all of the cases and was invited
3 to participate in the defense.
4       Mr. Lepore is dead wrong on the law of
5 Connecticut. We go to the Murphy case again. And
6 that is about notice and prejudice. And Judge Peters
7 holds that under Connecticut law, prejudice is required.
8 And in the absence of prejudice, late notice does not
9 bar coverage. It's explicit in that opinion and it's
10 explicit in the cite. I think he has a cite to it
11 subsequently that Connecticut will provide coverage --
12 or coverage should be provided in the absence of
13 prejudice and, similarly, that tender is not required.
14       Now, we go to what did Liberty Mutual do? In
15 1993 when it got the notice from Aetna -- we'll start
16 with that and I'll back up to the earlier notice. In
17 1993 when it got the notice from Aetna and was invited
18 to participate in the defense, the record will show that
19 only about 35 percent of the work had been done; that
20 the case was still in the discovery stages; that to be
21 done was discovery, further investigation, expert
22 reports, pretrial conference, settlement, mediation.
23 Liberty Mutual had an opportunity to participate in all
24 of that. They could have participated in further
25 discovery. They could have conducted investigations

Page 66

1 that would have made a difference if they felt that they
2 would. They could have participated in trial strategy.
3 They could have participated in settlement strategy,
4 and they could have participated in the settlement
5 negotiations. And, ultimately, the settlement to this
6 case really is nothing more than saying, okay, we'll pay
7 the past expenses and comply with Connecticut law and
8 remediation. And Liberty Mutual could have -- in fact,
9 it still can step in and participate in the dealings
10 that have been going on since that settlement agreement
11 between Black & Decker and the State of Connecticut on
12 the remediation. So, it has had every opportunity to
13 participate and it has chosen not to. There is no way
14 it can meaningfully argue that it's prejudiced.
15       THE COURT: I understand that argument.
16       MR. PIROZZOLO: Okay. Back --
17       THE COURT: Are there other ones that you want
18 to --
19       MR. PIROZZOLO: Let me back up. Because,
20 again, I think that the Court is not being -- actually,
21 from the argument, it's not as clear as it ought to be.
22       The amended state court complaint alleges,
23 among other things, paragraph (6), "Unknown to Farrell
24 prior to May 12, 1986, certain of the premises and
25 assets in the ground water beneath the premises and

Page 67

1 assets were contaminated with heavy metals,
2 polychlorinated biphenyls and other pollutants. As a
3 result of the contamination, Farrell had been damaged.
4 USM caused the contamination prior to May 12th, 1986."
5 Under Connecticut rules of pleading -- and I will cite
6 the case because I don't think it has previously been
7 cited. It is a Superior Court case which says, in
8 effect -- for shorthand, I say "in effect." It says,
9 "Notice Pleading." And it says, first of all, the
10 caption on the count, which Mr. Lepore is relying on.
11 The caption is a nullity. The caption is of no special
12 moment for two basic reasons. There is nothing in our
13 practice book or case law to require the plaintiff to
14 put titles on the counts of his pleading. And, second,
15 the use of a caption to entitle the count is not a
16 factual allegation which one of the opponents must
17 answer, but a legal conclusion of the pleader as to the
18 purported contents of the captioned count. The Court
19 should not be bound by the legal conclusions of pleaders
20 even when they are pleaded as if they were facts. On
21 the contrary, the Court must ignore the pleader's legal
22 conclusions when assessing the sufficiency of the
23 complaint. That case, which is reported at -- it's a
24 Westlaw cite. Actually, it says it's not supposed to be
25 cited, Your Honor. It's at Westlaw 545417. And it's

Page 68

1 a Superior Court case.
2       THE COURT: I'm sorry. The cite is what year?
3       MR. PIROZZOLO: 1999 Westlaw 545417.
4       THE COURT: All right. I'll look at it to see
5 whether I've looked at it.
6       MR. PIROZZOLO: And it says if there's any
7 theory of recovery on the count, then the pleading is
8 sufficient.
9       And there is another Connecticut case that
10 says -- without talking about the practice. Connecticut
11 has its practice book where it controls proceedings in
12 courts. It is Burns v. Colimer. And that is cited
13 at 527A.2d 120 to a similar effect, that you look at
14 the facts alleged and any legal theory that would be
15 supported by the facts as fair game.
16       And, so, on this original complaint, any
17 complaint for damage to the ground water would be within
18 the four corners of the complaint.
19       However, it gets more significant. Also
20 alleged is 22a-134(b) which, under Connecticut law,
21 imposed on Farrell in this case strict liability for
22 cleaning up of contamination. And that statute says
23 specifically where the disclosures are made --
24       THE COURT: What paragraph says that?
25       MR. PIROZZOLO: 22a-134(b).

**Page 69**

1    THE COURT: No, the paragraph in which it's
2 alleged in the state court.
3    MR. PIROZZOLO: Oh, I'm sorry. It's alleged
4 in Count 2, paragraph (21).
5    THE COURT: Okay.
6    MR. PIROZZOLO: It says, "where the provisions
7 of the transfer act are not complied with, Farrell
8 becomes strictly liable to clean up all contamination."
9    THE COURT: Right.
10    MR. PIROZZOLO: Now, at the same time that the
11 Farrell complaint was sent to Liberty Mutual, so was
12 sent the SHW complaint. And the SHW complaint has
13 similar allegations, but it also alleges recovery under
14 Connecticut's CERCLA statute. And that is in that
15 complaint. And I believe that is cited.
16    THE COURT: That's okay. I'm focused on it
17 now. We'll get it.
18    MR. PIROZZOLO: It's in there, Your Honor.
19    Now, the argument that you look to the four
20 corners of the complaint, I believe the Court's comments
21 to Mr. Lepore leaves me easy on that. But I just want
22 to make sure I've covered it. The insurer doesn't get
23 to say you can't bring in extrinsic evidence to defeat
24 the coverage. It's that coverage is determined by
25 what's in the four corners of the complaint on the

**Page 70**

1 substantive allegations.
2    The defendant is Emhart. Emhart is a
3 successor. Emhart is Farrell. Farrell was merged into
4 Emhart. So it's named Emhart, but its former name was
5 Farrell, among other things. But you don't need that.
6 Linda Biagioni's letter to Liberty Mutual sending the
7 complaint said "we're claiming coverage under certain
8 USM policies and also under the Farrell policies". So
9 Liberty Mutual, when it got those state court
10 complaints, knew that the claim was being made under
11 Farrell policies. And it also had, very soon, the whole
12 history of Farrell.
13    So, we start out with they did nothing. You
14 will see in the record, Your Honor, that they requested
15 some information, that there was a dunning letter,
16 "please let us know what you're going to do." Nothing
17 comes. It isn't until 1994 that Liberty Mutual denies
18 coverage. They got a letter in 1990. In 1994, they
19 denied coverage. So, from 1990 to 1994, they presumably
20 were investigating this and certainly should have known
21 about the progress of the case and surely would have
22 known that it is a case as to which the rules of
23 construction demand and require that they discharge
24 their duty to defend.
25    As to the sufficiency of the allegations, the

**Page 71**

1 Reo case in which coverage or the duty to defend was
2 upheld, says "the underlying complaint against the
3 plaintiffs pleads within the policy's coverage by
4 alleging property damage to the state's water supply.
5 Hazardous substances were discharged into the
6 environment, including the waters of the state." And
7 I believe that the Reo case is cited in our papers.
8    THE COURT: Yes.
9    MR. PIROZZOLO: But if the Court needs, I
10 have a Westlaw cite of 1998.
11    THE COURT: I have it. It's 20a-5836.
12    MR. PIROZZOLO: Okay. Thank you, Your Honor.
13    And, so, that case is a Connecticut Superior
14 Court case. Clearly, if you take the allegations in
15 that case, the allegations in the complaint here in
16 issue, Your Honor will find that they match up --
17    THE COURT: Well, let me --
18    MR. PIROZZOLO: -- and there was a duty to
19 defend.
20    THE COURT: Okay. Let me -- not to cut it too
21 short, but that's precisely what I'm going to go back
22 and make sure that I have done adequately.
23    MR. PIROZZOLO: Yes. I mean, I think that's
24 the analysis. And I think the most significant point
25 to emphasize in our Missionaries argument that we

**Page 72**

1 don't get to, that there's automatic liability for
2 indemnification, is that that tender argument is just
3 not applicable. And that's of no moment.
4    THE COURT: All right.
5    MR. PIROZZOLO: And the fact record supports
6 that Liberty Mutual had notice in plenty of time and
7 chose to do absolutely nothing, not even communicate.
8    Your Honor, one thing I noticed in preparing
9 for this argument -- and I'm sorry that I noticed it as
10 early as the past few days -- is that when I tracked
11 down the Murphy case, which is the notice prejudice
12 rule, I asked one of my people to shepardize it just
13 to see what we have in Connecticut on these points.
14 There are a lot of cases. And they are not cited to
15 the Court. And I wondered if -- I don't want to
16 propose rearguing anthing. But if the Court would
17 receive a letter with the cases?
18    THE COURT: I will. But not so much string
19 cite as anything that's critical.
20    MR. PIROZZOLO: Particular -- they do. These
21 cases do articulate particular points on notice and
22 prejudice in particular.
23    THE COURT: Yes, I will. But, again, with --
24    MR. PIROZZOLO: And I think they are
25 instructive. In Connecticut, because it's such a small

## Page 73

1 jurisdiction, often the highest court -- there are very
2 few cases in the highest court. And, so, the Superior
3 Court decisions, I think, become more authoritative than
4 they would be here. And I note that Superior Court
5 Judges seem to write opinions more than we see in
6 Massachusetts. But if I could just -- I won't string
7 cite. But if I --
8      THE COURT: Yes, anything that --
9      MR. PIROZZOLO: I think the Court ought to
10 have this further authoritative --
11      THE COURT: No, I'll accept it, obviously.
12      MR. PIROZZOLO: And I will get that by Monday.
13      THE COURT: Didn't we use Tuesday as a date
14 for something? I can't remember.
15      MR. PIROZZOLO: You mentioned Monday before.
16      THE COURT: Monday. Okay. Then Monday it is.
17      MR. PIROZZOLO: There's no problem. I mean, I
18 have them in my book. I could do it -- if the Court
19 wanted the time, take the time now.
20      THE COURT: No. There's always the
21 possibility of mistranscription -- not possible,
22 certainty of mistranscription here.
23      MR. PIROZZOLO: Thank you very much, Your
24 Honor.
25      THE COURT: Okay. Now, let's turn to -- Mr.

## Page 74

1 Lepore --
2      MR. LEPORE: Just may I -- and I apologize.
3 But the Reo case that was just referenced --
4      THE COURT: Right.
5      MR. LEPORE: -- I acknowledge its existence.
6 I think it's terrifically helpful to Liberty Mutual's
7 position, Your Honor, for the specific reason that the
8 complaint in that case upon which they found a duty to
9 defend specifically alleges off-site contamination of
10 the state's water supply.
11      THE COURT: Well, to the state's properties,
12 the way in which --
13      MR. LEPORE: And there's nothing like that
14 here, nothing.
15      THE COURT: Well --
16      MR. LEPORE: In fact, there is nothing in the
17 complaint that alleges anything except maybe ground
18 water. And as Your Honor is aware -- and I think you
19 were involved years ago in the Aerolocks Harbor or some
20 connection maybe -- do you remember that was primarily
21 PCB contamination? And the PCBs --
22      THE COURT: I can't remember my cases from
23 three weeks ago.
24      MR. LEPORE: It's common knowledge today --
25 and I think it was back in the '80s and '90s as well --

## Page 75

1 that PCBs don't go anywhere. Once they fall, they are
2 there until someone moves them. They don't migrate.
3 And, so, to the extent that Mr. Pirozzolo is focusing on
4 the PCB contamination, which is phenyl something or
5 other, something or other in that allegation in
6 paragraph (21), PCBs don't go anywhere. They don't
7 migrate. That is a fact. And I just wanted Your Honor
8 to be aware of that.
9      THE COURT: Okay.
10      MR. PIROZZOLO: Your Honor, I hate to do this.
11 But, I mean, there is a voluminous record with expert
12 reports. And I believe that it's certainly a fact
13 issue, migration to the water supplies in this case.
14 The experts show they migrate.
15      THE COURT: Well, it's certainly not something
16 I'd know of my own personal knowledge or recollect in
17 any way.
18      MR. PIROZZOLO: I don't think's that's
19 determinative.
20      THE COURT: Okay. I think I understand the
21 issues.
22      Now, let's turn to this schedule. As I
23 indicated or as you might infer, I really do want to get
24 through and have dealt with with particularity these --
25 call them Bell Weather, if you want cites -- but in any

## Page 76

1 event, the cites that you particularly dealt with.
2      I would welcome any suggestion of the
3 sequence. But I want to talk about what the next one
4 is. Because that we can do. What's your pleasure on
5 the next one? We're talking about -- Bostick, we have
6 to put off; the BROS site; the Cross site. BROS was
7 earlier argued. Maybe that's a useful one to deal with.
8      MR. PIROZZOLO: I think as we're going to go
9 through all of the sites, it really doesn't make much
10 difference.
11      THE COURT: Okay.
12      MR. PIROZZOLO: The BROS, Houthe, and I think
13 there's one other under Maryland law, are sort of
14 similar to Farrell in that we did have argument on
15 those --
16      THE COURT: Right.
17      MR. PIROZZOLO: -- years ago.
18      THE COURT: Right.
19      MR. PIROZZOLO: And it would be updating that
20 argument.
21      THE COURT: And the long-term exposure. But I
22 guess --
23      MR. PIROZZOLO: And long-term exposure,
24 there's some developments there. And I don't know if
25 the Court is aware of them. You know, they have paid

## Page 77

1 some of them.

2      THE COURT: I saw --

3      MR. PIROZZOLO: Yes. There are, I think, four

4 of them that have been paid. So, the remaining argument

5 there is timeliness of the payment. And then there are

6 three of them as to where Liberty Mutual claims there

7 was an agreement to forego payment.

8      THE COURT: Right.

9      MR. PIROZZOLO: And we hotly dispute that.

10 And I believe there's clear conflict in the testimony.

11 There's an evidentiary classic fact dispute there.

12      THE COURT: Right.

13      MR. PIROZZOLO: But if the Court wants to be

14 heard further on -- wants us to speak further on that --

15      THE COURT: Well, my view was that I wanted to

16 put the long-term exposure off for a little bit. But I

17 do want to deal with it because it's serious money and

18 has serious dimensions to it, I think, unless I'm wrong

19 about that.

20      So, let me go back to this. We had Bostick,

21 BROS, the Cross site, the Jaffrey landfill site, the

22 Whitman site, and the LTD site plus the Beverly site

23 because you tell me it's a lot of money, so we ought to

24 deal with that. I would propose to take up on July 23rd

25 the BROS site unless there's some objection to that.

## Page 78

1 Why don't we do it in the morning on the 23rd if that's

2 possible? Okay. So, we'll focus on the BROS site. And

3 then you tell me the sequence, having in mind that I'm

4 carving out the 6th, the 20th, the 10th, the 24th.

5      MR. LEPORE: I would think from a money

6 standpoint, perhaps the one after that is the Mass.

7 site, the Whitman site.

