# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE COMPANY, )
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff, 　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　) CIVIL ACTION
　　　　　　　　　　　　　　　　　　) NO. 96-10804-DPW
THE BLACK & DECKER CORPORATION, 　 )
BLACK & DECKER, INC., BLACK & DECKER )
(U.S.) INC., EMHART CORPORATION, and )
EMHART INDUSTRIES, INC., 　　　　　 )
　　　　Defendants. 　　　　　　　　)

## SUBMISSION OF SUPPLEMENTAL CASE LAW

Black & Decker submits the following supplemental case law:

1. **Regarding Precedural Rules Concerning Construction of Pleadings**

   Shareamerica, Inc. v. Ernst & Young, 1999 WL 545417 at *5 (Conn. Super. 1999).

   Travelers Insurance Co. v. Namerow, 807 A.2d 467, 474 (Conn. 2002).

   Burns v. Koellmer, 527 A.2d 1210, 1214-16 (Conn. App. 1987).

   Veits v. City of Hartford, 58 A.2d 389, 394 (Conn. 1948).

2. **Regarding Application of Notice/Prejudice Rule of Aetna Casualty and Surety Co. v. Murphy, 538 A.2d 219 (Conn. 1988)**

   Peck v. Public Service Mutual Insurance Co., 326 F.3d 330, 338-39 (2d Cir. 2003).

   Travelers Insurance Co. v. Central National Insurance Co., 733 F.Supp. 522, 530-31 (D.Conn. 1990).

3. <u>Regarding Sophisticated Insureds</u>[1]

<u>Imperial Casualty and Indemnity Co.</u>, 714 A.2d 1230, 1238 at n. 7 (Conn. 1998).

To the same effect, the Second Circuit fashioning federal common law,

<u>I.V. Services of America v. Trustees of the American Consulting Engineers Council Insurance Trust Fund</u>, 136 F.3d 114, 121-22 (2nd Cir. 1998),

and the Second Circuit interpreting New York law,

<u>Morgan Stanley Group Inc. v. New England Insurance Co.</u>, 225 F.3d 270, 279-80 (2d Cir. 2000),

and the First Circuit and Bankruptcy Court (D.Mass) interpreting Massachusetts law,

<u>Commercial Union Insurance Co. v. Walbrook Insurance Co.</u>, 7 F.3d 1047, 1053 at n. 8 (1st Cir. 1993),

<u>Continental Casualty Co. v. Canadian Universal Insurance Co.</u>, 924 F.2d 370, 374-75 at n. 4 (1st Cir. 1991),

<u>In Re Molten Metal Technology, Inc.</u>, 271 B.R. 711, 724 (Bankr. D. Mass. 2002).

Respectfully submitted,

*[signature]*

Jack R. Pirozzolo BBO# 400460
Richard L. Binder BBO# 043240
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on *and /s/*

*on July 12, 2003*
*[signature] Jack R. Pirozzolo*

---

[1] In the event that Farrel, the purchaser of the policies, were deemed a sophisticated insured.

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE BLACK & DECKER CORPORATION, )<br>BLACK & DECKER, INC., BLACK & DECKER )<br>(U.S.) INC., EMHART CORPORATION, and )<br>EMHART INDUSTRIES, INC., )<br>Defendants. )<br>) | CIVIL ACTION<br>NO. 96-10804-DPW |

### MOTION TO STRIKE LIBERTY MUTUAL'S SUPPLEMENTAL SUBMISSION OR, IN THE ALTERNATIVE, TO ALLOW DEFENDANTS TO RESPOND TO PLAINTIFF'S SUBMISSION AND LATER TO PROVIDE A FURTHER SUBMISSION

Defendants move to strike the Liberty Mutual supplemental submission (filed on July 17) as not falling within the scope of the Court's ruling regarding the submission of further authority. At the hearing on July 10, counsel for defendants advised the Court that there was previously un-cited authority and, rather than taking time in court to locate and to provide the citations orally, requested the opportunity to provide this authority by letter. It was counsel's understanding that the Court's ruling permitted simply the providing of these citations after the hearing without argument. The additional authority was provided as a list (in appropriate categories) in defendants' submission on July 17. Defendants did not understand further briefing was in order and, accordingly, omitted any explanatory comment in connection with their July 17 submission and did not submit a post argument brief.

Contrary to defendants' understanding of the Court's ruling, plaintiff submitted a 19 page argumentative brief on July 17. Defendants did not understand that the Court was inclined to receive such a submission. Since plaintiff's submission misconstrues the record and applicable law, defendants submit herewith a response to that submission and request that, in the event that the Court were not to strike plaintiff's submission, the Court consider this response. In the event the Court were to receive plaintiff's submission, defendants request an opportunity to submit further explanatory matter regarding the citations of authority that defendants submitted on July 17.

