# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>THE BLACK & DECKER CORPORATION, BLACK & DECKER INC., BLACK & DECKER (U.S.) INC., EMHART CORPORATION, and EMHART, INC.,<br><br>　　　　　　Defendants. | C.A. No. 1:04-CV-10651-DPW |

### SUPPLEMENTAL AFFIDAVIT OF JEFFREY J. LOUREIRO

Jeffrey J. Loureiro deposes and says:

1. I am a registered professional engineer and the President of Loureiro Engineering Associates, Inc. of Plainville, Connecticut ("LEA").

2. I am also a licensed environmental professional ("LEP") in the state of Connecticut. I was appointed by the governor of Connecticut to the board of examiners for licensed environmental professionals. A more detailed statement of my professional qualifications is set forth in my expert reports in this action.

3. An LEP is authorized to advise the Connecticut Department of Environmental Protection ("DEP") that a contaminated site has been investigated and remediated in accordance with the standards set forth in DEP regulations, including the remediation standard regulations ("RSRs") of the DEP. Those regulations are set forth in Section 22a-133k-1 et seq. of the Regulations of Connecticut State Agencies.

4. I am familiar with the DEP regulations regarding investigation and remediation of contaminated sites and the purposes behind those regulations. I participated on several committees in drafting certain of those regulations.

5. LEA has conducted investigations, and is in the process of conducting remediation, concerning the sites on which the former Farrel Corporation conducted manufacturing activities in Ansonia and Derby, Connecticut ("Ansonia Site" and "Derby Site", respectively) that are at issue in this action. In the course of performing that work, LEA has prepared numerous reports. I was personally involved in directing and supervising preparation of those reports. I have frequently seen, and am familiar with, the Ansonia Site and the Derby Site and am familiar with the work that LEA and its contractors have performed at those sites.

6. Prior to conducting remediation at the Ansonia Site and the Derby Site, LEA conducted investigations to identify and characterize the nature and extent of contamination at those sites. Under the DEP Regulations, the activities to investigate and characterize the Site are designated Phase I, Phase II and Phase III. After the completion of those investigations, LEA selected the remedial measures that are expected to result in conditions at those sites being in compliance with applicable DEP regulations and is in the process of implementing the remedial measures. The remedial measures taken to achieve compliance with the DEP Regulations are documented in Phase IV reports.

7. There is groundwater beneath the Ansonia Site that flows beyond the site and into the Naugatuck River.

8. There is groundwater beneath the Derby Site that flows beyond the Site, beneath property not owned by Farrel, including Connecticut Route 8, and into the Naugatuck and Housatonic Rivers at the confluence of those rivers.

9. The groundwater at the Ansonia and Derby Sites is classified GB under the DEP regulations. Groundwater designated GB is for industrial use. In areas where the groundwater is designated GB, the DEP regulations are intended to protect the groundwater beneath and beyond the property by preventing further groundwater contamination and, ultimately, improving groundwater quality. The regulations that are intended to protect groundwater include Pollutant Mobility Criteria ("PMC") that are set forth in the RSRs. The PMC are intended to protect groundwater from levels of contaminants in soil that pose a risk of migration into the groundwater.

10. A considerable portion of the remedial work undertaken, and anticipated to be undertaken in the future, at the Ansonia and Derby Sites addresses soil having concentrations of contaminant in excess of the levels specified in the PMC. The PMC are performance based. They specify the maximum permissible levels of contaminants, but not the particular steps that must be taken to reduce the concentrations to those levels. They allow use of professional judgment to select a remedy or remedies that is appropriate to achieve compliance with the criteria. Such remedies include soil excavation and engineered controls, which are remedies that LEA is implementing, and has implemented, at the Ansonia and Derby Sites.

11. As mentioned above, the groundwater beneath the Ansonia and Derby Sites flows into surface water. Accordingly, Surface Water Protection Criteria ("SWPC") of the DEP are also applicable to the Ansonia and Derby Sites.

