UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | No. 96-10804-DPW |
| v. | ) | |
| | ) | Case No.: |
| THE BLACK & DECKER CORPORATION, | ) | 1:04-CV-10651-DPW |
| BLACK & DECKER, INC., BLACK & DECKER | ) | (Ansonia/Derby Site) |
| (U.S.) INC., EMHART CORPORATION, and | ) | |
| EMHART, INC., | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**LIBERTY MUTUAL INSURANCE COMPANY'S
OPPOSITION TO BLACK & DECKER'S MOTION
FOR CONSIDERATION OF NEW ISSUE REGARDING
THE ONE-YEAR REPORTING PROVISION**

Pursuant to Federal Rules of Civil Procedure 56 and 59(e), plaintiff, Liberty

Mutual Insurance Company ("Liberty Mutual"), hereby opposes the motion of

defendants, The Black & Decker Corporation, et al. ("Black & Decker"), for

consideration of an allegedly new issue regarding the one-year reporting provision

contained in the Liberty Mutual policies issued to Farrel Company during the

period July 1, 1961 to July 1, 1967 (the "Farrel Policies").

As more fully set forth below, Black & Decker's "motion for consideration of

new issue" is really a motion for *reconsideration* of this Court's August 5, 2004

Memorandum and Order Regarding Summary Judgment for the Ansonia and Derby

Sites (the "August 5, 2004 Order").  Black & Decker has not presented any grounds

warranting reconsideration of the Court's ruling that the one-year reporting

provision contained in the 1961 to 1967 Farrel Policies barred coverage for the Ansonia and Derby Sites.  Black & Decker's reliance on the Court's discussion of the second sentence of the "deemer" provision in the August 25, 2004 Memorandum and Order Regarding Post-Trial Motions in the Whitman and Bostik Middleton cases is misplaced and misleading, because that discussion is not germane to the language which is shared by both the first sentence of the "deemer" provision and the one-year reporting provision of the Farrel Policies.  It is undisputed that Black & Decker did not give Liberty Mutual notice of property damage at the Ansonia and Derby Sites within one year of the expiration of the last policy period during which that damage occurred.  The one-year reporting requirement in the Farrel Policies therefore bars coverage, and the entry of summary judgment in favor of Liberty Mutual should stand.

## <u>Background of the Opposition</u>

In its Supplemental Motion for Summary Judgment and Opposition to Black & Decker's Motion for Summary Judgment regarding the Ansonia and Derby Sites (the "Sites"), Liberty Mutual contended, <u>inter alia</u>, that the "one-year reporting" provision in the 1961 to 1967 Farrel Policies precluded coverage for Black & Decker's claims concerning the Sites under those Policies.  The "one-year reporting" provision contained in the General Amendatory Endorsement of the 1961 to 1967 Farrel Policies states that:

> The policy applies only to . . . injury to or destruction of property, including loss of use thereof, which occur during the policy period anywhere in the world, except that if the insured at the time a claim is made against it is no longer

> covered by a liability policy issued by [Liberty Mutual],
> this policy shall not apply under Coverage B to injury to
> or destruction of property, including the loss of use thereof,
> which is caused by exposure to conditions over a period of
> days, weeks, months, or longer and which is not reported
> by the insured to [Liberty Mutual] within one year
> after the policy period.

See, e.g., Farrel Policy in effect July 1, 1961, Endorsement No. 1 at ¶7 (Binder 5,

Tab 3, at B&D MA LM 0002359).

Black & Decker opposed Liberty Mutual's motion, on the grounds that the

one-year reporting provision was ambiguous, and/or an unenforceable forfeiture

provision. See, e.g., Black & Decker's April, 2004 Supplemental Memorandum of

Law in Support of Its Motion for Partial Summary Judgment at 28 (summarizing

grounds argued in Black & Decker's November 13, 1998 Further Memorandum in

Support of Motion for Summary Judgment With Respect to Farrel and SHW Sites,

and Black & Decker's December 4, 1998 Reply Memorandum Regarding Maryland

and Connecticut Sites).  In its November, 1998 memorandum of law, Black &

Decker argued that the phrase "injury . . . caused by exposure to conditions over a

period days, weeks, months, or longer" in the one-year reporting provision "is

ambiguous", because it differs from the language of the insuring agreement in the

Farrel Policies.  See November 13, 1998 Memorandum at 72.  Black & Decker

incorporated this ambiguity argument by reference in its April, 2004 Supplemental

Memorandum of Law.  See April 16, 2004 Memorandum of Law at 28, bullet point

4.

