# EXHIBIT B

# NATIONAL UNION
# FIRE INSURANCE COMPANY
## OF PITTSBURGH, PA.
A CAPITAL STOCK COMPANY



EXECUTIVE OFFICES
70 PINE STREET, NEW YORK, N.Y. 10270

```
┌                                    ┐
 NAMED
 INSURED
 AND
 POST
 OFFICE
└                                    ┘
```

## POLLUTION LEGAL LIABILITY

### DECLARATIONS

**THIS IS A CLAIMS-MADE POLICY — PLEASE READ CAREFULLY**

POLICY NUMBER: **PLL** _____

Item 1: NAMED INSURED _____

ADDRESS _____

_____

_____

Item 2: POLICY PERIOD

FROM _____ TO _____
12:01 A.M. standard time at the address of the NAMED INSURED shown above

Item 3: LIMIT OF LIABILITY 90% of LOSS, up to $ _____
Total for all LOSSES

Item 4: RETENTION $ _____ each loss

Item 5: Covered waste disposal or dump site(s) _____

_____

_____

_____

Item 6: POLICY PREMIUM $ _____

Item 7: EXTENDED DISCOVERY CLAUSE DATE _____

Broker:

_____
Authorized Representative

29699 (9/80)

HOME OFFICE COPY

# POLLUTION LEGAL LIABILITY



NATIONAL UNION
FIRE INSURANCE COMPANY
OF PITTSBURGH, PA.

(a capital stock company, herein called the Company)

70 PINE STREET, NEW YORK, N.Y. 10270

In consideration of the payment of the premium, in reliance upon the statements in the declarations and application made a part hereof and subject to all the terms of this policy, agrees with the NAMED INSURED as follows:

## I. INSURING AGREEMENT

To indemnify the INSURED against LOSS incurred by the INSURED as a result of liability arising from claims first made against the INSURED and reported to the Company during the POLICY PERIOD, or EXTENDED DISCOVERY PERIOD if applicable, for POLLUTION CONDITIONS.

## II. DEFINITIONS

A.  INSURED means the NAMED INSURED and any director, officer, partner or employee thereof while acting within the scope of his/her duties as such.

B.  LOSS means:
    1.  monetary awards or settlements of compensatory damages arising from:
        a.  BODILY INJURY as defined herein, or
        b.  PROPERTY DAMAGE as defined herein, and
    2.  costs, charges and expenses incurred in the investigation, adjustment or defense of claims for such compensatory damages.

C.  BODILY INJURY means bodily injury, sickness, disease, mental anguish or shock sustained by any person, including death resulting therefrom.

D.  PROPERTY DAMAGE means (1) physical injury to or destruction of tangible property including the resulting loss of use thereof, (2) clean up costs necessitated by POLLUTION CONDITIONS and (3) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by POLLUTION CONDITIONS.

E.  POLICY PERIOD means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of cancellation.

F.  POLLUTION CONDITIONS means the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water which is gradual and fortuitous and neither expected nor intended by the INSURED.

G.  NAMED INSURED means the person or entity designated as such in Item 1 of the Declarations.

H.  AUTOMOBILE means a land motor vehicle, trailer or semi-trailer designed for travel on public roads including any machinery or apparatus attached thereto.

## III. TERRITORY

This policy only applies to claims or suits arising from POLLUTION CONDITIONS in the United States, its territories or possessions or Canada and made or brought in the United States, its territories or possessions or in Canada.

## IV. EXCLUSIONS

This insurance does not apply to LOSS:

1.  arising from POLLUTION CONDITIONS existing prior to the inception of this policy, if any officer, director, partner or other management personnel of the NAMED INSURED knew or could reasonably foresee such POLLUTION CONDITIONS would give rise to a claim;

2.  from claims or suits seeking non-pecuniary relief;

29700 (9/80)

3. arising from the ownership or operation of any "offshore facility" as defined in the Outer Continental Shelf Lands Act Amendments of 1978 or the Clean Water Act of 1977 as amended 1978, or any "deepwater port" as defined in the Deepwater Port Act of 1974, as amended, nor shall there be any coverage for liability resulting from emissions of drilling fluid, oil, gas or other fluids from any oil, gas, mineral, water or geothermal well of any nature whatsoever;

4. arising under any worker's compensation, unemployment compensation or disability benefits law or similar law;

arising from injury to any employee of the INSURED if such injury occurs during and in the course of said employment;

6. arising as a result of liability of others assumed by the INSURED under any contract or agreement;

7. as a result of PROPERTY DAMAGE to:
   a. Property owned or occupied or rented to the INSURED.
   b. Property used by the INSURED.
   c. Property in the care, custody or control of the INSURED or as to which the INSURED is for any purpose exercising physical control;