8      THE COURT: Whitman?

9      MR. LEPORE: Only because, Your Honor, we need

10 a resolution on some of the Mass. sites as we move

11 forward. The BROS site -- and I understand why Your

12 Honor wants to go forward with that -- it's discrete and

13 we've already argued it. But the fact is New Jersey --

14 it's not as relevant to the overall big picture. But

15 that's your call.

16      THE COURT: Well, I'm not wedded to it. I

17 just picked that one out.

18      MR. PIROZZOLO: I just have a -- on Whitman, I

19 just have a small point of personal privilege. That

20 October 6th date is in a week that I am going to be on

21 vacation with my family, which I will come to argue.

22 But in terms of preparing, I would prefer that Whitman

23 were put to one of the later dates.

24      THE COURT: Well, then, why don't we put BROS

25 there?

## Page 79

1      MR. PIROZZOLO: BROS in that time, yes. That

2 would be good.

3      THE COURT: Yes. But I didn't mean to

4 interrupt people's vacations.

5      MR. PIROZZOLO: No. We have to work, so no

6 problem.

7      THE COURT: All right. So, let's put BROS on

8 the 6th, just because there has been an effort on that.

9 Then what do we want next time? I mean --

10      MR. LEPORE: Whitman is fine. It's up to --

11 that's fine.

12      THE COURT: Whitman.

13      MR. PIROZZOLO: Yes. That will give me time

14 to prepare for it.

15      THE COURT: Okay. All right. Then you'll

16 figure out --

17      MR. LEPORE: Thereafter.

18      THE COURT: -- what the following sequence is

19 that you want to deal with it.

20      MR. LEPORE: That's fine.

21      THE COURT: But now I will focus on Whitman.

22 So let me clarify it for Ms. Greenberg.

23      Whitman on the 23rd. And that's going to be

24 in the morning at 10 o'clock.

25      BROS will be on the 6th. That will be at 2:30

## Page 80

1 3 o'clock? Okay, 3 o'clock.

2      And then those other dates, as you see.

3      Now, with respect to the long-term exposure,

4 there are developments. But are they material to us

5 here?

6      MR. LEPORE: I think so. And to follow up

7 with what Mr. Pirozzolo said, we have paid most of the

8 outstanding bills. There's a dispute about interest,

9 who's responsible for the interest? I'm not sure how

10 that can be resolved at summary judgment, quite frankly.

11 I mean, there is a factual dispute as he points out.

12 And then with respect to the other portions, there is a

13 dispute about whether an agreement existed or not. We

14 have submitted that for argument, Your Honor. And I

15 think, quite frankly, Your Honor can rule, based on what

16 was submitted, as to whether that was a contract or it

17 wasn't a contract.

18      THE COURT: All right.

19      MR. LEPORE: But it's your call, whatever you

20 want to do.

21      THE COURT: Well, is that your view, that

22 really it's the contract instruction on those -- was it

23 three claims?

24      MR. LEPORE: Three, yes.

25      MR. PIROZZOLO: Just to refresh the Court, the

Case 1:04-cv-10651-DPW Document 4-2 Filed 04/16/2004 Page 22 of 35

Page 81

1 parties discussed an agreement and circulated a document
2 that never was signed.
3   MR. LEPORE: That's right.
4   THE COURT: Right. But in any event, that
5 issue, whether or not that is -- that's the only one
6 that's relevant for purposes of summary judgment, isn't
7 it?
8   MR. LEPORE: Yes.
9   MR. PIROZZOLO: That's relevant to three
10 sites.
11   THE COURT: And doable for purposes of summary
12 judgment?
13   MR. PIROZZOLO: I'm sorry?
14   THE COURT: And doable for purposes of summary
15 judgment. I either say it was an agreement or there
16 wasn't an agreement.
17   MR. LEPORE: Right.
18   MR. PIROZZOLO: Well, I disagree with that. I
19 think the record will show there was a fact dispute as
20 to whether or not there was an agreement. Because this
21 is who said what and when, I believe. I'm pretty sure.
22   THE COURT: All right. Why don't you think of
23 how you want to use your time.
24   MR. LEPORE: That's fine.
25   MR. PIROZZOLO: On that, though, there were a

Page 82

1 good number of subsequent submissions. And I would be
2 more comfortable, if the Court is going to take it up,
3 if we do what we've done with some of the others --
4   THE COURT: Yes.
5   MR. PIROZZOLO: -- and repackage what is
6 pertinent. Because I think it will be easier to have
7 some of the pertinent matter lost.
8   THE COURT: Yes. If you both get together and
9 say "look, there's a dispute, a factual dispute," I
10 don't want to deal with that. What I really want to do
11 is give you a series of legal determinations that can
12 guide your discussions further and guide the way in
13 which I deal with the rest of the case.
14   And my sense is that I cannot properly do
15 pretrial for you until I've gone through that. I mean,
16 I can do it, but it's an invitation to open-ended
17 pretrial preparation that's not good for anybody here,
18 least of all the parties. But things become
19 free-forming once you've got a few things -- or more
20 than a few things -- put into place that might be
21 helpful in shaping it for purposes of trial and
22 evidence. But in any event, you'll do it that way and
23 that will give me a better idea of exactly what I'm
24 committing myself to in terms of trial time.
25   MR. PIROZZOLO: I didn't quite hear the last

Page 83

1 of that sentence, but --
2   THE COURT: That will give me a clearer idea
3 of exactly what I'm committing myself to for purposes of
4 trial time.
5   MR. PIROZZOLO: I was going to ask -- and I
6 don't know if the Court is inclined to do this -- if
7 some date can be reserved for trial. My concern is
8 there is -- and I have two patent cases out there that
9 are competing for my time, lengthy trials, and I'll be
10 responding to other courts as to availability.
11   THE COURT: Sure.
12   MR. PIROZZOLO: If we have time reserved, then
13 I can be --
14   THE COURT: What are you looking for? Let
15 me --
16   MR. PIROZZOLO: Well, Mr. Lepore says eight
17 weeks. I really think, once we get going, it will be
18 about four weeks.
19   THE COURT: Well, no. I'm talking about
20 what's the window that you're looking at for purposes of
21 trial. Are you just anticipating that these patent
22 cases are going to come up and they're going to say
23 "here's your trial date" and you don't have anything to
24 protect yourself with?
25   MR. PIROZZOLO: Yes. If this case were

Page 84

1 scheduled in November and December, I would --
2   THE COURT: It won't be.
3   MR. PIROZZOLO: -- I think I'd be okay.
4   THE COURT: It won't be scheduled in November
5 and December. That much I know.
6   MR. PIROZZOLO: So then if I start one of
7 those trials before the end of the year, I won't be
8 running into --
9   THE COURT: No. November and December, I'm
10 going to be in the midst of two things: One, the
11 redistricting case, which is a three-Judge court thing
12 that is just a horror show to schedule. And it's going
13 to be a three-Judge court hearing evidence. And
14 December is a malpractice case, medical malpractice
15 case. January is a possibility.
16   MR. PIROZZOLO: January is a possibility?
17   THE COURT: Yes.
18   MR. PIROZZOLO: Okay.
19   THE COURT: And, frankly, I will carve that
20 time out for us, at least the month of January. We'll
21 see what --
22   MR. PIROZZOLO: That would be very helpful.
23 One of the cases was just reassigned from Judge Keeton
24 to Judge Zobel and we haven't seen her yet. So, I don't
25 know what her intentions are. That case was ready for

Page 85

1 trial. But that means that we could go ahead and plan
2 on it this fall.
3      THE COURT: All right. But that January date
4 is --
5      MR. LEPORE: Yes. And the only caveat, Your
6 Honor, is that I have a trial scheduled on the first
7 Monday in January in Federal Court in Houston. It
8 shouldn't be more than three days. That's -- we have
9 understood it's the first case out, whatever that Monday
10 is after the New Year's. And I don't know where that
11 leaves us. But if this can at least be pushed back a
12 week -- but, you know, who knows? That could settle,
13 too. I just tell you that that's where I am right now.
14      THE COURT: Well, the first Monday in January
15 is the 5th?
16      MR. LEPORE: I think so. I don't recall.
17      THE COURT: All right. Well, --
18      MR. LEPORE: Just so you know.
19      THE COURT: This is a jury claim?
20      MR. LEPORE: Yes, it is jury.
21      THE COURT: So, we'll mark out -- we'll just
22 simply say that the month of January -- I mean, if your
23 case falls through in Houston --
24      MR. LEPORE: Exactly.
25      THE COURT: -- then we'll start earlier.

Page 86

1      MR. LEPORE: Thank you.
2      THE COURT: That's the time period that I
3 think --
4      MR. PIROZZOLO: That's very helpful, Your
5 Honor. Thank you.
6      THE COURT: -- will be helpful on this. Okay.
7 So, Whitman, two weeks from now.
8      MR. LEPORE: Yes.
9      THE COURT: And I will -- no promise. But I
10 will try and get an opinion out dealing narrowly with
11 Ansonia Derby by that time.
12      MR. LEPORE: Your Honor, thank you.
13      MR. PIROZZOLO: Thank you, Your Honor.
14      THE COURT: Thank you.
15
16      RECESSED AT 11:00 A.M.
17
18
19
20
21
22
23
24
25

Page 87

1
2          C E R T I F I C A T E
3
4      I, PAMELA R. OWENS, Official Court Reporter,
5 U. S. District Court, do hereby certify that the
6 foregoing is a true and correct transcription of the
7 proceedings taken down by me in machine shorthand and
8 transcribed by same. I certify that the transcript fees
9 charged and the page format used by me comply with the
10 requirement of this Court's court reporter plan and the
11 requirements of the Judicial Conference of the United
12 States.
13
14
15
16
17
18
19
20
21
22
23
24
25

**—'—**

'55 [1]              17:7
'60s [1] 34:6
'61 [2]     36:2        57:11
'62 [2]     17:8        17:8
'63 [1]     17:8
'67 [10]    19:21       19:23
19:25  20:4    36:2
39:22  41:1    49:18
51:7   53:2
'68 [1]     19:25
'69 [1]     19:25
'71 [9]     19:22       19:23
20:4   39:22   41:1
49:18  51:7    53:2
57:12
'78 [1]     57:12
'80s [1] 74:25
'90s [1] 74:25
'94 [1]     64:23
'95 [3]     49:7        49:8
49:8
'96 [1]     2:17
'occurrence' [2]
60:12  60:12

**—0—**

02110 [1]              1:17
02116 [1]              1:15
02210 [1]              1:21
1:24

**—1—**

1 [3]       1:20        1:21
1:24
10 [6]      1:12        1:14
2:2    19:12   33:15
79:24
10-4-90 [1]            64:19
10th [2] 12:22  78:4
11 [2]      11:22       24:5
11:00 [1]              1:22
86:16
12 [1]      66:24
12-7-89 [1]            64:18
120 [1] 68:13
12th [1] 67:4
13th [1] 15:8
14 [1]      10:17
15 [3]      10:17       33:16
63:13
1800s [1]              40:21
1927 [1] 16:20
1930-1940 [1] 16:19
1937 [1] 17:1
1940 [1] 16:20
1950 [1] 16:23
1952 [1] 16:24
1954 [1] 17:7

1955 [3] 16:24    17:1
17:1
1959 [3] 16:24    16:25
16:25
1960 [4] 16:24    24:5
34:14  35:18
1961 [3] 16:25    17:8
17:22
1963 [1] 17:1
1967 [2] 17:22    38:24
1970 [1] 17:2
1971 [3] 17:21    38:25
1980 [2] 5:25     10:17
1986 [2] 66:24    67:4
1990 [4] 32:25    49:6
70:18  70:19
1993 [3] 63:3     63:13
64:7   65:15   65:17
1994 [3] 70:17    70:18
70:19
1995 [1] 62:24
1998 [1] 71:10
1999 [1] 68:3
1st [2]    38:24    38:25

**—2—**

2 [1]       69:4
20 [1]      10:17
2003 [2] 1:12     2:2
206 [1] 36:19
20a-5836 [1]      71:11
20th [2] 12:21  78:4
21 [2]      69:4    75:6
219 [1] 36:18
22 [1]      64:7
22a-134 [2]       68:20
68:25
23 [1]      15:25
23rd [2] 12:20  77:24
78:1   79:23
24th [2] 12:23  78:4
2:30 [1] 79:25
2nd [1]    14:12

**—3—**

3 [2]       80:1    80:1
3-1/2 [1]          11:13
30 [2]     10:11    11:19
3200 [1] 1:24
35 [1]      65:19
3rd [1]    1:20

**—4—**

40 [1]      35:17
409 [1] 36:19

**—5—**

5 [2]       11:22    11:24

5-12-89 [1]            64:18
50 [1]      1:17
527A.2d [1]            68:13
538 [2]     36:14      36:18
545417 [2]             67:25
68:3
5th [1]     85:15

**—6—**

6 [1]       66:23
6th [5]     12:20      78:4
78:20  79:8    79:25

**—7—**

7 [1]       20:19

**—9—**

9-21-90 [1]            64:18
93A [4] 2:21      3:8
3:12   5:15
9:10 [1] 1:22

**—A—**

A.2d [2] 36:14    36:18
A.M [1]    1:22    1:22
86:16
Abel [1] 6:9
ability [1]            30:9
able [3]    6:7        12:15
55:3
absence [4]            4:8
4:10   65:8    65:12
absolutely [1]    43:23
63:10  72:7
accept [4]             17:14
21:3   55:13   73:11
accepting [1]    63:20
access [1]             29:10
accident [10]     41:2
41:6   41:11   41:12
41:14  41:15   53:23
60:10  60:11   60:21
accidental [1]    41:23
accommodated [1]
4:18
according [1]    21:1
acknowledge [1]
74:5
acknowledged [1]
46:13
acquired [2]      8:4
8:5
act [1]     69:7
actions [1]            63:17
activities [3]    40:18
40:22  41:17
activity [1]           45:15
actual [1]             6:17
add [1]    36:11
added [3]              21:11

28:20  34:13
adding [2]             29:13
64:24
additional [7]    13:11
13:13  16:2    23:23
31:3   55:24   59:6
address [4]            14:8
48:11  56:8    57:5
adequate [2]      18:18
19:17
adequately [1]    71:22
adhesion [7]      32:20
32:23  35:14   36:23
37:13  37:15   37:18
adjourned [2]      2:15
4:18
admittedly [2]    40:7
42:23
advise [1]             6:8
Advisors [1]      7:12
Aerolocks [1]      74:19
Aetna [6]              63:1
63:4   63:14   64:7
65:15  65:17
Aetna's [2]            63:6
affect [2]             24:12
24:19
again [10]             5:20
27:17  32:19   52:3
53:9   53:20   56:8
65:5   66:20   72:23
against [15]           25:5
26:1   27:20   27:20
33:8   39:15   43:10
44:19  45:23   48:24
49:11  49:12   53:23
59:22  71:2
ago [3]    74:19    74:23
76:17
agree [1] 44:4
Agreed [1]             46:11
agreement [9]      20:21
63:23  66:10   77:7
80:13  81:1    81:15
81:16  81:20
ahead [3]              20:2
36:17  85:1
air [2]     61:5    61:7
Aldrich [1]            7:11
alert [1] 4:15
alienated [1]    54:9
allegation [1]    41:2
41:10  42:4    51:19
54:13  67:16   75:5
allegations [5]    69:13
70:1   70:25   71:14
71:15
allege [1]             40:16
alleged [9]            41:7
48:6   51:17   55:20
61:21  68:14   68:20
69:2   69:3
allegedly [2]      2:18