Respectfully submitted,

*[signature]*

Jack R. Pirozzolo BBO# 400400
Richard L. Binder BBO# 043240
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail ~~hand~~ on *and fax on*
July 18, 2003

*[signature]*

-2-

## CERTIFICATE OF CONFERENCE

Counsel for defendants certifies that he conferred with counsel for plaintiff regarding the forgoing motion and counsel for plaintiff objects to the portion of the motion which seeks to strike Liberty Mutual's Supplemental Submission but takes no position on the portion of the motion which seeks to respond or to provide a later submission.

Jack R. Pirozzolo BBO# 400400
Richard L. Binder BBO# 043240
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE BLACK & DECKER CORPORATION, BLACK & DECKER, INC., BLACK & DECKER (U.S.) INC., EMHART CORPORATION, and EMHART INDUSTRIES, INC.,<br><br>Defendants. | CIVIL ACTION<br>NO. 96-10804-DPW |

RESPONSE TO LIBERTY MUTUAL'S
JULY 17, 2003 SUBMISSION

July 18, 2003

Jack R. Pirozzolo BBO# 400400
Richard L. Binder BBO# 043240
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Attorneys for Defendants

PROTECTED INFORMATION

By Order of Court, this envelope is to remain sealed and the Clerk of this Court shall not reveal the contents thereof to any person other than the Court or attorneys of record for the parties until further order of this Court.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

LIBERTY MUTUAL INSURANCE COMPANY, )
)
Plaintiff, )
)
v. )   CIVIL ACTION
)   NO. 96-10804-DPW
THE BLACK & DECKER CORPORATION, )
BLACK & DECKER, INC., BLACK & DECKER )
(U.S.) INC., EMHART CORPORATION, and )
EMHART INDUSTRIES, INC., )
)
Defendants. )

---

RESPONSE TO LIBERTY MUTUAL'S
JULY 17, 2003 SUBMISSION

The Liberty Mutual submission contains erroneous and misleading statements of fact and of law.

1. The Schilberg Argument

Plaintiff's argument concerning Schilberg Integrated Metals Corp. v. Continental Casualty Co., 2003 WL 1873180 (Conn.), fails to recognize that that case concerned policies containing pollution exclusions and that Black & Decker's claims include claims that arise under numerous pre-pollution exclusion policies. That decision addresses only the applicability of the sudden and accidental exception to the pollution exclusion. 2003 WL 1873180 at *7. Schilberg did not address whether the complaint alleged injury that was expected or intended from the standpoint of the insured. It specifically recognized long-standing Connecticut law holding that a duty to defend lies "if an allegation of the complaint falls even possibly within the coverage." Applying that principle, the court in R.E.O., Inc. v. Travelers Co., 1998 WL 285836, *4, 5

(Conn. Super 1988), specifically held that allegations similar to the complaints in issue (which were silent as to expectation or intent to cause injury) were sufficient to raise a duty to defend. See also, Schwartz v. Stevenson, 37 Conn. App. 581, 585, 657 A.2d 244, 247 (1995) ("neutral" allegations or allegations that "may" be within the scope of coverage require the insurer to defend) and pp. 20-25 of the Black & Decker memorandum regarding the Farrel claim, filed on November 13, 1998.

Liberty Mutual fails to distinguish the pre-pollution exclusion policies which defined "accident." Liberty Mutual fails to advise the Court that, when it uses the word "accident" in pre-pollution exclusion policies, an endorsement replaces the word "accident" with the word "occurrence," which, in turn is defined as including coverage for damage for "continuous or repeated exposure to conditions."

All pre-pollution exclusion policies which cover continuous exposure to conditions contain either the phrase "neither expected nor intended from the standpoint of the insured" or the phrase "provided the insured did not know or intend that injury would result." Liberty Mutual appears to be making the argument that before a duty to defend arises a complaint must affirmatively allege that the damage was neither expected nor intended from the standpoint of the insured. This argument is contrary to the applicable law, including, REO, supra, and contrary to reason. Review of the complaints here demonstrates allegations of damage that was neither expected nor intended, but rather arose from routine industrial practices that were not believed to cause damage. This is discussed in the Bonchonsky and Loureiro affidavits filed in support of the Black & Decker summary judgment motion. It is impossible to imagine a plaintiff, damaged by contamination, affirmatively alleging that the contamination was neither expected nor intended from the standpoint of the defendant. Here, unlike Schilberg, it is

reasonable to infer from complaining documents that were silent as to intent that there was no expectation or intent to cause injury. Moreover, the extrinsic evidence, of the type Schilberg states may be offered by the insured, also supports the proposition that the complaining documents raise far more than the minimum "possibil[ity]" of coverage.