12. Contaminants in the soils at the Ansonia and Derby Sites, including PCE (also known as tetrachloroethene, perchloroethylene and perc), have migrated to the groundwater and contaminated the groundwater. In some instances, that contaminated groundwater has reached the surface water.

13. At the Ansonia Site, the LEA remedial strategy to achieve compliance with the PMC and SWPC includes removing the soil that is the source of contamination by excavation. That strategy was selected with the expectation that over time the groundwater contamination will be reduced to appropriate levels, including the applicable PMC and SWPC. It is hoped that this remedial strategy of attacking the contamination at the source will obviate the need for other remedial approaches, including measures to physically remove contaminants from the groundwater itself.

14. At the Derby Site, the LEA remedial strategy to achieve compliance with the PMC includes removing the soil that is the source of contamination by excavation and preventing migration of contaminants in the soil through engineered controls. That strategy was selected with the expectation that over time the groundwater contamination will be reduced to appropriate levels. It is hoped that this remedial strategy of attacking the contamination at the source will obviate the need for other remedial approaches.

15. All the remedial work undertaken, and expected to be undertaken, at Remedial Areas M-80-REM 3-1, M-80-REM 5-1, M-80-REM 5-2, M-80-REM-9-7, NERF-REM 1-1 and NERF-REM 4-1 at the Ansonia Site was, and and/or will be, for the purpose of meeting the applicable PMC. Also, portions of the remedial work undertaken, and expected to be undertaken, at Remedial Areas M-80-REM 9-1 and B30+-REM 2-1 at the Ansonia Site was, and/or will be, for the purpose of meeting the applicable PMC. Those remedial areas are shown on drawing 1 of Proposed Site Remediation Areas Site Wide, dated April, 2003, a copy of which is attached. It is hoped that this remedial work will also achieve compliance with the SWPC.

16. All the remedial work undertaken at Remedial Areas 3-UST, 5A, X7, 7E, 7F, 8A, 8B, 8C, 8D and 10B at the Derby Site was for the purpose of meeting the applicable PMC.

Also, portions of the remedial work undertaken at Remedial Areas 3A, 3B/5F, 7A/B, 8F, 8K, 8L Site was for the purpose of meeting the applicable PMC. Those remedial areas are shown on Drawings 3-5 of the Phase IV Site Remediation Report dated March 4, 2002, copies of which are attached.

17.  The remedial work performed to date at the Ansonia Site has eliminated exceedances of applicable PMC at certain portions of the site. Further remedial work will be required to achieve compliance with the applicable PMC at other portions of the Ansonia Site and to achieve compliance with the applicable SWPC. In the absence of the remedial work at the Ansonia Site that was undertaken to achieve compliance with the applicable PMC, and that will be undertaken to achieve compliance with the applicable PMC and SWPC, there is a likelihood that contaminants in groundwater, which have entered the Naugatuck River, would continue to enter that river. This likelihood is particularly great with respect to the areas on the Ansonia Site that have required the most extensive remediation.

18.  The remedial work at the Derby Site achieved compliance with the applicable PMC. In the absence of the remedial work at the Derby Site that was undertaken to achieve compliance with the PMC, contaminated groundwater would have continued to move beyond the property line of the Derby Site to property of third parties. This is particularly the case with respect to the areas on the Derby Site that have required the most extensive remediation.

19.  The planned remedial work at the Ansonia Site has been based on the expectation that Environmental Land Use Restrictions ("ELURs") will be recorded and will limit the scope of the remediation. If ELURs are not recorded, the scope of remedial activities

5

could increase.

I declare under the penalty of perjury that the foregoing is true and correct.

_____  April 13, 2004
Jeffrey J. Loureiro





REMEDIAL ACTION REPORT, FARRELL CORPORATION, DERBY, CT — CONFIRMATORY SOIL SAMPLE LOCATIONS AND LIMITS OF EXCAVATION – SOUTHERN AREA





REMEDIAL ACTION REPORT
FARRELL CORPORATION, DERBY, CT
CONFIRMATORY SOIL SAMPLE LOCATIONS AND LIMITS OF EXCAVATION – NORTHERN AREA