In the August 5, 2004 Order, the Court found that there was no coverage under the 1961 to 1967 Farrel Policies, because the one-year reporting requirement was enforceable, and Black & Decker had not complied with that provision. <u>See</u> August 5, 2004 Order at 22 – 23. The Court rejected Black & Decker's ambiguity argument, stating that "Black & Decker also argues that the provision is ambiguous because it uses slightly different language from a different paragraph of the endorsement that redefines 'accident'. This contention is wholly without merit." <u>See</u> Order at 11, n.2.

On August 25, 2004, the Court issued its Memorandum and Order Regarding Post-Trial Motions with respect to the Whitman and Bostik Middleton Sites (the "August 25, 2004 Order"). In that decision, the Court construed the "deemer" clause contained in certain policies issued by Liberty Mutual to USM Corporation, which provides that:

> injury to or destruction of property caused by exposure
> to conditions over a period of days, weeks, months or longer
> . . . shall be deemed to occur only on the last day of the last
> exposure to such conditions. The policy does not apply to such
> injury, death or destruction caused by such continuous or
> repeated exposure any part of which occurs after the termination
> of the policy.

<u>See</u>, <u>e.g.</u>, USM Policy in effect November 1, 1957 at §IV, p.3 (Binder 1A, Tab 5, at B&D MA LM 0000155). The Court concluded that the "deemer" clause was not applicable to the Whitman and Bostik Middleton sites, under the interpretation of the "last day of last exposure" language in the first sentence of the "deemer" clause set forth in <u>United Technologies Corp. v. Liberty Mutual Insurance Company</u>, 1

Mass. L. Rptr. 91, 1993 WL 828913, *22 (Mass. Super. Ct. Aug. 3, 1993).  <u>See</u>

August 25, 2004 Order at 21-22.

 The Court went on to discuss the second sentence of the "deemer" clause, and

described three categories of injury in connection with that sentence's  "occurs after

the termination of the policy" language.   <u>See</u> August 25, 2004 Order at 23 – 26.

The Court concluded, with respect to the Whitman and Bostik Middleton Sites, that

the evidence at trial "established that, at least for some aspects of injury at each

site, the damage was caused by many individual instances of small-scale exposure,

each causing an independent injury."  <u>Id.</u> at 26.  The Court therefore found that "the

second sentence of the deemer provision does not negate coverage in this

circumstance."  <u>Id.</u>

 Despite the Court's clear rulings on these separate and distinct issues, on

October 4, 2004, two months after the Court's issuance of the August 5, 2004 Order

regarding the one-year reporting requirement and five and one half weeks after the

issuance of the August 25, 2004 Order regarding the "deemer" clause at the

Whitman and Bostik Middleton Sites, Black & Decker filed the instant motion for

"consideration of [a] new issue."

<u>**Argument**</u>

  I. **RECONSIDERATION OF THE AUGUST 5, 2004
    <u>ORDER IS NOT WARRANTED.</u>**

 Although styled as a "motion for consideration of [a] new issue", Black &

Decker's motion actually seeks reconsideration of this Court's August 5, 2004 Order

regarding the application of the one-year reporting provision in the 1961 to 1967

- 5 -

Farrel Policies to the Ansonia and Derby Sites.  Black & Decker has not

demonstrated any grounds for reconsideration, however.[1]  Black & Decker has not

shown either a "manifest error of law or . . . newly-discovered evidence" concerning

the August 5, 2004 Order, and should not be permitted to raise arguments now

"'which could, and should, have been made before judgment issued.'"  Federal

Deposit Ins. Co. v. World University, Inc., 978 F.2d 10, 16 (1st Cir. 1992)(quoting

Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)).

Under First Circuit precedent, Black & Decker may not raise an issue for the

first time on a motion for reconsideration.  See, e.g., FDIC v. World Industries, Inc.,

978 F.2d at 16.  See also Moro v. Shell Oil Company, 91 F.3d 872, 876 (7th Cir.

1996)("Rule 59(e) allows a party to direct the district court's attention to newly

discovered material evidence or a manifest error of law or fact, and enables the

court to correct its own errors and thus avoid unnecessary appellate procedures. . . .

it certainly does not allow a party to introduce new evidence or advance arguments

that could and should have been presented to the district court prior to judgment.")

(citations omitted).   Thus, Black & Decker's request to argue an allegedly new legal

theory, via its "motion for consideration of [a] new issue", must be denied, as a

matter of law.