8. arising out of the ownership, maintenance, use, operation, loading or unloading of any automobile, aircraft, watercraft or rolling stock;

9. for which there is other similar insurance except that this policy shall apply as excess over any such other similar insurance;

10. A. Under any Liability Coverage, to BODILY INJURY or PROPERTY DAMAGE
    (1) with respect to which an INSURED under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (2) resulting from the HAZARDOUS PROPERTIES of NUCLEAR MATERIAL and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the INSURED is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Liability Coverage, to BODILY INJURY or PROPERTY DAMAGE resulting from the HAZARDOUS PROPERTIES of NUCLEAR MATERIAL, if
    (1) the NUCLEAR MATERIAL (a) is at any NUCLEAR FACILITY owned by, or operated by or on behalf of, an INSURED or (b) has been discharged or dispersed therefrom;
    (2) the NUCLEAR MATERIAL is contained in SPENT FUEL or WASTE at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an INSURED; or
    (3) the BODILY INJURY or PROPERTY DAMAGE arises out of the furnishing by an INSURED of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any NUCLEAR FACILITY, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to PROPERTY DAMAGE to such NUCLEAR FACILITY and any property thereat.

    C. As used in this exclusion:

    "HAZARDOUS PROPERTIES" include radioactive, toxic or explosive properties;

    "NUCLEAR MATERIAL" means SOURCE MATERIAL, SPECIAL NUCLEAR MATERIAL or BYPRODUCT MATERIAL;

    "SOURCE MATERIAL", "SPECIAL NUCLEAR MATERIAL", and "BYPRODUCT MATERIAL" have the meanings given them in the Atomic Energy Act of 1954 or in any law, amendatory thereof;

    "SPENT FUEL" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a NUCLEAR REACTOR;

    "WASTE" means any waste material (1) containing BYPRODUCT MATERIAL and (2) resulting from the operation by any person or organization of any NUCLEAR FACILITY included within the definition of NUCLEAR FACILITY under paragraph (a) or (b) thereof;

    "NUCLEAR FACILITY" means
    (a) any NUCLEAR REACTOR,
    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing SPENT FUEL, or (3) handling, processing or packaging WASTE,
    (c) any equipment or device used for the processing, fabricating or alloying of SPECIAL NUCLEAR MATERIAL if at any time the total amount of such material in the custody of the INSURED at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of WASTE,

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    "NUCLEAR REACTOR" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    "PROPERTY DAMAGE" includes all forms of radioactive contamination of property;

11. arising from the disposal of acids, alkalis, toxic chemicals, liquids or gases, waste material or other pollutants into specific disposal sites unless such specific disposal site is entered in Item 5 of the Declarations;

29700 (9/80)

12. arising out of goods or products manufactured, sold, handled or distributed by the INSURED or by others trading under his name including any container thereof, any reliance upon a representation or warranty made at any time with respect thereto, but only if the BODILY INJURY or PROPERTY DAMAGE occurs away from premises owned by or rented to the INSURED and after physical possession of such products has been relinquished to others;

arising out of operations performed by or on behalf of the INSURED or reliance upon a representation or warranty made at any time with respect thereto, but only if the PERSONAL INJURY or PROPERTY DAMAGE occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the INSURED. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

   a. When all operations to be performed by or on behalf of the INSURED under the contract have been completed.
   b. When all operations to be performed by or on behalf of the INSURED at the site of the operations have been completed, or
   c. When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

14. due to PROPERTY DAMAGE to goods or products manufactured, sold, handled or distributed by the INSURED arising out of such goods or products or any part thereof, or due to PROPERTY DAMAGE to work performed by on or on behalf of the INSURED arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

15. based upon or attributable to any INSURED'S willful or deliberate non-compliance with any statute, regulation, ordinance or instruction of any governmental body;

16. based upon or attributable to acid rain conditions;

## V. EXTENDED DISCOVERY PERIOD

The provisions of this Clause shall only apply if a period of at least 12 months has elapsed from the date set forth in Item 7 of the Declarations when the NAMED INSURED seeks to exercise the option hereunder.

The NAMED INSURED shall be entitled to an extension of this coverage on non-renewal or cancellation of the policy subject to the following terms and conditions:

   Where cancellation or non-renewal is by the Company the NAMED INSURED shall be entitled to purchase 12 months extension from the date of cancellation or expiration of the policy upon payment of an additional premium of 25% of the premium shown in Item 6 of the Declarations.