35:19
alleges [5]            41:7
66:22  69:13   74:9
74:17
alleging [1]           71:4
allow [3]              5:12
17:6   61:10
allowed [2]            16:8
61:6
along [2]              5:15
10:12
always [3]             9:13
22:14  73:20
ambiguity [10]    23:7
25:2   25:4    25:25
27:18  27:19   33:6
33:7   33:17   35:5
ambiguous [5]      33:23
33:24  33:25   34:21
35:18
amelioration [1]
21:1
amendatory [8] 20:18
20:19  22:17   22:21
24:9   24:15   25:23
60:10
amended [9]            16:9
20:19  20:21   20:22
27:12  27:12   29:9
60:11  66:22
amendment [18]
20:25  21:8    21:9
21:10  21:15   21:21
22:1   22:6    23:6
23:8   24:21   26:21
27:24  27:24   28:15
33:3   33:4    52:10
amendments [5]
22:4   22:10   24:14
24:14  26:24
America [1]            29:12
American [3]      29:24
29:24  37:13
among [2]              66:23
70:5
amount [1]             64:25
analysis [13]      39:12
39:17  46:7    46:8
47:15  47:15   47:17
48:3   53:21   57:11
59:5   59:8    71:24
analyze [1]            58:17
analyzed [1]      46:5
Ansonia [9]            2:4
16:15  18:2    19:11
35:3   38:20   40:20
54:23  86:11
answer [2]             53:6
67:17
anthing [1]            72:16
anticipated [2] 3:5
19:3
anticipating [1]83:21
anyway [3]             16:12
16:16  17:3

**apart** [1] 43:18
**apologize** [2] 35:10
  74:2
**appear** [1] 42:7
**APPEARANCES** [1]
  1:13
**appellate** [1] 36:21
**applicable** [4] 18:8
  49:18  53:18  72:3
**application** [4] 35:3
  41:22  53:12  56:24
**applied** [1] 31:1
**applies** [4] 23:12
  25:9  29:10  51:7
**appreciate** [1] 60:2
**approaches** [1] 12:6
**appropriate** [2] 10:4
  61:6
**appropriately** [1]
  26:13
**archives** [3] 7:2
  7:18  7:20
**area** [2] 42:4  43:25
**argue** [4] 18:11
  44:19  66:14  78:21
**argued** [7] 25:23
  26:13  62:13  62:17
  62:22  76:7  78:13
**argument** [24] 12:14
  16:16  17:13  26:15
  26:15  50:16  52:4
  54:20  57:20  57:24
  58:4  60:10  62:14
  62:15  66:15  66:21
  69:19  71:25  72:2
  72:9  76:14  76:20
  77:4  80:14
**arguments** [1] 57:7
**arising** [2] 23:13
  23:14  25:9
**Arrero** [1] 64:3
**articulate** [1] 72:21
**ascertain** [1] 6:13
**Ashe** [2] 13:18  15:18
**aspect** [1] 29:3
**aspects** [4] 5:15
  28:2  38:16  38:17
**assertions** [2] 17:15
  17:16
**assessing** [1] 67:22
**assets** [2] 66:25
  67:1
**assistance** [1] 63:16
**associates** [1] 7:21
**assume** [1] 17:24
  51:25  55:13  55:23
  56:24  61:14
**assuming** [1] 15:18
  23:7
**attached** [5] 63:15
  63:15  63:17  63:19
  63:24
**attempt** [1] 33:16

**attention** [1] 26:16
**attitude** [1] 21:19
**August** [5] 11:22
  12:20  12:20  15:7
  15:8
**authoritative** [2]
  73:3  73:10
**automatic** [3] 46:4
  56:23  72:1
**automatically** [1]
  57:2
**availability** [1] 83:10
**available** [2] 13:1
  13:19
**Avenue** [1] 1:15
**avoid** [2] 58:8
  63:23
**aware** [8] 26:2
  39:12  41:20  42:9
  53:21  74:18  75:8
  76:25
**away** [2] 31:25  32:3
**awful** [1] 57:6

### -B-

**b** [2] 68:20  68:25
**backwards** [2] 14:14
  45:16
**bad** [3] 2:21  21:25
  62:17
**badly** [1] 25:20
**bankruptcy** [1] 6:10
**bar** [1] 65:9
**bargaining** [3] 36:24
  37:18  37:23
**based** [1] 80:15
**basic** [1] 67:12
**basis** [4] 2:21  12:14
  55:23  56:1
**bearing** [1] 35:19
**beautiful** [2] 61:1
  61:16
**beauty** [1] 61:14
**become** [3] 50:1
  73:3  82:18
**becomes** [2] 32:5
  69:8
**begin** [1] 2:12
**beginning** [6] 2:12
  21:14  21:16  32:13
  32:16  60:9
**begun** [1] 22:16
**behalf** [2] 1:15
  1:17
**beholder** [1] 61:15
**belied** [1] 60:24
**Bell** [1] 75:25
**belongs** [1] 61:3
**beneath** [1] 66:25
**bent** [1] 45:16
**Berry** [4] 63:1

**64:3  64:7  64:15
  best** [6] 4:24  15:21
  23:7  33:5  41:24
  52:19
**better** [8] 7:1
  20:25  21:7  21:11
  22:10  26:22  52:12
  82:23
**between** [4] 2:19
  4:1  8:20  66:11
**Beverly** [11] 5:17
  5:20  10:7  10:15
  10:21  10:22  11:3
  11:4  12:4  16:13
  77:22
**beyond** [1] 17:17
**Biagioni** [1] 1:19
  7:17
**Biagioni's** [1] 70:6
**big** [6] 11:6  11:9
  11:11  21:12  44:16
  78:14
**bills** [2] 64:3  80:8
**BINDER** [1] 1:16
**binding** [3] 25:18
  25:19  26:3
**biphenyls** [1] 67:2
**bit** [4] 16:14  42:2
  61:20  77:16
**Black** [21] 1:6
  2:13  2:19  7:8
  8:5  8:8  9:5
  10:14  16:25  17:6
  17:16  36:3  39:15
  40:10  41:7  44:15
  45:17  52:4  63:18
  63:21  66:11
**Black's** [2] 20:23
  21:1
**block** [1] 64:25
**blocked** [1] 65:1
**blueprints** [1] 6:19
**book** [3] 67:13  68:11
  73:18
**Bostick** [12] 6:4
  12:5  12:10  13:6
  13:14  13:18  14:24
  15:6  16:3  16:11
  76:5  77:20
**Boston** [4] 1:15
  1:17  1:21  1:24
**bottom** [1] 53:1
**bound** [1] 67:19
**breach** [3] 40:3
  40:9  42:11
**breathe** [1] 61:5
**brief** [2] 36:10  57:24
**briefing** [1] 26:14
**bring** [1] 42:7
  69:23
**BROS** [12] 12:11
  76:6  76:6  76:12
  77:21  77:25  78:2
  78:11  78:24  79:1

**79:7  79:25
**brought** [3] 24:8
  49:1  49:24
**Buell** [1] 42:22
**building** [3] 6:17
  6:20  6:21
**burden** [7] 44:5
  44:7  54:1  54:2
  54:3  54:5  54:6
**Burns** [1] 68:12
**Bush** [1] 27:5
**business** [2] 6:16
  29:24
**buyers** [1] 41:8

### -C-

**C** [2] 87:2  87:2
**CA-96-10804-DPW**
  [2]    1:5    2:1
**California** [1] 52:19
**Canada** [3] 29:13
  29:18  29:18  29:20
  34:1  34:4  34:5
  34:18
**candidly** [1] 25:22
**cannot** [1] 82:14
**capacity** [1] 43:20
**caption** [4] 67:10
  67:11  67:11  67:15
**captioned** [1] 67:18
**careful** [1] 47:14
  47:16
**carefully** [1] 25:23
**Caribbean** [1] 34:10
**carve** [1] 84:19
**carved** [1] 12:9
**carving** [1] 78:4
**case** [83] 2:12  2:18
  5:12  5:15  7:6
  8:22  13:8  18:1
  26:2  26:18  29:19
  30:6  32:21  32:25
  33:21  35:11  35:14
  37:1  37:9  37:12
  37:24  38:1  38:4
  38:6  40:6  41:13
  42:10  43:3  43:3
  43:4  43:12  43:25
  45:11  45:11  45:13
  45:20  45:21  48:8
  49:9  52:8  53:25
  56:20  56:24  57:17
  58:19  59:21  61:1
  61:3  61:4  62:17
  62:24  63:7  63:11
  65:2  65:5  65:20
  66:6  67:6  67:7
  67:13  67:23  68:1
  68:9  68:21  70:21
  70:22  71:1  71:7
  71:13  71:14  71:15
  72:11  74:3  74:8
  75:13  82:13  83:25
  84:11  84:14  84:15
  84:25  85:9  85:23

**cases** [22] 12:19
  24:22  43:2  43:4
  43:14  45:17  45:17
  47:4  56:17  61:15
  61:24  63:12  64:24
  65:2  72:14  72:17
  72:21  73:2  74:22
  83:8  83:22  84:23
**categorical** [1] 51:10
**categories** [1] 9:18
**category** [3] 9:3
  9:7  9:8
**caused** [1] 67:4
**caution** [1] 7:1
**caveat** [1] 85:5
**CERCLA** [2] 45:7
  69:14
**certain** [4] 16:18
  46:3  66:24  70:7
**certainly** [8] 3:11
  9:20  15:10  32:10
  34:4  70:20  75:12
  75:15
**certainty** [1] 73:22
**certify** [2] 87:5
  87:8
**CGL** [2] 40:5  40:8
**challenged** [1] 30:11
**challenging** [1] 30:13
**chance** [1] 7:2
**change** [10] 13:24
  20:25  23:14  24:7
  24:12  24:19  31:4
  31:7  31:17  34:12
**changed** [4] 30:15
  30:18  30:20  30:22
**changes** [2] 22:18
  24:15  26:23
**Charco** [1] 43:4
**charged** [1] 87:9
**checked** [1] 21:12
**Choate** [1] 7:6
**choice** [1] 4:16
**choose** [1] 55:25
**chose** [1] 72:7
**chosen** [1] 66:13
**circulated** [1] 81:1
**circumstances** [3]
  40:5  46:3  61:18
**citation** [1] 38:3
**cite** [9] 36:19  65:10
  65:10  67:5  67:24
  68:2  71:10  72:19
  73:7
**cited** [10]    36:14
  40:6  46:2  61:1
  67:7  67:25  68:12
  69:15  71:7  72:14
**cites** [2] 75:25  76:1
**citing** [2]    35:18
  45:18
**claim** [11]    2:21
  3:8    3:12  18:2

24:7   36:7   40:9
59:11   59:22   70:10
85:19
claiming [3]   35:17
58:22   70:7
claims [11]   17:12
17:20   23:13   23:14
24:1   25:9   25:10
30:1   32:8   77:6
80:23
claims-made [1]
32:6
clarify [1]   79:22
classic [1]   77:11
clause [1]   58:10
clean [5]   44:18
44:19   44:20   44:23
69:8
cleaning [1]   68:22
clear [12]   4:3
23:6   33:21   41:13
46:17   51:6   51:6
54:7   61:11   63:10
66:21   77:10
clearer [1]   83:2
clearly [4]   16:14
36:2   60:20   71:14
client [3]   7:16
44:6   44:7
client's [1]   4:24
clients [1]   6:23
closed [1]   55:6
code [1] 46:8
coincidentally [1]
9:5
Colimer [1]   68:12
collected [1]   7:12
combine [1]   33:2
comfortable [1]
82:2
comfy [1]   22:14
coming [3]   19:6
58:18   61:4
comment [2]   4:13
5:1
commentary [1]
33:3
commenting [2]
4:8   4:10
comments [1]  69:20
committing [2] 82:24
83:3
common [2]   61:2
74:24
communicate [2]
15:19   72:7
companies [5]  24:24
43:10   43:11   45:4
45:8
company [5]   25:5
27:21   29:24   39:19
47:7
compare [2]   39:14

48:24
compel [1]   10:18
compelling [2] 43:18
50:11
competing [2]   44:9
83:9
complaint [39]  39:25
40:1   40:15   42:6
46:12   46:23   48:6
48:14   48:24   49:3
49:11   49:17   50:11
51:1   51:1   51:18
53:13   57:14   57:16
57:19   64:10   64:19
64:20   66:22   67:23
68:16   68:17   68:18
69:11   69:12   69:12
69:15   69:20   69:25
70:7   71:2   71:15
74:8   74:17
complaints [19] 19:14
39:24   39:24   40:2
40:14   40:16   41:5
41:15   49:12   50:17
53:23   54:13   57:9
63:2   63:9   64:8
64:8   64:18   70:10
complete [1]   7:4
completed [1]   58:9
complied [1]   69:7
comply [2]   66:7
87:9
conceding [1]   57:1
concept [1]   33:25
concern [1]   83:7
concerned [2]   17:22
44:11
concerning [3]   16:2
42:4   55:19
conclude [1]   47:5
52:21   56:14
conclusion [1]  41:6
45:14   67:17
conclusions [2] 67:19
67:22
condition [3]   23:24
23:24   41:8
conditions [2]   60:13
60:22
conducted [1]   65:25
conference [2]  65:22
87:11
conflict [1]   77:10
confounds [1]   57:23
confusion [1]   14:10
47:2   62:14
Connecticut [1]
36:19
Conn [1]   36:19
Connecticut [51]
8:7   8:8   32:21
32:22   34:23   35:4
35:4   36:20   37:9
38:6   41:24   42:3
42:13   42:21   43:5

43:9   43:13   43:20
43:25   44:10   44:16
44:17   45:11   45:25
47:4   47:13   48:4
48:20   48:23   52:9
52:20   56:4   56:17
58:23   58:25   61:2
61:11   62:19   64:12
65:5   65:7   65:11
66:7   66:11   67:5
68:9   68:10   68:20
71:13   72:13   72:25
Connecticut's [1]
69:14
connection [1]  74:20
consequence [1]
36:25
consideration [1]
55:15
considerations [1]
44:9
considering [1] 7:19
construction [8]
25:3   25:7   27:3
27:9   32:5   32:20
33:7   70:23
construe [1]   28:9
construed [5]   25:5
25:6   26:1   27:15
33:20
construing [1]  29:16
contact [1]   6:12
contained [1]   36:22
contains [1]   64:16
contaminated [1]
40:11   67:1
contamination [22]
40:14   40:17   40:24
41:9   51:17   51:20
51:21   51:24   52:22
52:23   52:24   52:25
53:24   54:12   54:14
67:3   67:4   68:22
69:8   74:9   74:21
75:4
contend [1]   9:16
contending [1]  59:4
contents [1]   67:18
context [4]   22:2
23:25   55:17   61:16
continue [5]   3:1
30:19   37:17   45:18
56:2
continued [1]   50:23
continues [1]   36:4
continuing [1]  24:2
continuous [2]  60:12
60:22
contra [1]   27:20
contract [13]   32:20
35:14   35:15   36:23
36:24   37:12   40:3
40:9   41:22   42:11
80:16   80:17   80:22
contracts [5]   32:23