The Liberty Mutual argument contains the further vice of continuing to confuse the intention to do an act with the intention to cause damage. Intentional conduct with respect to the disposal of contaminants does not equal intention to cause damage. The only conduct excluded from the scope of coverage is conduct of the insured that was intended to cause <u>injury</u>. <u>See</u>, pp. 39-55 of the Black & Decker November 13, 1998 memorandum and the cases cited therein, including, <u>inter alia</u>, <u>Mingachos v. CBS, Inc.</u>, 196 Conn. 91, 491 A.2d 368 (1985); <u>Preferred Mutual Insurance Co. v. Gamache</u>, 426 Mass. 93, 686 N.E.2d 989 (1997); <u>Arco Industries Corp. v. American Motorists Insurance Co.</u>, 531 N.W.2d 168 (Mich. 1995).

2. <u>The Sacharko Argument</u>

<u>Sacharko v. Center Equities Limited Partnership</u>, 2 Conn. App. 439, 479 A.2d 1219 (1984), is inapplicable here, where Black & Decker was not defended by any insurer, but rather received payment of a portion (but not all) of its attorney's fees years after it began incurring those expenses. <u>See</u>, pp. 29-33 of Black & Decker's November 13, 1998 memorandum and pp. 6-8 of its December 4, 1998 reply memorandum.

3. <u>Owned Property Exclusion</u>

The allegation that contaminants reached the ground water raises the possibility, as required by Connecticut cases, of third party damage. In fact there is off-site damage. See attached deposition testimony of Jeffrey Loureiro of Loureiro Engineering Associates, the engineer charged with analysis and remediation at the Farrel sites.

4.   **One Year Reporting Requirement**

There is no record that the language of amendatory endorsement was negotiated between the parties and indeed the presence of the same amendatory language in the policy issued to Textron, which is set out at Textron, Inc. v. Liberty Mutual Insurance Co., 639 A.2d 1358, 1361 (R.I. 1994), militates against such a conclusion. The cases, including Commercial Union Insurance Co. v. Walbrook Insurance Co., 7 F.3d 1047, 1053 at n. 8 (lst Cir. 1993) and Continental Casualty Co. v. Canadian Universal Insurance Co., 924 F.2d 370, 374-75 at n. 4 (lst Cir. 1991), cited in defendants' submission of July 17 make it clear that the only time, in cases of sophisticated insureds, that ambiguity is not construed against the insurer is where a provision is specifically negotiated between insurer and insured. The record discloses no particularized drafting of a negotiated provision which would give rise to this possible exception to the rule of *contra proferentum*.

5.   **Notice-Prejudice**

The record discloses that Liberty Mutual has not been prejudiced. Liberty Mutual received notice of the state cases in 1990 and it did nothing until it declined coverage in 1994. Liberty Mutual received actual notice of the Federal case in 1993 at a time when discovery was active in that case. Liberty Mutual could have participated in that discovery, could have performed investigatory work, could have participated in drafting the pre-trial memorandum, could have participated in framing trial strategy and could have participated in settlement proceedings, including mediation. It did nothing. The record also shows that in the few instances in which Liberty Mutual defended, even temporarily, it merely paid a portion of the attorneys' fees and did not participate in defense strategy. Also, it was given notice of the settlement and it raised no objection nor expressed any wish to participate. Under the terms of

-4-

the settlement there was substantial further interaction between defendants and Connecticut regulators in which Liberty Mutual could have participated. It chose not to.

SNET v. Zurich American Insurance Co., 2003 WL 21213385 (Conn. Super. May 15, 2003), the case upon which Liberty Mutual so heavily relies, supports Black & Decker, not Liberty Mutual. There the only notice was given seven days before the final pretrial conference. Among other things, an eyewitness to the accident, who was in ill health and was not deposed, had died; there had been no independent medical examination of the claimant; and, at trial, the insured's expert testimony had been "virtually useless." Id. at *3. In contrast, in the present case, Liberty Mutual had notice years before settlement and could have acted to protect its interests, and that of Black & Decker, had it desired to do so. The motion judge in SNET made clear that, had the insurer been notified while the case still was in discovery, she likely would have found no prejudice under the rule of the Murphy case. Id. at *4.