_____

[1] Under Federal Rule of Civil Procedure 59(e), motions for reconsideration are to be filed
within ten days of the entry of judgment.  See Fed. R. Civ. P. 59(e).  While judgment has not yet
entered in this case, Black & Decker's delay in filing its motion until two months after issuance of the
August 5, 2004 Order on summary judgment, and five and one half weeks after issuance of the
August 25, 2004 Order on which Black & Decker relies in seeking reconsideration, is contrary to the
timely filing requirement of Rule 59(e).

## II.    THERE IS NO INCONSISTENCY BETWEEN THE AUGUST 5 AND AUGUST 25, 2004 ORDERS.

In its motion, Black & Decker attempts to manufacture an inconsistency between the August 5 and August 25, 2004 Orders which does not exist. By taking quotations from the August 25, 2004 Order out of context, Black & Decker seeks to confuse the issue by distorting the Court's statements concerning the second sentence of the "deemer" clause into a purported interpretation of completely different language in the one-year reporting provision of the Farrel Policies and the first sentence of the "deemer" clause. This Court should not countenance Black & Decker's disingenuous attempt to conflate the two distinct policy provisions and the Court's interpretations thereof.

In the August 25, 2004 Order, the Court construed the first sentence of the "deemer" clause, which contains the same language as the one-year reporting provision concerning "exposure to conditions over a period of days, weeks, months, or longer." See August 25, 2004 Order at 20-22. The Court adopted Justice Murphy's analysis in the UTC decision in deciding that the "deemer" clause did not eliminate coverage for the Whitman and Bostik Middleton Sites, because it was difficult or impossible to determine the "last day of the last exposure," as required under the first sentence of the "deemer" clause. See August 25, 2004 Order at 21-22 (quoting UTC, 1993 WL 818913 at *22). This Court described the UTC decision as "persuasive authority", and "adopt[ed] this approach." See August 25, 2004 Order at 22. Thus, the gravamen of the Court's holding that the "deemer" clause did not apply to the Whitman and Bostik Middleton Sites was the UTC finding that trying

- 7 -

to assign a "last day of the last exposure" to gradual pollution under the first sentence of the "deemer" clause would be impossible.

This Court performed a separate analysis of the second sentence of the "deemer" clause, which deals with the situation when property damage occurs both before and after termination of the last Liberty Mutual policy.  See August 25, 2004 Order at 23 – 24 ("Similarly, the deemer clause's second sentence – which excludes injury 'caused by such continuous or repeated exposure any part of which occurs after the termination of the policy' – does not exclude injury caused by exposures that occurred wholly before the policy termination date.  Judge Sofaer construed this sentence in American Home Products . . .[as] 'not remov[ing] from coverage harm caused wholly by exposure occurring prior to [the policy termination date].'")(quoting American Home Products Corp. v. Liberty Mutual Insurance Company, 565 F. Supp. 1485, 1498-99 (S.D.N.Y.1983), aff'd in part & mod. on other grounds, 748 F.2d 760(2d Cir. 1984))(emphasis added).

Contrary to Black & Decker's assertion, the Court did *not* construe the "exposure to conditions over a period of days, weeks, months of longer" language of the one-year reporting requirement and the first sentence of the "deemer" clause with reference to the three categories of exposure to conditions which it described in connection with the second sentence of the "deemer" provision.  See Black & Decker's Motion at 2-3.  Instead, the Court expressly stated that it had created the three categories because it did "not see any way to construe and apply the second sentence of the deemer clause without distinguishing that which is 'continuous'

and/or 'repeated' from that which is neither."  <u>See</u> August 25, 2004 Order at 25, n.11 (emphasis added).

Based on this analysis, this Court found that there was sufficient evidence of separate, individual instances of property damage occurring wholly within the policy period to render the second sentence of the "deemer" provision inapplicable to the Whitman and Bostik Middleton Sites.  <u>See</u> August 25, 2004 Order at 26 ("the evidence established that, at least for some aspects of injury at each site, the damage was caused by many individual instances of small-scale exposure, each causing an independent injury.  The <u>second sentence of the deemer clause</u> does not negate coverage in this circumstance.")(emphasis added).  Thus, contrary to Black & Decker's contentions, the Court did not reject or otherwise qualify the "exposure to conditions over a period of days, weeks, months or longer" language contained in both the one-year reporting provision and the first sentence of the "deemer" clause in reaching its decision concerning applicability of the "deemer" to the Bostik Middleton and Whitman Sites.  Accordingly, the purported inconsistency between the August 5 and August 25, 2004 Orders posited by Black & Decker does not exist, and this Court should deny Black & Decker's motion in its entirety.