2. Where cancellation or non-renewal is by the NAMED INSURED, the NAMED INSURED shall be entitled to purchase 12 or 24 months extension from the date of cancellation or expiration of the policy upon payment of 25% for 12 months or 60% for 24 months of the premium shown in Item 6 of the Declarations.

The extension of coverage granted hereunder shall only apply as respects POLLUTION CONDITIONS existing as of or prior to the date of expiration or cancellation of this policy, and otherwise covered by this policy. It is a condition precedent to the operation of the rights granted under this clause that payment of the appropriate premium shall be made not later than ten days after expiration in the case of non-renewal or prior to cancellation in the case of cancellation.

For purposes of this clause the quotation of different terms and conditions by the Company shall not be construed as non-renewal.

## VI. LIMIT OF LIABILITY AND RETENTION

This policy is only to pay 90% of any LOSS in excess of the retention amount stated in Item 4 of the Declarations. The retention amount is to be borne by the INSURED and is not to be insured. LOSS arising out of POLLUTION CONDITIONS at any one site or arising from related circumstances shall be considered as a single loss and only one retention amount shall apply thereto.

Subject to the foregoing, the Company's total liability for all LOSSES during the POLICY PERIOD and inclusive of the EXTENDED DISCOVERY PERIOD if the right is exercised by the NAMED INSURED shall be the Limit of Liability shown in Item 3 of the Declarations.

The inclusion herein of more than one INSURED shall not serve to increase the Company's limit of liability.

## VII. CLAIM OR SUIT PROVISIONS

a. This policy shall only apply to claims or suits, which are covered hereunder, and which are first made against the INSURED and reported to the Company during the POLICY PERIOD, or during the EXTENDED DISCOVERY PERIOD if applicable.

b. In the event of a claim or suit immediate written or oral notice containing particulars sufficient to identify the INSURED and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the INSURED to the Company or any of its authorized agents. In the event of oral notice, the INSURED agrees to furnish a written report as soon as possible.

29700 (9/80)

c. If claim is made or suit is brought against the INSURED, the INSURED shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

d. No costs, charges or expense shall be incurred without the Company's consent which shall not be unreasonably withheld. The Company shall have the right but not the duty to designate legal counsel to associate in the investigation of claims and the defense of suits. The Company shall be kept informed of all settlement discussions. If the Company recommends settlement of any claim or suit and the INSURED refuses to consent to such settlement, liability for LOSS shall be limited to that portion of the amount of the settlement recommended by the Company and the costs, charges and expenses as of the time of the INSURED'S refusal which exceed the retention and fall within the Limit of Liability. The INSURED shall not settle any claim or suit without the Company's consent. The INSURED shall not admit liability.

e. The Company shall have the right but not the duty to assume the adjustment of any claim or the defense of any suit. In case of the exercise of this right, the INSURED, on demand of the Company, shall promptly reimburse the Company for any element of LOSS falling within the INSURED'S retentions. The INSURED shall assist and cooperate with the Company.

## VIII. CONDITIONS

1. INSPECTION AND AUDIT — The Company shall be permitted but not obligated to inspect the INSURED'S property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the INSURED or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

   The Company may examine and audit the INSURED'S books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

2. CANCELLATION — This policy may be cancelled by the NAMED INSURED by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the NAMED INSURED at the address shown in this policy, written notice stating when not less than 30 days (10 days for non-payment of premium) thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the POLICY PERIOD. Delivery of such written notice either by the NAMED INSURED or by the Company shall be equivalent to mailing.

   If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

3. DECLARATIONS — By acceptance of this policy, the INSURED agrees that the statements in the declarations and application are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance.

4. ACTION AGAINST COMPANY — No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the Company.

   Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the INSURED to determine the INSURED'S liability, nor shall the Company be impleaded by the INSURED or his legal representative. Bankruptcy or insolvency of the INSURED or of the INSURED'S estate shall not relieve the Company of any of its obligations hereunder.

5. ASSIGNMENT — Assignment of interest under this policy shall not bind the Company until its consent is endorsed thereon.

6. SUBROGATION — In the event of any payment under this policy, the Company shall be subrogated to all the INSURED'S rights of recovery therefor against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The INSURED shall do nothing after loss to prejudice such rights.

7. CHANGES — Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

8. SOLE AGENT — The INSURED first named in Item 1 of the declarations shall act on behalf of all INSUREDS for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, giving and receiving notice of cancellation or non-renewal, and the exercise of the rights provided in the EXTENDED DISCOVERY PERIOD clause.

WITNESS WHEREOF the Company has caused this policy to be signed by its president and secretary and countersigned on the declarations page by a duly authorized agent of the Company.

*[signature]*  
Secretary

*[signature]*  
President

29700 (9/80)