32:23   37:15   37:15
37:18
contractual [1]  36:21
contrary [3]   21:10
21:18   67:21
controlled [3]   34:23
35:2   58:25
controlling [1] 45:12
controls [1]   68:11
conversation [1]
2:19
conversations [1]
3:9
cooperation [1] 10:20
copies [1]   63:24
corners [11]   22:17
27:2   48:14   49:21
49:10   49:16   49:21
50:15   68:18   69:20
69:25
corporate [4]   6:8
6:11   7:24   55:18
correct [5]   11:9
22:13   25:7   62:25
87:6
correctly [1]   28:9
cost [1] 63:20
costs [3] 59:9   59:10
64:4
counsel [4]   2:9
2:19   3:1   44:7
count [5]   67:10
67:15   67:18   68:7
69:4
counter [1]   26:21
countries [3]   24:10
24:11   34:8
counts [1]   67:14
couple [5]   15:13
15:14   55:3   56:17
60:8
course [9]   7:5
7:5   7:13   8:5
8:15   22:13   44:24
48:8   61:14
court [310]   1:1
1:10   1:23   2:3
3:2   3:7   3:10
3:12   3:15   3:17
3:20   3:24   4:10
5:2   5:5   5:9
6:5   6:22   7:23
8:1   8:18   8:21
9:8   9:11   9:16
9:22   10:3   10:5
10:12   10:24   11:3
11:5   11:7   11:15
11:18   11:21   11:24
12:1   12:3   13:22
13:24   14:7   14:9
14:13   14:20   14:23
15:2   15:9   15:12
15:16   15:20   15:24
16:6   18:5   18:8
18:10   18:12   18:20
18:23   19:1   19:4

19:7   19:10   19:14
19:16   19:23   20:2
20:5   20:8   20:11
20:14   21:3   21:6
21:16   21:19   22:7
22:19   23:16   23:20
24:24   25:12   25:14
25:16   25:18   25:19
25:24   26:3   26:5
26:6   26:8   26:9
26:10   26:12   26:12
26:14   26:19   27:4
27:16   27:19   27:23
28:8   28:11   29:2
29:22   30:5   30:17
30:21   30:24   31:8
31:15   32:2   32:10
32:14   32:22   33:1
33:5   33:9   33:11
33:14   33:20   33:23
34:11   34:14   34:25
35:7   35:12   36:12
36:15   36:17   36:20
36:21   37:6   37:20
37:22   37:25   38:5
38:7   38:10   38:14
38:20   38:22   39:3
41:18   42:17   42:25
43:16   43:24   44:5
45:25   46:6   46:14
46:18   46:6   46:25
47:6   47:14   47:20
47:23   48:2   48:12
48:15   48:18   49:4
49:14   49:23   50:1
50:4   50:8   50:24
51:9   51:14   51:23
52:2   52:5   52:12
53:7   53:9   54:5
54:21   55:8   55:10
55:13   56:9   57:25
58:3   58:7   59:3
59:8   59:24   60:2
60:4   61:8   61:13
62:4   62:11   62:19
62:24   63:2   63:2
63:7   63:11   63:12
64:9   64:11   64:14
64:17   64:19   64:20
66:15   66:17   66:20
66:22   67:7   67:18
67:21   68:1   68:2
68:4   68:24   69:1
69:2   69:5   69:9
69:16   70:9   71:8
71:9   71:11   71:14
71:17   71:20   72:4
72:15   72:16   72:18
72:23   73:1   73:2
73:3   73:4   73:8
73:9   73:11   73:13
73:16   73:18   73:20
73:25   74:4   74:11
74:15   74:22   75:9
75:15   75:20   76:11
76:16   76:18   76:21
76:25   77:2   77:8
77:12   77:13   77:15
78:8   78:16   78:24
79:3   79:7   79:12
79:15   79:18   79:21
80:18   80:21   80:25

**Court's - eliminated**

CondenseIt!™    LIBERTY MUTUAL INS.

81:4    81:11    81:14
81:22    82:2    82:4
82:8    83:2    83:6
83:11    83:14    83:19
84:2    84:4    84:9
84:11    84:13    84:17
84:19    85:3    85:7
85:14    85:17    85:19
85:21    85:25    86:2
86:6    86:9    86:14
87:4    87:5    87:10
**Court's** [4]    8:25
26:16    69:20    87:10
**Courthouse** [3]    1:21
1:23    1:24
**Courtroom** [1]    1:20
**courts** [5]    26:10
43:9    56:4    68:12
83:10
**cover** [5]    18:22
28:22    40:8    60:15
60:24
**coverage** [58]    8:23
9:4    18:18    19:16
20:20    23:9    23:23
24:3    24:11    24:13
24:17    24:19    24:20
24:25    25:6    25:10
28:1    28:24    28:25
31:11    32:1    32:5
32:11    32:15    35:16
35:17    36:5    39:13
40:25    42:8    43:5
45:16    46:21    47:3
47:18    47:24    54:16
51:4    53:19    54:16
56:12    56:15    56:20
56:22    57:3    58:17
58:20    58:21    65:9
65:11    65:12    69:24
69:24    70:7    70:18
70:19    71:1    71:3
**covered** [5]    40:4
51:1    55:21    59:15
69:22
**covering** [1]    60:20
**covers** [1]    61:17
**cows** [2] 60:19    60:19
**create** [1]    33:16
**credulity** [1]    40:8
**critical** [2]    56:3
72:19
**critique** [1]    27:5
**Cross** [3]    12:11
76:6    77:21
**cross-examine** [1]
4:25
**cross-examining** [1]
4:7
**cut** [1]    71:20

**-D-**

**daily** [1] 40:23
**damage** [3]    41:3
53:4    53:24    68:17
71:4

**damaged** [1]    67:3
**dangerous** [1]    30:8
**date** [12] 2:16    14:12
40:21    50:21    53:13
63:18    64:5    73:13
78:20    83:7    83:23
85:3
**dates** [5] 13:1    14:25
64:10    78:23    80:2
**dating** [1]    40:18
**days** [8] 7:1    10:11
11:19    14:5    15:13
15:14    72:10    85:8
**dead** [1] 65:4
**deal** [16] 5:9    5:15
14:15    16:12    38:14
46:24    51:16    51:23
56:18    58:12    76:7
77:17    77:24    79:19
82:10    82:13
**dealing** [12]    33:19
35:20    36:25    38:23
39:4    45:12    45:21
57:9    57:11    58:25
60:16    86:10
**dealings** [1]    66:9
**deals** [2] 5:10    16:7
**dealt** [2] 75:24    76:1
**decades** [6]    40:18
40:21    40:21    40:22
41:10    50:23
**deceit** [2]    40:4
40:13
**deceived** [1]    41:8
**December** [4]    84:1
84:5    84:9    84:14
**decided** [3]    25:20
26:4    45:21
**decides** [1]    57:10
**decision** [2]    42:22
52:20    61:1
**decisions** [3]    46:1
46:2    73:3
**Decker** [20]    1:6
2:13    2:19    7:8
8:5    8:8    9:6
10:14    16:25    17:16
36:3    39:15    40:11
41:7    44:15    45:17
52:4    63:19    63:21
66:11
**Decker's** [1]    17:6
**declines** [1]    47:7
**deems** [1]    10:3
**deep** [2] 44:1    44:6
**defeat** [1]    69:23
**defend** [31]    18:16
42:4    42:6    45:14
46:3    46:24    47:3
47:7    47:9    47:23
48:4    48:9    49:21
50:18    54:15    54:18
55:11    55:23    56:1
56:6    56:11    56:21
56:25    57:19    58:11

58:20    63:17    70:24
71:1    71:19    74:9
**defendant** [2]    1:7
70:2
**Defendants** [1] 1:18
**defending** [1]    24:1
**defense** [11]    17:17
42:18    53:14    58:9
58:10    59:7    59:9
59:10    63:20    65:3
65:18
**defenses** [1]    39:19
**definition** [1]    21:10
26:21    33:4
**definitions** [2] 33:18
41:12
**degree** [2]    18:15
50:10
**deliberate** [2]    41:16
41:16
**demand** [1]    70:23
**denied** [1]    70:19
**denies** [1]    70:17
**deny** [4] 17:4    47:9
56:2    56:2
**deposition** [10] 2:11
2:13    2:14    2:15
2:16    3:4    4:6
4:17    4:18    16:9
**depositions** [1] 10:20
**Derby** [9]    2:5
16:15    18:2    19:11
35:3    38:20    40:20
54:23    86:11
**describe** [1]    41:24
**description** [2] 7:20
7:23
**designed** [1]    60:23
**determination** [1]
56:1
**determinations** [2]
17:10    30:10    82:11
**determinative** [1]
75:19
**determine** [4]    39:12
46:20    47:2    52:19
**determined** [1] 69:24
**determining** [2] 47:25
63:16
**develop** [1]    55:24
**developed** [6]    46:16
46:19    50:20    50:21
51:21    56:13
**developments** [2]
76:24    80:4
**diagrams** [1]    6:20
**dictionary** [8]    20:23
20:24    20:24    21:9
21:13    21:13    33:18
41:12
**die** [1]    60:20
**differ** [1]    9:20
**difference** [1]    27:15

37:5    66:1    76:10
87:5
**different** [12]    8:4
27:14    30:3    30:6
32:21    37:9    50:6
50:8    52:11    52:15
59:4    59:5
**differential** [1] 3:25
**differentiate** [1]
28:18
**differentiated** [1]
48:3
**dimensions** [1] 77:18
**directly** [3]    56:18
58:5    58:7
**disagree** [1]    81:18
**discard** [1]    29:15
**discharge** [2]    40:23
70:23
**discharged** [1]    71:5
**disclosure** [2]    7:4
9:14
**disclosures** [1] 68:23
**discover** [1]    7:6
**discovery** [8]    5:14
7:5    10:8    10:22
54:23    65:20    65:21
65:25
**discrete** [1]    78:12
**discussed** [1]    81:1
**discussions** [1] 82:12
**dispute** [12]    40:20
50:22    54:11    59:17
77:9    77:11    80:8
80:11    80:13    81:19
82:9    82:9
**disputed** [1]    27:13
**disqualify** [1]    4:22
**distracted** [1]    5:13
**District** [8]    1:1
1:2    1:10    1:23
64:11    64:11    64:19
**DJ** [1]    64:24
**doable** [2]    81:11
81:14
**docket** [1]    57:23
**document** [7]    23:2
27:2    27:10    27:14
29:16    55:23    81:1
**documents** [23] 5:22
5:24    6:1    6:2
6:14    6:15    6:23
7:9    7:13    8:6
8:14    8:15    8:23
8:24    9:3    9:6
9:17    10:2    10:17
11:2    47:18    54:24
55:7
**doesn't** [13]    4:11
5:1    22:1    27:4
27:6    28:3    28:4
33:18    34:4    44:2
57:1    69:22    76:9
**dollars** [4]    11:6

11:10    19:8    19:11
13:21
**done** [10]    26:19
14:5    45:3    52:18
54:23    57:12    65:19
65:21    71:22    82:3
**DOUGLAS** [1] 1:9
**down** [5]    26:19
42:22    60:17    72:11
87:7
**downstream** [1]
60:18
**draft** [3] 63:6    63:19
64:5
**drafting** [1]    32:17
**draftsmanship** [1]
24:21
**draw** [1] 4:1
**drawn** [1]    37:16
**drink** [1]    60:19
**dump** [1]    60:17
**dunning** [1]    70:15
**duplication** [1]  28:10
**duplicative** [1]  27:11
**duration** [1]    13:7
**during** [1]    29:11
**duty** [31]    18:16
42:5    45:14    46:3
46:24    47:2    47:7
47:9    47:11    47:23
47:24    48:4    48:5
48:9    49:21    54:15
54:18    55:10    55:23
55:25    56:11    56:21
56:25    57:18    58:10
58:20    63:17    70:24
71:1    71:18    74:8
**duty-to** [1]    42:3
**duty-to-defend** [2]
48:20    58:8

**-E-**

**E** [2]    87:2    87:2
**early** [5] 3:6    8:22
34:22    43:24    72:10
**easier** [1]    82:6
**easy** [1] 69:21
**economists** [1] 31:24
**Edmund** [1]    37:14
**effect** [2]    67:8
67:8    68:13
**effectively** [3] 41:21
51:11    62:18
**effort** [1]    79:8
**efforts** [3]    6:24
7:15    7:16
**eight** [1] 83:16
**either** [5]    9:17
11:11    23:6    52:25
81:15
**eliminate** [1]    23:3
**eliminated** [5]    22:23
22:25    23:5    27:10
27:12

BLACK & DECKER

**elsewhere** [7]    23:13
24:8    24:22    32:14
32:14    32:18    32:19
**emerged** [1]    7:9
**emerges** [1]    7:18
**Emhart** [18]    7:8
7:25    8:4    8:4
8:7    8:7    39:15
39:25    40:1    49:12
49:12    49:15    49:19
70:2    70:2    70:3
70:4    70:4
**emphasize** [2]    20:22
71:25
**emphasized** [1]    60:9
**employee** [1]    8:10
**empty** [1]    22:15
**end** [5]    14:25    21:14
33:5    44:2    84:7
**ended** [1]    43:14
**ending** [1]    31:23
**endorsement** [9]
20:18    20:19    22:17
22:21    24:6    24:10
25:24    28:1    60:11
**endorsements** [1]
24:15
**engaging** [1]    5:13
**Engineering** [1]
64:4
**entirely** [1]    55:4
**entitle** [1]    67:15
**entitled** [1]    39:7
**environment** [4]
30:11    30:14    44:24
71:6
**environmental** [1]
44:21
**environmentalism** [1]
43:22
**equating** [1]    27:13
**erred** [1] 26:9
**errors** [1]    22:13
**ESQ** [4] 1:14    1:14
1:16    1:16
**essence** [1]    40:15
**establish** [3]    54:1
54:1    54:12
**established** [2] 50:21
56:14
**establishment** [1]
54:3
**ethical** [2]    4:4
4:20
**evaluation** [1]    48:8
**event** [4]    4:25
76:1    81:4    82:22
**everywhere** [6] 23:23
24:17    28:5    28:19
30:14    40:24
**evidence** [11]    16:21
17:2    25:8    46:23
50:5    55:16    55:19

**evidentiary** [1] 77:11
**exactly** [5]    25:18
60:15    82:23    83:3
85:24
**example** [1]    60:17
**examples** [1]    37:17
**except** [5]    23:18
26:6    34:4    59:13
74:17
**excess** [2]    6:25
19:19
**exclusion** [13]    17:16
17:18    17:21    39:2
39:11    42:24    51:5
53:13    53:15    53:16
54:4    54:14    62:8
**exclusions** [1] 39:19
**excuse** [1]    17:15
**exhibits** [1]    55:1
**existed** [1]    80:13
**existence** [3]    16:21
26:23    74:5
**existing** [4]    23:4
23:8    28:20    28:20
**expect** [4]    5:8
16:2    30:11    43:9
**expectation** [1] 16:16
**expected** [3]    41:3
53:25    54:20
**expenses** [2]    63:18
66:7
**experience** [1]    3:3
**expert** [4]    13:8
16:11    65:21    75:11
**experts** [2]    50:12
75:14
**explained** [2]    25:24
26:17
**explains** [1]    24:6
**explanatory** [2] 24:16
26:25
**explicated** [1]    26:17
**explicit** [2]    65:9
65:10
**exposure** [8]    12:12
31:21    60:13    60:22
76:21    76:23    77:16
80:3
**expressions** [1] 27:14
**extend** [2]    3:17
3:20
**extends** [1]    3:14
**extent** [1]    75:3
**extra** [2] 31:13    31:20
**extreme** [1]    59:20
**extrinsic** [5]    46:23
50:4    55:15    55:19
69:23
**eyes** [1]    61:14