Under Connecticut law "a proper balance between the interests of the insurer and the insured requires a factual inquiry into whether, in the circumstances of a particular case, an insurer has been prejudiced by its insured's delay in giving notice of an event triggering insurance coverage." Aetna Casualty and Surety Company v. Murphy, 538 A.2d 219, 223 (Conn. 1988). The record discloses that Liberty Mutual was not prejudiced. Liberty Mutual has come forward with no rebuttal evidence to establish that it was prejudiced. If prejudice were reached, this matter would not be ripe for summary judgment because there would be disputed issues of fact.

6. Pre-notice Attorneys Fees

This is an argument never previously made. Liberty Mutual's reliance on Interface Flooring, Inc. v. Aetna Casualty & Surety Co., 261 Conn. 601, 804 A.2d 201 (2002), is

misplaced as that case was decided under Georgia law. Liberty Mutual fails to mention that the Court applied Georgia law, not Connecticut law. The Connecticut Court explicitly followed Georgia precedent which apparently, unlike Connecticut, requires tender before a duty to defend arises. Connecticut rejected the archaic notion of "tender." E.g., City of West Haven v. Liberty Mutual Insurance Co., 639 F.Supp. 1012, 1018 (D. Conn. 1986) ("Connecticut law does not require that an insured ask for a defense. The Court is unaware of any Connecticut case holding that an insured must expressly ask for a defense in addition to satisfying the conditions precedent to receiving a defense under the applicable policy language"). Where tender is not required, the concept of pre-tender defense expenses would be illogical. Liberty Mutual has cited no Connecticut authority specifically directed to the issue of pre-notice defense expenses.

7.    Rehash of Prior Arguments

The argument made in part D is a rehash of previous arguments. Black & Decker has responded to those issues in its memoranda of November 13, 1998, December 4, 1998 and January 17, 1999. Further the record, as referred to in the briefs, demonstrates that there was an abundance of occurrences at the sites and the temporary disposal of some material into the river to which Liberty Mutual refers was unrelated to the most serious contamination at the Farrel site.

Respectfully submitted,

Jack R. Pirozzolo BBO# 400400
Richard L. Binder BBO# 043240
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on _____

-6-

CONFIDENTIAL
CONFIDENTIAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE COMPANY, )
  )
           Plaintiff, )
  )
        vs. ) Civil Action
  ) No. 96-10804-DPW
THE BLACK & DECKER CORPORATION, )
BLACK & DECKER, INC., BLACK & )
DECKER (U.S.) INC., EMHART )
CORPORATION, and EMHART INDUSTRIES, )
INC., )
  )
           Defendants. )

DEPOSITION OF JEFFREY J. LOUREIRO, taken pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Deborah Gutierrez, a Certified Shorthand Reporter and Notary Public within and for the Commonwealth of Massachusetts, at the offices of Sherburne, Powers & Needham, One Beacon Street, Boston, Massachusetts, on Wednesday, October 14, 1998, commencing at 9:15 a.m.

KACZYNSKI REPORTING
150 Appleton Street, Suite 3-A
Boston, Massachusetts 02116
(617) 267-2403

JEFFREY J. LOUREIRO - 10/14/98         CondenseIt!™         **CONFIDENTIAL**

Page 25

1  Q. Sir, and I'll also represent to you that on Friday,
2     October 9th Attorney Pirozzolo sent a letter to
3     Attorney Lepore at Holland & Knight indicating that
4     you had an additional opinion to offer with respect
5     to migration of groundwater.
6         Sir, what is your opinion with respect
7     to migration of groundwater from the Farrel sites?
8  A. Which one do you want to start with first, Derby or
9     Ansonia?
10 Q. Do you have an opinion to offer with respect to
11    migration of groundwater with respect from both
12    sites, sir?
13 A. Yes.
14 Q. And what is your opinion with respect to Ansonia?
15 A. Ansonia is as described in Exhibit 2. Basically,
16    that releases of the groundwater contaminated by
17    the releases which occurred at the site is
18    migrating and discharging to the Naugatuck River.
19 Q. And what is your opinion with respect to Derby?
20 A. With respect to Derby, we have in our latest round
21    of investigation identified some groundwater
22    contaminated by releases at the site which occurred
23    at the site which is migrating off-site, again,
24    toward the Naugatuck River.