### III.    IT IS UNDISPUTED THAT BLACK & DECKER FAILED TO COMPLY WITH THE ONE-YEAR <u>REPORTING PROVISION</u>.

Under the one-year reporting provision of the 1961 to 1967 Farrel Policies, there is no coverage if Black & Decker fails to give notice, within one year after the January 1, 1979 expiration of the last Liberty Mutual policy, of property damage

"which is caused by exposure to conditions over a period of days, weeks, months, or longer."  It is undisputed that Black & Decker did not give notice of *any* pollution damage at the Ansonia and Derby Sites to Liberty Mutual within one year following expiration of the last Liberty Mutual policy on January 1, 1979.  See August 5, 2004 Order at 10.  Therefore, regardless of whether some of the property damage at the Ansonia and Derby Sites occurred on a daily basis in discrete, individual instances, as discussed by the Court in connection with the second sentence of the "deemer" clause in the August 25, 2004 Order, or over a continuous period of time of "weeks, months, or longer", Black & Decker failed to comply with the requirement that notice of that property damage be given within a one-year period after it ceased to be a Liberty Mutual policyholder.  Black & Decker therefore cannot be entitled to coverage, as a matter of law, under the 1961 to 1967 Farrel Policies at the Ansonia and Derby Sites.  Accordingly, this Court's ruling in favor of Liberty Mutual should not be disturbed.

For the same reasons, Black & Decker should not be heard to contend that the allegations in the charging documents with respect to the Ansonia and Derby Sites somehow state a claim for coverage which falls outside the bar of the one-year reporting provision.  Even if the allegations could be construed as stating a claim for "periodic, frequent exposures to various separate (even if materially identical) causes", as the Court discussed in connection with the second sentence of the "deemer" clause, such allegations would still state a claim for exposure to conditions

over a "period of days" which would be subject to the one-year reporting

requirement.

Moreover, the allegations in each of the charging documents are based on the

twenty-year period of USM/Emhart's ownership and operations at the Ansonia and

Derby Sites, and thereby fall within the "period of days, weeks, months, or longer"

language of the one-year reporting provision.  See, e.g., New Farrel Amended

Complaint, ¶¶ 13,  14, 16, 22, 45(d), 45(e) (Exhibit I to Liberty Mutual's July, 2004

Supplemental Motion for Summary Judgment) ("while owning and operating the

Ansonia and the Derby Premises, USM allowed hazardous substances, which had

been spilled, released or disposed of into the environment from the Ansonia and

Derby Premises, to further contaminate the environment.")(emphasis added); SHW

Amended Complaint, ¶¶18, 21, & 23 – 25 ("prior to January 29, 1986 certain  of the

Premises and Assets and the groundwater beneath the Premises and Assets were

contaminated with heavy metals, polychlorinated biphenyls and other pollutants . .

. Farrel Corporation's operations at the Premises had in the past generated more

than 100 kilograms of hazardous waste per month.").

The allegations of the charging documents therefore state claims which fall

within the language of the one-year reporting provision, which bars coverage.

Accordingly, since Black & Decker failed to notify Liberty Mutual within the

required time, this Court's ruling in favor of Liberty Mutual should stand,

concluding that Liberty Mutual has no duty to defend or indemnify under the 1961

to 1967 Farrel Policies, as a matter of law.

## Conclusion

For the foregoing reasons, Black & Decker's Motion for Consideration of a New Issue Regarding the One-Year Reporting Provision should be denied in its entirety.

LIBERTY MUTUAL INSURANCE COMPANY

By its attorneys,

/s/  Ralph T. Lepore, III
Ralph T. Lepore, III (BBO 294420)
Janice Kelley Rowan (BBO 265520)
Deborah E. Barnard (BBO 550654)
Robin L. Main (BBO 556074)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA  02116
(617) 523-2700

Dated:  November 17, 2004

### CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November, 2004, I caused a copy of the foregoing document to be served, by hand, upon Jack R. Pirozzolo, Esq., counsel for defendants, at Willcox, Pirozzolo & McCarthy, P.C., 50 Federal Street, Boston, MA  02110.

/s/  Janice Kelley Rowan
Janice Kelley Rowan

# 2404415_v1