-F-

**F** [1]    87:2
**facility** [1]    6:9
**fact** [15] 31:4    34:21
42:20    45:4    50:5
51:20    52:18    66:8
72:5    74:16    75:7
75:12    77:11    78:13
81:19
**facts** [20]    40:19
42:7    42:8    42:12
43:6    45:21    46:9
46:10    46:16    46:18
47:2    48:25    50:20
50:21    51:21    56:13
56:15    67:20    68:14
68:15
**factual** [4]    42:5
67:16    80:11    82:9
**failing** [1]    50:17
**fair** [6]    4:13    4:15
41:4    44:13    59:19
68:15
**fairness** [2]    8:12
10:14
**faith** [6] 2:21    59:17
**fall** [3]    34:19    75:1
85:2
**falls** [1] 85:23
**family** [1]    78:21
**far** [2]    10:12    30:15
**Farrell** [24]    6:3
16:20    16:24    17:8
34:22    38:25    40:1
49:17    49:19    50:16
53:1    58:24    66:23
67:3    68:21    69:7
69:11    70:3    70:3
70:5    70:8    70:11
70:12    76:14
**farther** [2]    37:2
37:4
**fashion** [1]    3:25
42:14    58:11    61:22
61:24
**fate** [1]    6:1
**faulty** [1]    24:22
**favor** [5]    25:6
25:6    44:20    44:21
44:23
**favorable** [1]    59:14
**feast** [1] 13:9
**Federal** [7]    1:17
45:6    62:24    63:2
63:7    63:11    85:7
**fees** [1]    87:8
**felt** [1]    66:1
**fertilizer** [1]    22:5
**few** [7]    14:4    46:1
60:6    72:10    73:2
82:19    82:20
**fighting** [1]    35:16
**figure** [2]    11:1

79:16
**file** [8]    2:23    5:5
14:19    63:5    63:8
64:1    64:2    64:23
**filed** [7] 2:18    39:15
49:12    63:25    64:8
64:9    64:10
**files** [6] 7:9    24:5
60:14    63:10    64:13
64:16
**filing** [6]    2:8
2:22    11:22    14:17
14:18    15:5
**filings** [1]    15:7
**final** [1] 12:14
**finally** [2]    42:1
63:24
**finance** [1]    44:1
**financing** [1]    44:3
**fine** [6]    12:2    36:7
79:10    79:11    79:20
81:24
**first** [18] 2:4    8:6
9:17    29:1    35:10
37:13    39:12    39:16
39:23    46:11    49:11
56:11    60:8    62:16
67:9    85:6    85:9
85:14
**five** [2]    12:8    22:25
**flaws** [1]    32:17
**Floor** [1]    1:20
**flows** [1]    57:13
**focus** [14]    2:7
10:16    10:18    17:12
20:17    39:21    45:3
49:2    49:9    53:2
54:10    54:18    78:2
79:21
**focused** [2]    48:13
59:8    69:16
**focuses** [1]    42:23
**focusing** [1]    75:3
**follow** [2]    27:2
80:6
**following** [3]    12:24
31:14    79:18
**forego** [1]    77:7
**foregoing** [1]    87:6
**foreign** [3]    24:10
24:11    27:5
**foresaw** [1]    4:14
**forfeiture** [3]    20:17
36:4    36:8
**forgiving** [1]    42:3
**form** [3] 2:20    16:18
36:23
**format** [1]    87:9
**former** [1]    70:4
**forth** [4] 14:16    45:10
57:12    57:24
**forward** [2]    78:11
78:12

**forwarded** [2]    63:3
63:7
**forwarding** [1]    63:4
**found** [3]    37:7
37:10    63:5    63:8
64:1    63:13    74:8
**four** [17] 18:6    20:21
22:17    22:23    27:1
48:14    49:2    49:10
49:16    49:20    50:15
64:8    68:18    69:19
69:25    77:3    83:18
**four-year** [1]    39:5
**frame** [1]    16:14
**framed** [1]    16:4
**framework** [2]    17:9
17:19    59:5
**frankly** [6]    13:3
40:4    43:9    80:10
80:15    84:19
**fraud** [2]    40:3
40:13
**free** [1]    58:13
**free-forming** [1]
82:19
**frequently** [1]    44:5
**Fromm** [1]    21:1
**full** [1]    9:14
**future** [1]    5:10

-G-

**game** [1] 68:15
**gardening** [1]    22:3
**generally** [1]    56:4
**given** [3]    13:7
25:7    42:2    56:13
**giving** [4]    6:11
6:18    7:19    64:17
**glass** [1] 22:14
**gleaned** [2]    23:22
24:13
**goes** [5]    41:9    43:2
50:24    55:10    60:18
**gone** [4]    6:21    35:7
46:4    82:15
**good** [6] 4:2    10:20
59:17    79:2    82:1
82:17
**Government** [1]
45:6
**granting** [1]    16:17
**graphic** [1]    29:6
**gray** [1]    22:9
**Greenberg** [1]    79:22
**ground** [14]    51:23
52:7    52:12    52:21
60:18    60:25    61:2
61:9    61:11    61:20
62:3    66:25    68:17
74:17
**guess** [10]    4:13
7:14    21:16    22:12
22:14    22:15    38:7

41:23   53:3   76:22
**guide** [2]           82:12
82:12
**guidelines** [1]   45:7

-H-

**Haley** [1]           7:11
**half** [1]   22:15
**Hall** [1]   7:7
**handling** [2]   8:24
30:1
**handwritten** [2] 64:17
64:22
**happening** [1]   13:12
**happy** [1]           35:22
**Harbor** [1]         74:19
**hard** [1]   15:21
**harm** [1] 41:16
**hate** [1]   75:10
**Hazardous** [1]   71:5
**head** [4]  20:7      31:8
45:1   45:1
**headed** [3]         44:15
45:9   48:22
**heal** [1]   22:13
**hear** [2]  18:8   82:25
**heard** [6]           29:3
35:10   38:18   38:19
39:5   77:14
**hearing** [4]         1:11
12:19   14:25   84:13
**heavy** [1]           67:1
**held** [1] 62:20
**help** [1] 33:18
**helpful** [5]         74:6
82:21   84:22   86:4
86:6
**hereby** [1]         87:5
**hiding** [1]           40:14
**highest** [3]         36:20
73:1   73:2
**highly** [1]           43:20
**highly-educated** [1]
44:11
**himself** [1]         4:18
**history** [8]           6:8
3:3   5:20   10:11
6:11   7:25   21:7
43:2   43:14   50:20
70:12
**hold** [2] 27:20   36:15
**holds** [1]           65:7
**holiday** [1]   12:22
**Holland** [1]   1:14
**Honor** [79]         2:10
3:3   5:20   10:11
11:14   11:20   12:2
14:8   14:16   14:22
15:1   15:22   20:16
22:3   27:9   33:13
34:2   34:21   34:21
35:22   36:1   36:10
36:13   37:19   38:2

38:21   38:24   39:6
39:11   40:2   41:5
42:19   44:14   44:25
45:9   46:2   46:12
47:19   47:24   48:13
49:11   50:14   52:8
52:21   53:12   53:20
53:21   54:2   54:17
55:1   55:4   56:19
57:4   57:10   57:21
59:23   59:25   60:6
62:10   64:21   67:25
69:18   70:14   71:12
71:16   72:8   73:24
74:7   74:18   75:7
75:10   78:9   78:12
80:14   80:15   85:6
86:5   86:12   86:13
**Honor's** [1]         56:7
**HONORABLE** [1]
1:9
**Hopefully** [1]   63:22
**hopes** [1]           12:15
**horrible** [1]   45:21
**horror** [1]           84:12
**hotly** [1] 77:9
**Houston** [2]   85:7
85:23
**Houthe** [1]   76:12
**Howard** [4]         63:1
64:3   64:7   64:16
**human** [1]   8:11
**hundreds** [2]   10:14
54:24
**hurts** [1] 34:20

-I-

**idea** [3]  61:22   82:23
83:2
**identified** [1]   3:16
**ignore** [1]           67:21
**III** [1]   1:14
**Illinois** [1]   62:19
**imagine** [1]         14:3
35:13
**immediately** [2]
14:4   14:4
**implications** [1]
18:13
**imposed** [1]   68:21
**improperly** [1] 47:10
**improves** [1] 21:12
**improvidently** [1]
47:10
**incentives** [1] 47:8
**inclined** [2]   14:16
83:6
**include** [1]   27:6
**included** [1]   56:5
**includes** [3]   60:12
62:25   64:12
**including** [3]   43:25
63:1   71:6

**increase** [1]   30:12
**Indeed** [1]           25:1
25:21
**indemnification** [1]
72:2
**indemnity** [10] 46:4
47:11   47:15   47:17
56:22   56:23   57:2
58:8   58:13   58:20
**index** [1]   8:13
**indicated** [1]   75:23
**indicates** [2]   47:17
50:19
**industrial** [1]   6:2
**industrialized** [2]
43:21   44:10
**infer** [1] 75:23
**information** [7] 6:18
13:13   19:5   20:9
55:25   63:15   70:15
**inquire** [1]   48:6
**Inquiring** [1]   48:7
**inquiry** [2]   5:25
7:16
**instead** [2]   45:4
45:11
**instinct** [3]   21:11
21:18   62:6
**instructed** [1]   7:16
**instruction** [1]   80:22
**instructive** [1]   72:25
**insurance** [14]   25:4
27:21   32:23   35:15
36:22   37:12   37:15
37:17   39:19   43:10
43:11   45:4   45:8
47:7
**insured** [12]         34:20
39:16   41:4   41:20
49:15   49:19   49:19
50:6   51:1   51:2
55:19   63:24
**insurer** [2]   37:16
69:22
**insuring** [2]   20:21
29:24
**intact** [2]           24:21
25:11
**intend** [5]   2:25
5:5   7:3   12:7
18:10
**intended** [6]   24:16
24:20   41:3   53:25
54:20   60:15
**intends** [1]   23:3
**intent** [2]           23:21
24:13
**intention** [1]   23:22
**intentional** [2] 41:16
41:17
**intentions** [1]   84:25
**interest** [4]   4:24
20:12   80:8   80:9
**interested** [1]   56:5

**interesting** [8]   22:11
33:18   34:15   34:16
35:21   43:16   45:20
45:24
**interests** [1]   29:25
**interfere** [1]   12:24
**International** [1]
21:2
**interpret** [1]   28:24
**interpretation** [1]
35:23
**interrupt** [1]   79:4
**intricate** [1]   6:11
**introduced** [1]   37:13
**introduction** [1]
31:1
**intuitive** [1]   26:21
**investigating** [1]
70:20
**investigation** [2]
50:19   65:21
**investigations** [1]
65:25
**invitation** [1]   82:16
**invited** [2]         65:2
65:17
**inviting** [1]   26:16
**involved** [3]   11:3
46:10   74:19
**ironically** [1]   22:12
**irrelevant** [2]   35:24
58:20
**Island** [1]           33:20
**issue** [16]           3:24
4:9   4:20   8:4
8:17   8:20   32:22
35:4   36:22   42:6
56:12   58:8   58:9
71:16   75:13   81:5
**issued** [2]   42:1
**issues** [7]           9:5
12:21   16:7   36:25
37:1   41:25   75:21
**itself** [7] 2:22   12:10
41:6   44:2   50:11
55:24   62:18

-J-

**JACK** [1]           1:16
**jacket** [1]   29:8
**Jaffrey** [2]   12:12
77:21
**James** [1]   1:14
**JANICE** [1]   1:14
**January** [5]           84:15
84:16   84:20   85:3
85:7   85:14   85:22
**Jersey** [1]           78:13
**Jim** [1] 13:18
**John** [1] 1:23
**Joseph** [1]           1:23
**Judge** [6]           1:10

32:25   36:19   65:6
84:23   84:24
**Judges** [1]           73:5
**judgment** [17]   10:6
12:3   12:15   12:17
13:3   14:1   16:4
16:17   17:4   17:5
39:7   47:25   55:6
80:10   81:6   81:12
81:15
**Judicial** [1]   87:11
**July** [11] 1:12   2:2
12:20   15:25   24:5
38:24   38:25   49:18
49:18   63:13   77:24
**jump** [1] 51:12
**June** [2] 14:12   64:7
**jurisdiction** [1] 73:1
**jury** [3]  4:1   85:19
85:20

-K-

**keep** [1] 43:7
**Keeton** [1]           84:23
**KELLEY** [1]   1:14
**kind** [15]           5:13
6:9   8:11   11:8
24:3   27:5   34:15
34:16   39:18   42:13
43:16   47:14   60:15
60:16   60:23
**kinds** [1]           51:3
**knew** [3]           63:11
65:2   70:10
**Knight** [1]   1:14
**knowledge** [3] 62:21
74:24   75:16
**known** [7]           7:7
48:25   49:4   57:21
58:11   70:20   70:22
**knows** [2]           3:23
6:1   85:12

-L-

**L** [1]   1:16
**l3th** [1]   15:7
**1963** [1] 17:1
**Labor** [1]           12:22
**landfill** [1]   77:21
**language** [15]   23:17
27:23   27:24   28:20
28:21   29:13   33:17
33:19   34:2   34:19
34:20   35:18   35:23
**larger** [1]           43:17
**last** [7]  11:11   25:22
33:15   46:1   62:13
62:17   82:25
**late** [5]  57:13   58:18
58:21   59:23   65:8
**law** [27] 13:11   20:23
34:23   35:2   35:4
40:7   41:13   41:24

LIBERTY MUTUAL INS.   Case 04-cv-10651-DPW   Document 4-2   Filed 04/16/2004   Page 30 of 35
Condense It!                                                                    lawsuit - need
JULY 10, 2003

| | | |
|---|---|---|
| 42:3 | 42:13 | 42:21 |
| 43:12 | 43:25 | 45:11 |
| 48:5 | 48:20 | 48:23 |
| 58:23 | 59:1 | 61:2 |
| 62:17 | 65:4 | 65:7 |
| 66:7 | 67:13 | 68:20 |
| 76:13 | | |

**lawsuit** [3] 2:22
49:24 50:1

**lead** [1] 52:20

**least** [9] 12:13 18:6
27:17 34:8 43:24
59:14 82:18 84:20
85:11

**leave** [3] 24:20 28:6
57:4

**leaves** [2] 69:21
85:11

**led** [1] 42:10

**left** [2] 11:1 13:20

**legal** [10] 8:20
9:5 30:1 37:14
59:5 67:17 67:19
67:21 68:14 82:11

**legislative** [1] 52:11

**Legislature** [1] 52:9

**legitimate** [1] 53:14

**lend** [1] 41:6

**lengthy** [1] 83:9

**Lepore** [133] 1:14
2:10 4:4 4:15
5:2 5:4 5:7
5:22 6:8 7:4
7:19 8:12 9:13
10:6 10:10 10:13
10:25 11:4 11:6
11:9 11:17 11:19
12:2 14:8 14:10
14:14 14:21 15:17
15:21 19:5 19:15
19:21 20:1 20:3
20:6 20:9 20:13
29:2 29:4 29:7
33:10 33:12 33:15
34:13 34:17 35:1
35:9 35:13 38:19
38:21 38:23 39:4
42:16 42:19 43:1
43:23 44:4 44:13
46:11 46:15 46:20
46:24 47:1 47:12
47:16 47:22 47:24
48:10 48:13 48:17
48:21 49:5 49:8
49:15 49:25 50:3
50:7 50:14 51:8
51:12 51:15 51:25
52:3 52:6 52:14
53:8 53:11 54:6
54:22 55:9 55:12
56:7 56:10 57:16
58:2 58:6 58:15
59:6 59:19 59:25
60:3 60:9 62:21
65:4 67:10 69:21
74:1 74:2 74:5
74:13 74:16 74:24
78:5 78:9 79:10

| | | |
|---|---|---|
| 79:17 | 79:20 | 80:6 |
| 80:19 | 80:24 | 81:3 |
| 81:8 | 81:17 | 81:24 |
| 83:16 | 85:5 | 85:16 |
| 85:18 | 85:20 | 85:24 |
| 86:1 | 86:8 | 86:12 |