Page 26

1  Q. So your new opinion with respect to migration of
2     groundwater is solely with respect to the Derby
3     site; otherwise, you had already formulated an
4     opinion with respect to the Ansonia site, sir?
5  A. That's correct.
6  Q. When did you first come to your opinion with
7     respect to the migration of groundwater from the
8     Derby site?
9  A. You mean the opinion with respect to the fact that
10    there's contamination from the releases migrating
11    off-site?
12 Q. Yes, sir. When did you first come to that opinion?
13 A. I don't know the specific date, but it was during
14    this year as we conducted additional
15    investigations. And once we had sampled
16    groundwater, that indicated the presence of
17    contaminants from the site migrating off-site.
18 Q. We'll return to that opinion in a moment, but for
19    now I want to ask you, sir, do your opinions in the
20    affidavit of Jeffrey J. Loureiro that was submitted
21    in support of Black & Decker's motion for summary
22    judgment, together with the opinions in Exhibit No.
23    2 and your additional opinion with respect to the
24    migration of contaminated groundwater from the

Page 27

1     Derby site, constitute all of the opinions that you
2     expect to render in this case at trial?
3  A. Yes.
4  Q. Sir, I refer you to paragraph four of the affidavit
5     of Jeffrey J. Loureiro that was submitted in
6     support of Black & Decker's motion for summary
7     judgment and specifically the last sentence of that
8     paragraph indicating, quote, the opinions and
9     conclusions in the LEA reports are my opinions and
10    conclusions, and based on my knowledge, experience,
11    and background I believe those opinions and
12    conclusions are correct. Do you see that?
13 A. Mm-hmm. Yes.
14 Q. Sir, all I'm attempting to do here is to determine
15    all the opinions you want to render in this case.
16        So what I want to ask you is whether
17    you intend to offer any opinions from the LEA
18    reports other than those opinions that are
19    specifically referenced in the affidavit of Jeffrey
20    J. Loureiro that was submitted in support of Black
21    & Decker's motion for summary judgment. And the
22    only reason that I ask this --
23        MR. PIROZZOLO: The witness may not
24    know what he's going to be asked, but I can tell

Page 28

1     you that we will rely on the LEA reports and ask
2     the witness -- I expect to ask the witness
3     questions based upon opinions or conclusions that
4     are set forth in those reports. I think they're
5     incorporated in the affidavit.
6         But lest there be any
7     misunderstanding, I don't know that the witness
8     knows what he's going to be asked, but he will be
9     prepared to give opinions based upon the
10    information in those reports and the appendices to
11    the reports and the volume of documents that go
12    with those reports.
13        MR. DUFFY: Understood. And the only
14    reason I asked is because the reports constitute
15    multiple hundreds of pages.
16        MR. PIROZZOLO: That's correct.
17        MR. DUFFY: And I was attempting to
18    short-circuit this somewhat.
19        MR. PIROZZOLO: You can assume that
20    anything in the reports and the appendices to the
21    reports, the matter referred to in the reports
22    constitute matter that is likely to be asked about
23    at the trial.
24 Q. Sir, I again refer you to paragraph seven of the

Page 29

1     affidavit of Jeffrey J. Loureiro submitted in
2     support of Black & Decker's motion for summary
3     judgment. And specifically I refer you to the last
4     sentence of that paragraph indicating that, quote,
5     the investigation is continuing and the final
6     decision concerning the nature and extent of the
7     remediation will be made based upon applicable
8     regulatory standards after the investigation is
9     completed, closed quote. Do you see that?
10 A. Yes.
11 Q. Since this affidavit was prepared, what further
12    investigation has been done?
13 A. With respect to the Farrel Ansonia site, a work
14    plan has been prepared and submitted to the State
15    of Connecticut Department of Environmental
16    Protection outlining additional investigations
17    necessary to complete the definition of the
18    three-dimensional extent of contamination on the
19    site.
20        And with respect to the Derby
21    facility, a similar work plan has been prepared and
22    submitted to the Department of Environmental
23    Protection. And that work plan has been
24    implemented, the investigation has been completed,

Page 30

1     and we're currently preparing a report summarizing
2     those activities and the findings of that
3     investigation.
4         We have also done some very
5     preliminary evaluation of remedial options with
6     respect to the site.
7  Q. Have you reached any final decision concerning the
8     need for remediation at the sites?
9  A. No.
10 Q. When do you expect to reach a final decision with
11    respect to the need for remediation at the sites?
12 A. There are a number of variables that go into the
13    answer to that question. As the sites currently
14    stand, the final decision will be reached by the
15    Connecticut Department of Environmental Protection
16    and not by me.
17 Q. Have you made any recommendation with respect to
18    the need for remediation at the sites?
19        MR. PIROZZOLO: To whom?
20 Q. Have you made any recommendation to anyone with
21    respect to the need for remediation at the sites?
22 A. Not a recommendation, no.
23 Q. Have you reached any conclusion with respect to the
24    need for remediation at the sites?

KACZYNSKI REPORTING (617) 267-2403                    Page 25 - Page 30