**less** [2] 20:6 30:25

**letter** [22] 6:6
24:5 26:25 32:3
35:18 38:2 62:25
63:3 63:6 63:6
63:9 63:14 63:19
63:21 64:5 64:6
64:12 64:16 70:6
70:15 70:18 72:17

**letters** [2] 63:5
63:13

**liability** [3] 31:24
68:21 72:1

**liable** [1] 69:8

**Liberty** [41] 1:4
16:17 17:14 17:25
22:20 23:2 24:5
24:16 26:1 29:23
31:10 33:6 33:8
35:19 35:20 60:14
62:23 63:4 63:5
63:8 63:8 63:9
63:11 63:14 63:16
63:21 63:25 64:13
64:16 64:23 65:1
65:14 65:23 66:8
69:11 70:6 70:9
70:17 72:6 74:6
77:6

**Liberty's** [2] 2:5
17:5 35:22

**life** [2] 21:20 37:15

**light** [2] 10:7 59:14

**likelihood** [1] 50:9

**limited** [1] 16:18

**limiting** [1] 31:21

**limits** [2] 20:3
20:5

**Linda** [1] 1:19
70:6

**line** [2] 43:3 53:1

**lingering** [1] 58:14

**list** [2] 14:25 64:24

**litigation** [3] 8:25
9:4 63:23

**LLP** [1] 1:14

**log** [5] 8:1 8:16
9:12 9:14 10:2

**long-term** [6] 12:12
40:17 76:21 76:23
77:16 80:3

**longer** [1] 13:19
48:9 55:25

**look** [24] 7:17 8:8
13:3 15:5 23:17
35:7 37:20 37:22
39:23 40:15 46:12
46:15 46:22 48:24
50:5 50:12 55:21
55:22 57:13 58:15

| | | |
|---|---|---|
| 68:4 | 68:13 | 69:19 |
| 82:9 | | |

**looked** [2] 15:3
68:5

**looking** [12] 13:25
40:19 42:12 45:6
45:8 46:9 46:23
49:16 49:20 58:16
83:14 83:20

**looks** [1] 8:9

**loss** [1] 18:19

**lost** [1] 82:7

**LTD** [1] 77:22

**-M-**

**machine** [1] 87:7

**major** [1] 21:13

**makes** [3] 21:11
23:24 44:15

**malpractice** [2] 84:14
84:14

**manhood** [1] 11:16

**March** [2] 2:11
64:23

**mark** [1] 85:21

**Maryland** [3] 6:25
8:8 76:13

**Mass** [1] 35:2
78:6 78:10

**Massachusetts** [9]
1:2 1:15 1:17
1:21 1:24 35:5
40:7 58:24 73:6

**Master** [1] 44:3

**match** [1] 71:16

**material** [1] 13:24
80:4

**materials** [1] 5:17
16:2

**matter** [5] 12:5
17:3 42:7 63:25
82:7

**matters** [3] 4:1
4:1 42:5

**may** [30] 3:6 6:15
6:16 6:20 8:21
11:17 14:8 33:10
33:10 33:12 34:7
37:8 37:9 38:19
39:5 47:6 47:10
48:7 48:11 56:8
56:21 57:5 58:10
58:14 58:23 60:7
63:16 66:24 67:4
74:2

**McCarthy** [1] 1:17

**mean** [34] 2:9
4:3 7:23 12:24
14:2 14:18 20:8
23:16 25:1 27:5
28:3 28:4 28:25
29:20 30:22 34:4
34:7 34:15 42:17
44:19 45:1 47:3
48:7 48:15 53:1

| | | |
|---|---|---|
| 57:1 | 71:23 | 73:17 |
| 75:11 | 79:3 | 79:9 |
| 80:11 | 82:15 | 85:22 |

**meaning** [3] 23:6
24:13 27:15

**meaningfully** [1]
66:14

**means** [8] 18:15
23:8 27:12 29:17
29:18 31:25 53:22
85:1

**meant** [1] 28:19

**mediation** [1] 65:22

**medical** [1] 84:14

**memoranda** [1] 24:16

**mentioned** [1] 73:15

**mentioning** [1] 63:7

**merged** [1] 70:3

**merit** [1] 16:22

**merits** [1] 50:10

**metals** [1] 67:1

**middle** [1] 15:15

**midst** [1] 84:10

**might** [6] 9:25
14:3 16:1 54:19
75:23 82:20

**migrate** [1] 75:2

**migrated** [1] 61:21

**migration** [2] 62:2
62:2 62:7 75:13

**Milford** [1] 64:9

**million** [6] 11:13
19:8 19:11 19:13
19:14 19:19

**mind** [8] 12:18 12:18
21:20 21:21 38:3
43:7 61:4 78:3

**minds** [1] 9:20

**mine** [1] 22:8

**minimum** [1] 55:15
59:13

**minutes** [1] 33:16

**misrepresentation** [3]
40:3 40:13 42:11

**Missionaries** [8]
45:19 45:19 45:20
56:19 56:23 58:14
62:12 71:25

**mistake** [3] 26:7
26:12 26:13

**mistaken** [1] 37:8

**mistranscription** [2]
73:21 73:22

**mix** [1] 49:1

**Moakley** [1] 1:23

**modified** [1] 20:21

**modify** [1] 26:22

**moment** [10] 2:14
17:24 33:13 40:20
48:11 49:9 52:1
58:1 67:12 72:3

| | | |
|---|---|---|
| Monday | [9] | 38:8 |
| 38:10 | 73:12 | 73:15 |
| 73:16 | 73:16 | 85:7 |
| 85:9 | 85:14 | |

**money** [7] 18:21
18:23 18:25 40:12
77:17 77:23 78:5

**monitoring** [1] 57:22

**month** [2] 84:20
85:22

**morning** [3] 62:23
78:1 79:24

**most** [3] 8:9 71:24
80:7

**motion** [14] 2:24
5:6 10:6 10:16
10:18 12:3 14:17
16:8 16:17 17:4
17:5 17:6 47:25
48:3

**motions** [1] 13:3

**movable** [1] 13:9

**move** [5] 4:22
5:14 58:5 58:7
78:10

**moved** [1] 8:6

**moves** [1] 75:2

**Ms** [11] 2:11 2:19
3:1 3:5 4:4
4:7 4:16 7:17
49:7 57:15 79:22

**Murphy** [6] 32:21
35:8 35:10 36:13
65:5 72:11

**must** [3] 27:14 67:16
67:21

**Mutual** [21] 1:4
23:3 24:16 29:23
31:10 33:6 33:8
60:14 62:23 63:4
63:5 63:8 63:11
63:14 63:21 64:23
65:1 65:14 65:23
66:8 69:11 70:6
70:9 70:17 72:6
77:6

**Mutual's** [9] 16:17
22:21 63:8 63:10
63:17 63:25 64:13
64:16 74:6

**-N-**

**nail** [2] 45:1 45:2

**name** [2] 61:4
70:4

**named** [1] 70:4

**names** [2] 6:8
6:12

**narrowly** [1] 86:10

**near** [1] 20:10

**necessarily** [3] 47:4
48:21 61:25

**necessity** [1] 44:18

**need** [11] 5:8
20:11 20:17 28:18

needs - Pirozzolo
**JULY 10, 2003**

Condenselt!™

**LIBERTY MUTUAL INS.**

57:13   58:22   60:21
61:6   61:10   70:5
78:9
**needs** [2]        14:5
71:9
**negate** [1]       53:18
**neglecting** [2]   60:10
60:13
**negotiations** [1]
66:5
**neighbor's** [1]   60:19
**neighbors** [1]    61:11
**neither** [4]      9:3
39:1   41:3   53:24
**neutral** [2]      42:4
42:21
**never** [1]        81:2
**new** [5]  13:14   14:18
23:4   78:13   85:10
**next** [12] 12:23   15:15
28:16   28:17   31:13
38:8   38:10   39:18
53:3   76:3   76:5
79:9
**nominal** [1]      24:12
**non-issue** [1]    5:21
**non-jury** [1]     4:1
**none** [1] 51:20
**nor** [4]   9:4        39:1
41:3   53:25
**normal** [1]       37:18
**notations** [1]    64:17
**note** [3] 64:22   64:23
73:4
**noted** [1]        37:14
**nothing** [14]     30:15
30:18   31:16   35:25
36:10   45:19   66:6
67:12   70:13   70:16
72:7   74:13   74:14
74:16
**notice** [14]      16:9
36:9   37:1   59:23
62:21   65:6   65:8
65:15   65:16   65:17
67:9   72:6   72:11
72:21
**noticed** [2]      72:8
72:9
**notification** [1] 36:24
**notion** [2]       60:21
62:16
**November** [3]     84:1
84:4   84:9
**now** [49] 3:16    3:22
5:17   10:5   11:15
12:5   12:24   14:17
16:4   16:6   16:14
17:11   17:25   20:14
24:4   24:21   29:13
29:13   32:9   34:1
34:8   35:16   36:6
38:16   40:10   40:14
40:15   40:18   40:25
41:4   41:23   43:7

49:15   51:4   51:25
53:5   56:17   57:17
65:14   69:10   69:17
69:19   73:19   73:25
75:22   79:21   80:3
85:13   86:7
**nullity** [1]      67:11
**number** [6]       22:18
22:20   22:23   22:25
39:10   82:1
**nunnery** [1]      45:22
45:23

**-O-**

**o'clock** [3]      79:24
80:1   80:1
**object** [1]       4:22
**objected** [3]     2:13
3:4   14:11
**objection** [2]    14:16
77:25
**obligated** [1]    57:2
**observation** [1] 21:22
**obviously** [2]    37:3
73:11
**occurred** [3]     29:11
41:10   53:4
**occurrence** [9]   32:6
32:7   32:8   39:10
41:13   53:22   55:20
59:16   60:23
**occurrence-based** [1]
39:9
**October** [1]      78:20
**odd** [1]  5:23
**off** [6]   12:9       13:20
20:7   31:7   76:6
77:16
**off-site** [6]         51:19
51:21   52:23   52:24
54:14   74:9
**official** [2]         1:23
43:19   87:4
**often** [1] 73:1
**old** [1]  6:2
**on-site** [2]      52:24
54:13
**once** [5]  42:14   54:12
75:1   82:19   83:17
**one** [50]  11:7       12:13
12:16   12:20   12:20
12:23   12:24   17:13
20:7   20:24   23:10
27:10   28:16   34:1
35:24   38:3   39:8
40:6   43:7   45:23
47:8   48:11   49:8
49:12   53:11   54:19
56:20   57:5   57:9
57:14   58:5   58:7
58:15   61:15   61:24
64:10   67:16   72:8
72:12   76:3   76:5
76:7   76:13   78:6
78:17   78:23   81:5

84:6   84:10   84:23
**one-year** [10]    17:23
20:15   20:17   23:12
24:18   25:8   31:2
33:22   36:2   39:1
**ones** [3] 17:18   49:17
66:17
**ongoing** [3]      8:24
41:19   55:3
**onto** [3] 23:8    58:5
58:7
**open** [1] 55:6
**open-ended** [1] 82:16
**opening** [1]      64:5
**operational** [2] 6:2
40:17
**operations** [7]   41:19
41:22   42:9   50:25
50:25   51:3   51:10
**opinion** [2]      65:9
86:10
**opinions** [2]     35:22
73:5
**opponents** [1]   67:16
**opportunity** [7] 14:18
14:19   52:9   52:15
62:6   65:23   66:12
**opposed** [4]      11:15
26:22   35:1   60:22
**opts** [1]  4:12
**order** [6] 5:11    8:22
8:25   13:4   16:8
40:25
**original** [4]     13:18
21:11   23:15   68:16
**otherwise** [2]    24:23
29:1
**ought** [3]            66:21
73:9   77:23
**outlined** [1]     38:17
**outset** [1]       58:18
**outside** [3]      25:9
30:3   51:4   62:7
**outstanding** [1] 80:8
**overall** [1]      78:14
**overriding** [1]   56:12
**overruled** [1]    62:18
**Owens** [1]        1:23
87:4
**own** [5]  12:18   21:19
35:23   47:8   75:16
**owned** [12]       39:10
51:11   51:12   51:16
52:16   52:17   52:22
52:25   53:1   53:12
54:7   62:7
**owners** [1]       40:13
**ownership** [1]    61:23
**Oxford** [2]       20:23
22:13

**-P-**

**P** [1]        1:9

**page** [1] 87:9
**pages** [1]        10:15
**paid** [4]  35:15   76:25
77:4   80:7
**Pamela** [2]          1:23
87:4
**paper** [1]        28:14
**papers** [3]       38:12
44:16   71:7
**paragraph** [8]    20:19
28:16   64:5   66:23
68:24   69:1   69:4
75:6
**paraphrasing** [1]
28:23
**Pardon** [1]       3:19
**parse** [1]        57:10
**parsing** [1]      57:18
**part** [7]  2:21       7:1
23:14   34:6   34:8
34:18   54:9
**participate** [5]  65:3
65:18   65:23   66:9
66:13
**participated** [4] 65:24
66:2   66:3   66:4
**particular** [9]   13:7
21:23   39:20   41:5
46:16   46:19   72:20
72:21   72:22
**particularity** [1]
75:24
**particularly** [5] 13:7
16:19   44:10   56:5
76:1
**parties** [10]         5:13
12:9   15:4   15:25
36:23   37:5   37:8
38:10   81:1   82:18
**party** [2] 44:25   52:22
**passing** [1]      20:12
**past** [4]  42:23   54:22
66:7   72:10
**patent** [2]           83:8
83:21
**pay** [1]  66:6
**payment** [2]      77:5
77:7
**PCB** [2]  74:21   75:4
**PCBs** [3]             74:21
75:1   75:6
**peculiar** [1]     10:16
**pension** [1]      8:10
**people** [3]           6:12
56:6   72:12
**people's** [2]     12:25
79:4
**percent** [1]      65:19
**perhaps** [4]      7:19
11:11   21:20   78:6
**period** [15]      9:23
11:16   16:10   17:22
18:17   20:21   29:9
29:11   38:24   39:5

39:16   39:20   39:22
53:5   86:2
**periods** [2]          5:24
31:1
**permit** [1]           3:1
17:15   17:20
**person** [2]       13:18
22:8
**personal** [2]     75:16
78:19
**perspective** [2] 43:7
43:8
**pertain** [1]      9:3
**pertaining** [2]   8:23
8:24
**pertains** [1]     28:23
**pertinent** [2]    82:6
82:7
**Peters** [3]       32:25
36:19   65:6
**Peterson** [1]     37:14
**ph** [2]   43:3   64:3
**phenyl** [1]       75:4
**phrase** [1]       23:5
**picked** [2]       22:7
78:17
**picking** [1]      13:19
**picture** [1]      78:14
**piece** [2] 28:14   50:4
**Pirozzolo** [155]  1:16
1:17   3:3   3:9
3:11   3:13   3:16
3:19   3:22   4:2
4:11   5:7   5:18
5:20   6:6   6:24
7:24   8:3   8:19
9:10   9:12   9:19
9:25   11:10   11:13
11:23   11:25   13:15
13:17   13:23   14:2
15:1   15:8   15:10
15:14   15:18   16:5
18:3   18:6   18:11
18:18   18:21   18:24
19:2   19:9   19:12
19:18   19:25   20:16
21:5   21:9   21:18
22:2   22:16   22:22
23:19   23:21   25:13
25:15   25:17   25:20
26:6   26:9   26:11
27:1   27:8   27:17
27:22   28:6   28:9
28:12   29:5   29:8
29:23   30:13   30:18
30:23   31:6   31:18
32:4   32:12   32:16
33:2   36:13   36:16
36:18   37:6   37:21
37:24   38:1   38:6
38:9   38:12   60:4
60:6   61:9   62:1
62:9   62:12   64:15
66:16   66:19   68:3
68:6   68:25   69:3
69:6   69:10   69:18
71:9   71:12   71:18

**BLACK & DECKER**

71:23    72:5    72:20
72:24    73:9    73:12
73:15    73:17    73:23
75:3    75:10    75:18
76:8    76:12    76:17
76:19    76:23    77:3
77:9    77:13    78:18
79:1    79:5    79:13
80:7    80:25    81:9
81:13    81:18    81:25
82:5    82:25    83:5
83:12    83:16    83:25
84:3    84:6    84:16
84:18    84:22    86:4
86:13
**place** [4]    27:10
27:11    47:9    82:20
**plain** [4]    27:9    27:23
27:24    33:17
**plaintiff** [4]    1:4
1:15    42:10    67:13
**plaintiffs** [2]    64:8
71:3
**plan** [3]    5:21    85:1
87:10
**pleaded** [1]    67:20
**pleader** [1]    67:17
**pleader's** [1]    67:21
**pleaders** [1]    67:17
**pleading** [5]    46:8
67:5    67:9    67:14
68:7
**pleads** [1]    71:3
**pleasure** [3]    44:6
44:7    76:4
**plenty** [1]    72:6
**plus** [1]    77:22
**pockets** [2]    44:1
44:6
**point** [40]    2:15
2:23    4:2    5:10
5:16    7:14    13:10
14:21    18:8    26:5
34:2    34:17    42:20
44:13    44:14    44:16
46:6    48:1    48:7
50:2    50:15    50:18
51:16    53:18    54:18
56:3    56:7    56:11
56:12    56:16    56:22
57:3    57:4    57:5
59:1    59:19    59:20
61:20    71:24    78:19
**pointed** [3]    3:4
4:5    45:5
**points** [5]    26:16
60:8    72:13    72:21
80:11
**policies** [28]    16:19
16:19    16:20    16:23
16:24    17:1    17:8
18:3    19:18    20:18
25:4    32:9    34:22
35:1    36:2    37:17
38:25    39:9    39:11
40:5    41:1    41:25
49:17    51:7    58:24

70:8    70:8    70:11
**policy** [36]    17:7
17:9    20:3    20:5
20:20    22:18    22:22
23:4    23:15    27:6
28:15    28:20    29:9
29:10    29:11    31:17
31:19    32:6    32:6
32:7    32:8    36:22
37:12    39:14    40:8
44:17    44:17    44:23
45:5    45:10    52:4
52:16    53:17    56:15
59:23    60:15
**policy's** [1]    71:3
**policyholder** [3]
25:7    30:19    32:24
**polished** [1]    14:5
**political** [2]    30:2
30:2    43:8
**pollutants** [1]    67:2
**polluted** [1]    61:7
**pollution** [7]    17:18
17:21    39:2    42:10
42:24    51:5    60:25
**pollution-prone** [5]
40:18    40:22    45:15
45:15    50:22
**polychlorinated** [1]
67:2
**populous** [1]    44:11
**portion** [1]    63:20
**portions** [1]    80:12
**portrayed** [1]    43:12
**position** [5]    50:12
59:15    59:16    59:20
74:7
**possessions** [2]    29:12
34:3
**possibility** [5]    4:16
6:15    73:21    84:15
84:16
**possible** [3]    6:1
73:21    78:2
**practice** [2]    67:13
68:10    68:11
**precedence** [1]    54:15
**precisely** [1]    71:21
**predating** [1]    10:17
**prefer** [1]    78:22
**preferentia** [1]    27:20
**preferred** [1]    62:2
**prejudice** [7]    58:22
65:6    65:7    65:8
65:13    72:11    72:22
**prejudiced** [1]    66:14
**preliminary** [2] 41:25
42:1
**premature** [1]    9:22
**premises** [2]    66:24
66:25
**premium** [6]    30:12
30:19    30:21    30:25
31:7    31:11

**premiums** [1]    35:15
**preparation** [1] 82:17
**prepare** [1]    79:14
**prepared** [5]    2:23
6:7    10:3    35:19
63:18
**preparing** [1]    72:8
78:22
**present** [3]    1:19
54:19    56:25
**presentation** [1]
12:10
**presented** [2]    2:17
14:6
**presently** [1]    36:21
**press** [1] 48:16
**pressed** [1]    8:12
**pressing** [1]    9:13
**presumably** [1] 70:19
**pretrial** [1]    65:22
82:15    82:17
**pretty** [1]    81:21
**previously** [1]    67:6
**primarily** [1]    42:23
74:20
**primary** [1]    19:19
39:8
**prime** [1]    37:17
**principally** [1]    62:3
**principles** [2]    29:25
30:1
**privilege** [1]    8:1
8:19    10:4    78:19
**privileged** [3]    8:15
8:23    10:2
**pro-insurer** [1]  43:13
**problem** [9]    12:25
13:8    38:9    41:23
47:6    50:23    58:14
73:17    79:6
**procedural** [1]    12:6
**procedure** [1]    10:3
**proceed** [1]    4:17
**proceedings** [3] 26:18
68:11    87:7
**produce** [1]    7:19
**produced** [5]    5:24
7:14    10:13    10:14
54:25
**producing** [3]    9:1
10:1    10:2
**production** [1]    9:6
**productions** [1] 55:2
**Professor** [1]    37:14
**profit-sharing** [1]
8:10
**progress** [1]    70:21
**prohibits** [1]    41:21
**promise** [1]    86:9
**pronounce** [1]    12:11
**properly** [2]    13:1
82:14

**properties** [1]    74:11
**property** [17]    39:11
40:11    41:3    41:8
41:9    51:11    51:13
51:17    51:18    53:4
53:13    53:24    54:7
54:9    61:22    62:7
71:4
**propose** [2]    72:16
77:24
**protect** [1]    83:24
**protection** [1]    44:21
**protective** [2]    5:11
16:8
**proved** [1]    58:12
**provide** [5]    23:22
24:17    42:17    43:5
65:11
**provided** [3]    13:13
64:7    65:12
**providing** [1]    7:10
**provision** [9]    17:21
18:4    18:7    23:9
23:10    25:8    36:8
56:23    59:23
**provisions** [5]    22:21
35:21    36:21    57:2
69:6
**provocative** [1] 2:7
**public** [8]    44:16
44:17    44:23    45:5
45:10    52:3    52:16
61:22
**pulling** [1]    22:11
**purchaser** [4]    6:9
6:17    6:19    6:21
**purported** [1]    67:18
**purpose** [1]    6:13
**purposes** [19]    13:25
16:15    18:1    42:12
47:21    47:23    48:4
48:20    51:5    53:10
54:19    55:20    56:25
81:6    81:11    81:14
82:21    83:3    83:20
**pursuant** [1]    8:25
**pursue** [1]    2:25
**pushed** [1]    85:11
**put** [16]    8:16    9:12
14:24    15:24    18:1
22:5    23:4    28:14
44:25    67:14    76:6
77:16    78:23    78:24
79:7    82:20
**puts** [1]    47:8
**putting** [1]    11:15

-Q-

**questions** [1]    53:12
**quite** [11]    9:23
25:21    40:4    42:2
43:9    46:8    61:1
61:19    80:10    80:15
82:25

-R-

**R** [4]    1:16    1:23
87:2    87:4
**radiation** [1]    61:18
**raise** [1] 3:24
**raised** [4]    2:5
5:23    17:17    56:19
**raises** [2]    13:11
52:4
**RALPH** [1]    1:14
**rationale** [1]    2:16
**re-read** [1]    62:13
**reach** [1]    61:20
**reached** [1]    4:8
**reaches** [1]    60:18
**read** [10] 20:22    23:16
23:20    23:23    29:15
37:3    41:18    44:8
60:11    64:6    64:6
**reading** [6]    23:11
30:24    33:3    33:3
41:4    42:13
**reads** [1]    20:20
**ready** [1]    6:6
84:25
**real** [2]    36:25    42:6
**realistic** [1]    11:16
**realistically** [2] 10:19
10:25
**really** [18]    4:19
10:18    13:12    14:21
21:3    22:1    25:3
30:3    30:25    36:10
51:3    61:1    66:6
75:23    76:9    80:22
82:10    83:17
**rearguing** [1]    72:16
**reason** [5]    3:24
14:11    25:25    26:1
74:7
**reasonable** [3]    9:20
23:11    29:20    29:22
30:9    30:11    33:2
**reasonably** [3]    10:10
19:2    28:24
**reasons** [1]    2:14
39:8    67:12
**reassigned** [1]    84:23
**rebut** [1] 4:13
**rebuttal** [3]    14:15
14:19
**recalls** [1]    8:21
**receive** [2]    16:2
16:2
**recently** [2]    2:10
55:2
**RECESSED** [1]
86:16
**recite** [3]    40:17
41:9    41:16
**recites** [1]    41:15
**recognize** [1]    13:10

recollect [1]    75:16
record [12]    13:25
    55:6    60:21    60:24
    62:9    62:25    64:20
    65:18    70:14    72:5
    75:11    81:19
records [2]    8:10
    8:11
recovery [3]    40:2
    68:7    69:13
redistricting [1]
    84:11
redoubled [1]    6:24
reduced [1]    55:16
refer [1] 24:25
referenced [1]    74:3
referred [1]    26:23
refers [2]    24:9
    28:21
reform [5]    21:21
    21:23    21:24    21:24
    22:13
reformulation [1]
    13:14
refresh [1]    80:25
regard [3]    37:7
    38:4    42:22
reimbursement [1]
    45:7
reinforced [1]    21:14
reject [3]    25:12
    25:14    25:15
relating [1]    6:18
relatively [1]    42:3
relevance [1]    35:14
relevant [13]    7:12
    9:9    9:10    9:15
    10:1    16:3    16:7
    16:18    29:19    32:24
    78:14    81:6    81:9
relied [1]    62:17
relies [1]    23:3
relying [1]    67:10
remain [1]    18:3
remaining [1]    18:22
    19:18    77:4
remains [2]    25:11
    32:1
remediation [2] 62:1
    66:8    66:12
remember [4]    34:23
    73:14    74:20    74:22
Reo [3]    71:1    71:7
    74:3
reorganization [1]
    55:18
repackage [1]    82:5
repeats [1]    24:7
report [8]    2:6
    13:2    13:19    13:20
    14:18    15:3    16:1
    36:6
reported [1]    67:23

reporter [3]    1:23
    87:4    87:10
reporting [10]    17:23
    20:15    23:11    23:12
    24:18    25:9    31:2
    33:22    36:3    39:1
reports [2]    13:8
    16:11    65:22    75:12
represented [1] 7:7
request [1]    12:10
requested [1]    70:14
Requests [1]    19:12
require [3]    33:7
    67:13    70:23
required [4]    62:20
    62:21    65:7    65:13
requirement [14]
    17:23    20:15    23:11
    23:12    24:18    25:9
    31:2    33:23    36:3
    36:5    36:8    36:9
    39:1    87:10
requirements [1]
    87:11
reservation [1] 63:19
reserve [1]    4:23
reserved [3]    64:25
    83:7    83:12
resolution [1]    78:10
resolutions [1]    12:17
resolved [1]    17:3
    33:7    80:10
resources [1]    8:11
respect [28]    2:8
    2:22    3:8    3:12
    10:7    10:15    10:20
    10:22    12:4    12:5
    12:14    15:5    16:9
    16:11    16:15    16:18
    16:23    17:4    17:7
    17:11    17:25    18:14
    35:4    35:14    35:23
    57:8    80:3    80:12
respond [3]    10:1
    42:15    42:16
responding [1] 83:10
response [6]    9:9
    9:24    11:22    11:24
    50:15    60:8
responsibilities [2]
    4:5    4:21
responsibility [1]
    24:1
responsible [4] 44:25
    45:3    50:17    80:9
responsive [1] 9:11
rest [2]    13:10    82:13
restraint [1]    4:6
result [1]    67:3
resulted [1]    41:2
review [1]    9:6
rhetoric [1]    45:18
Rhode [1]    33:20

RICHARD [1] 1:16
right [53]    4:23
    5:2    5:9    5:11
    8:18    10:5    10:24
    11:21    14:13    14:20
    15:20    18:5    18:20
    22:19    30:17    30:21
    33:1    33:9    34:25
    36:12    38:5    39:3
    42:25    46:14    46:25
    49:23    49:25    52:2
    52:5    53:5    53:7
    54:21    59:24    62:4
    64:14    68:4    69:9
    72:4    74:4    76:16
    76:18    77:8    77:12
    79:7    79:15    80:18
    81:3    81:4    81:17
    81:22    85:3    85:13
    85:17
Rikehole [1]    43:3
risk [3]    31:3    31:11
    47:8
risks [1] 31:5
Rogers [1]    64:4
roughly [1]    51:7
Rowan [10]    1:14
    2:11    2:20    3:1
    3:5    4:4    4:7
    4:17    49:7    57:15
rule [5]    25:3    45:23
    62:13    72:12    80:15
ruled [1] 34:22
rules [6] 27:2    27:9
    32:19    33:6    67:5
    70:22
ruling [2]    10:4
    43:9
run [1]    5:18
running [2]    19:12
    84:8

-S-

S [1]    87:5
sale [1]    6:3
sales [1] 24:25
salient [1]    61:4
Sanborn [1]    24:5
saw [1]    77:2
says [28] 22:21    22:23
    22:25    23:10    23:17
    24:7    27:24    32:21
    33:22    34:3    36:5
    37:9    37:11    38:4
    60:11    63:14    64:6
    67:7    67:8    67:9
    67:24    68:6    68:10
    68:22    68:24    69:6
    71:2    83:16
scenario [1]    56:18
schedule [4]    12:19
    16:12    75:22    84:12
scheduled [3]    84:1
    84:4    85:6
schedules [2]    4:19

12:25
search [1]    6:25
searching [2]    27:16
    27:19
second [2]    57:14
    67:14
secondary [1]    17:2
    60:14
see [12]    3:22    7:2
    8:13    15:3    49:13
    50:25    68:4    70:14
    72:13    73:5    80:2
    84:21
seek [1] 40:2
seem [3] 51:15    56:5
    73:5
segways [2]    12:6
    14:24
sell [1] 31:19
send [2] 61:6    63:21
sending [1]    70:6
sense [5]    23:25
    29:1    29:17    30:9
    82:14
sent [3]    6:25    69:11
    69:12
sentence [2]    29:1
    83:1
separate [1]    47:15
September [5]    10:23
    11:22    11:24    12:22
    12:23
sequence [3]    76:3
    78:3    79:18
sequenced [1]    13:2
series [1]    82:11
serious [2]    77:17
    77:18
set [7]    11:22    40:5
    41:25    42:4    45:10
    57:24    61:17
settle [1]    85:12
settled [7]    49:9
    57:17    57:20    58:19
    59:12    59:21    62:24
settlement [8]    24:11
    59:17    65:1    65:22
    66:3    66:4    66:5
    66:10
settling [1]    30:1
seven [1]    19:19
several [5]    12:8
    17:15    17:16    18:17
    54:22
shape [1]    18:12
shaping [1]    82:21
sharing [1]    63:23
sharpen [1]    17:19
shepardize [1]    72:12
shipped [1]    9:6
short [2] 44:8    71:21
Shorter [1]    22:12
shorthand [2]    67:8

87:7
shortly [1]    12:16
show [5] 58:22    65:18
    75:14    81:19    84:12
showing [3]    50:11
    63:18    64:4
shown [1]    56:16
    59:15
shows [1]    21:19
SHW [3]    39:25
    69:12    69:12
side [1]    33:22
sides [1] 10:21
signed [1]    81:2
significant [4]    31:7
    40:12    68:19    71:24
significantly [2]
    20:6    43:10
silly [2]    2:24    44:19
similar [3]    68:13
    69:13    76:14
similarly [1]    65:13
simply [10]    9:23
    13:14    13:22    15:5
    26:3    46:22    56:2
    58:8    58:12    85:22
sit [1]    4:15
site [18]    10:15    12:4
    15:6    16:3    40:23
    50:20    76:6    76:6
    77:21    77:21    77:22
    77:22    77:22    77:25
    78:2    78:7    78:7
    78:11
sites [8]    2:5    6:2
    12:9    12:12    40:21
    76:9    78:10    81:10
situation [6]    13:17
    36:1    40:10    43:15
    45:12    45:15
situations [2]    30:3
    30:6
six [4]    18:7    19:8
    19:11    64:23
small [2]    72:25
    78:19
Smith [1]    64:4
so-called [1]    20:18
soil [4]    22:3    22:5
    22:9    40:24
sold [8]    6:2    6:16
    6:17    40:11    40:11
    51:19    54:8    54:10
someone [2]    61:7
    75:2
somewhat [1]    26:21
Somewhere [1]    37:6
soon [2] 20:10    70:11
sophistication [4]
    32:24    37:4    37:8
    38:4
sorry [11]    11:23
    19:9    21:5    36:15
    36:16    37:19    58:6

68:2    69:3    72:9
81:13
sort [6]    5:5    36:4
41:1    43:17    61:18
76:13
sovereignty [1] 34:14
speak [2]    30:2
77:14
special [1]    67:11
specific [1]    74:7
specifically [5] 12:9
20:20    62:19    68:23
74:9
spend [2]    7:1
57:7
spreadsheet [4] 63:15
63:18    64:2    64:3
St [1]    1:14
stages [1]    65:20
Standardized [1]
37:16
standpoint [2] 41:4
78:6
Star [2] 61:13    61:23
start [8] 35:20    39:24
53:21    57:18    65:15
70:13    84:6    85:25
started [2]    10:22
43:11
state [15]    41:24
42:6    43:21    44:2
44:10    44:22    52:17
52:18    63:2    63:12
66:11    66:22    69:2
70:9    71:6
state's [3]    71:4
74:10    74:11
state-controlled [1]
52:7
state-owned [1]
52:8
statements [1] 52:6
States [29]    1:1
1:10    23:9    23:14
23:18    24:9    24:23
25:1    25:2    25:10
25:11    27:7    28:12
28:16    28:19    28:21
28:22    28:25    29:12
29:18    30:16    33:25
34:3    34:5    34:9
34:18    64:11    64:19
87:12
Statesman [1]    21:22
status [4]    2:5
2:9    16:1    34:14
statute [2]    68:22
69:14
stay [1] 28:7
Stedman [2]    24:6
32:3
step [3] 40:19    45:23
66:9
stepped [1]    45:25

Stewart [1]    7:7
still [5]  26:20    43:1
54:10    65:20    66:9
stop [1]  6:22
story [2] 3:2    5:19
strains [1]    40:7
strategy [2]    66:2
66:3
Street [1]    1:17
strict [2] 35:6    68:21
strictly [1]    69:8
strikes [1]    37:23
string [2]    72:18
73:6
strong [1]    43:21
stuck [1]    47:10
styled [1]    32:7
styles [1]    42:10
subject [5]    23:10
23:24    24:18    37:18
50:1
submission [1] 16:10
submissions [1]
82:1
submit [3]    10:3
38:2    55:3
submitted [4]  47:19
54:25    80:14    80:16
subsequent [2] 40:13
82:1
subsequently [1]
65:11
substance [1]    40:16
substances [1] 71:5
substantial [1] 31:9
substantially [1]
50:8    55:16
substantive [2] 17:12
70:1
substitute [1] 21:20
substituted [5] 22:22
22:24    23:1    23:5
27:11
substitutions [1]
26:24
success [1]    50:10
successor [1]    70:3
such [3] 4:8    6:1
72:25
sued [7] 40:12    49:22
49:23    50:16    52:23
52:24    54:8
sufficiency [2] 67:22
70:25
sufficient [4]    17:2
42:5    42:7    68:8
sufficiently [3] 25:25
26:17    58:4
suggest [7]    22:8
23:7    29:16    33:4
40:8    44:17    61:23
suggested [1]    33:5

suggesting [1] 31:2
suggestion [2]  2:7
76:2
suggests [2]    12:22
28:3
suing [1]    45:22
Suite [1] 1:24
suits [1] 63:24
summary [17]    10:6
12:3    12:15    12:17
13:3    14:1    16:4
16:17    17:4    17:5
39:7    47:25    55:6
80:10    81:6    81:11
81:14
summer [2]    11:11
12:19
Superior [8]    64:9
64:17    64:20    67:7
68:1    71:13    73:2
73:4
supplemental [3]
15:5    15:7    38:2
supplies [1]    75:13
supply [2]    71:4
74:10
supported [1]    24:4
68:15
supports [2]    62:9
72:5
suppose [1]    14:2
32:12
supposed [6]    22:9
23:20    48:19    48:23
57:22    67:24
supposing [1]    4:12
60:17
Supreme [5]    32:22
33:20    36:20    45:24
62:18
surely [1]    70:21
switch [1]    54:3
systems [1]    30:2

-T-

T [3]    1:14    87:2
87:2
tabulated [1]    64:4
tack [1] 23:8
takes [3] 5:10    13:6
54:14
taking [4]    2:13
31:11    31:25    32:2
talks [1] 64:24
Technical [1]    7:11
telephone [1]    2:18
tells [1] 16:1
Ten [1]    19:14
tender [4]    49:4
55:14    55:17    57:7
57:13    62:16    62:20
65:13    72:2
tendered [4]    42:14

49:5    53:14    59:11
term [1] 37:13
terms [7]    16:22
23:15    39:13    48:24
53:23    78:22    82:24
terrifically [1] 74:6
territories [6]    29:12
34:3    34:5    34:6
34:7    34:10
territory [1]    29:10
test [1]    11:16
testify [3]    4:11
4:12    5:1
testifying [1]    4:23
testimony [1]    77:10
Textron [6]    25:12
25:14    25:16    25:17
25:18    26:2
thank [10]    12:2
15:1    60:3    71:12
73:23    86:1    86:5
86:12    86:13    86:14
themselves [1]    40:14
theory [5]    13:15
31:15    32:11    68:7
68:14
thereafter [2]    36:6
79:17
they've [5]    10:13
32:7    52:24    57:24
59:22
thin [1]    61:16
think's [1]    75:18
thinking [1]    43:19
third [7] 9:2    9:7
9:8    52:22    57:14
57:15    57:16
third-party [1]    52:7
thought [1]    14:11
15:4    35:21    37:10
42:2    58:3    59:12
61:5
thousands [2]    10:15
54:24
three [9] 12:1    22:20
57:8    74:23    77:6
80:23    80:24    81:9
85:8
three-Judge [2] 84:11
84:13
through [22]    2:3
7:2    8:13    15:4
16:20    16:25    16:25
17:7    17:8    17:8
17:22    19:23    36:2
43:2    51:7    58:4
59:12    62:3    75:24
76:9    82:15    85:23
throughout [1]    43:13
throw [2]    45:18
54:19
thrust [2]    48:2
58:4
thumb [1]    22:9

timeliness [1]    77:5
timely [1]    58:11
timing [1]    10:6
title [1] 27:25
titles [1] 67:14
today [4]    6:7
34:7    38:18    74:24
together [1]    82:8
too [4] 3:6    48:16
71:20    85:13
took [3] 2:16    37:2
37:3
top [2] 20:7    31:7
Torey [1]    21:22
toward [2]    14:24
21:19
tracked [1]    72:10
tradition [1]    43:21
transactions [1]
8:6
transcribed [1] 87:8
transcript [1] 87:8
transcription [1]
87:6
transfer [1]    69:7
transition [1]    12:21
translate [1]    49:21
treatment [2]    12:17
43:24
trial [14] 3:6    3:8
14:12    16:22    18:1
66:2    82:21    82:24
83:4    83:7    83:21
83:23    85:1    85:6
trials [2] 83:9    84:7
trigger [1]    42:5
trivia [1]    34:15
true [4]  6:3    6:4
47:12    87:6
trust [1] 56:6
try [1]    86:10
trying [2]    6:13
31:19
Tuesday [1]    73:13
turmoil [1]    30:2
turn [2] 73:25    75:22
turning [1]    2:4
5:17    16:6
turns [1] 9:2
two [12] 7:1    9:17
17:13    27:13    27:14
39:8    39:19    39:24
67:12    83:8    84:10
86:7
two-week [1]    12:14
type [1] 6:20
types [2]    43:5
45:17
typographical [1]
33:11

## -U-

U [1]   87:5
U.S [3]   30:4   31:25
32:5
ultimately [2]   45:2
66:5
unambiguous [1]
33:21
under [17]   32:4
39:13   40:5   40:5
40:25   43:5   45:7
46:3   56:15   65:7
67:5   68:20   69:13
70:7   70:8   70:10
76:13
underbrush [1]   2:4
underlying [4]   9:4
42:12   46:10   71:2
understand [30] 2:20
3:10   10:5   10:7
15:13   33:12   38:14
41:14   41:20   42:20
43:1   47:1   48:1
48:10   48:23   50:14
50:18   51:8   51:16
53:11   54:17   55:5
55:17   56:7   56:10
59:1   59:3   66:15
75:20   78:11
understands [1]
36:1
understood [1]   85:9
undertake [1]   30:7
undertaken [1]   30:10
underwrite [1]   30:7
underwriting [4]
29:25   30:10   31:3
31:5
undisturbed [1] 61:10
United [29]   1:1
1:10   23:9   23:14
23:18   24:9   24:23
25:1   25:2   25:10
25:11   27:7   28:12
28:16   28:18   28:21
28:22   28:25   29:11
29:18   30:15   33:25
34:3   34:5   34:9
34:18   64:11   64:18
87:11
universal [1]   25:3
unknown [3]   32:9
32:10   66:23
unless [3]   51:9
77:18   77:25
unlikely [1]   17:20
unrelated [1]   9:17
unrest [1]   30:3
up [23]   4:3   12:8
12:13   13:20   25:22
28:14   37:16   43:14
44:2   55:4   57:6
59:25   63:22   65:16
66:19   68:22   69:8

71:16   77:24   79:10
80:6   82:2   83:22
updated [1]   13:21
updating [3]   13:8
13:22   76:19
upheld [2]   61:25
71:2
used [1] 87:9
useful [1]   76:7
uses [3] 23:4   27:14
61:11
USM [10]   6:9
7:8   8:4   8:7
16:19   16:23   17:7
35:1   67:4   70:8

## -V-

v [2]   40:1   68:12
vacation [2]   12:25
78:21
vacations [1]   79:4
various [2]   63:1
63:2
vehemently [1] 62:22
verify [1]   56:6
versus [2]   1:5
39:25
view [12]   5:7
9:19   9:21   21:6
21:23   22:14   31:4
41:25   48:6   53:17
77:15   80:21
views [1]   16:15
virtually [1]   13:20
vocabulary [1] 37:14
voluminous [1] 75:11
voting [1]   44:11

## -W-

W.W [1] 12:11
waived [1]   59:22
waiver [1]   17:13
wants [4]   54:17
77:13   77:14   78:12
water [20]   44:18
44:19   44:20   51:24
52:7   52:17   52:21
60:19   60:25   61:2
61:9   61:12   61:21
62:3   66:25   68:17
71:4   74:10   74:18
75:13
waters [1]   71:6
Weather [1]   75:25
Webster's [2]   20:24
21:2
wedded [1]   78:16
Wednesday [1] 12:20
week [4] 15:15   15:15
78:20   85:12
weeks [5]   12:1
74:23   83:17   83:18

86:7
welcome [1]   76:2
Westlaw [4]   67:24
67:25   68:3   71:10
whatsoever [2] 41:11
52:20
whereas [1]   23:6
Whig [1]   21:6
Whitman [11]   12:12
77:22   78:7   78:8
78:18   78:22   79:10
79:12   79:21   79:23
86:7
Whitney [1]   62:22
whole [2]   64:6
70:11
Willcox [1]   1:17
willing [2]   31:12
31:16
win [1]   50:13
window [1]   83:20
withhold [3]   5:22
8:15   8:22
withholding [1]
7:15
within [12]   10:11
14:4   15:14   24:8
25:11   27:1   29:11
36:6   42:7   64:2
68:17   71:3
without [8]   37:7
38:4   47:14   50:22
51:18   55:18   56:15
68:10
witness [6]   3:5
3:7   4:7   4:12
4:24   5:1
wondered [1]   72:15
WOODLOCK [1]
1:9
word [3] 20:22   21:20
24:14
wording [1]   24:12
words [6]   22:22
22:23   22:25   23:3
23:4   28:13
world [22]   23:13
23:17   23:18   23:23
24:2   24:8   24:17
24:22   24:23   25:2
27:6   27:25   28:4
28:4   28:5   28:17
28:19   29:17   30:15
34:7   34:18   52:11
worldwide [14] 20:20
23:10   24:10   24:11
24:25   24:25   28:1
28:3   28:23   28:24
31:10   31:23   32:11
32:15
worldwise [1]   25:1
worry [1]   29:19
write [4] 24:2   28:14
31:22   73:5
writing [1]   28:2

written [1]   12:16
wrong [5]   22:8
48:5   48:19   65:4
77:18
wrongly [1]   26:3

## -Y-

year [14] 18:17   19:20
23:11   31:11   31:12
31:13   31:14   31:15
31:20   31:23   36:6
42:23   68:2   84:7
Year's [1]   85:10
years [9]   18:7
18:22   19:21   20:4
35:17   46:1   54:22
74:19   76:17
yet [7]   5:18   7:3
7:21   33:21   45:13
62:5   84:24
yourself [1]   83:24

## -Z-

Zobel [1]   84:24