# EXHIBIT F

Form EIL 881

# Environmental Impairment Liability Policy

**THIS IS A CLAIMS MADE POLICY** and is limited to Claims first made against the Insured during the policy period.

## DECLARATIONS

*SPECIMEN COPY*

Named Insured:

Address:

Business of Insured:

Locations:

Territorial Limits:

Limits of Liability:  (a)                                                any one Claim

(b)                                                aggregate for each Policy Period or each Annual Period, whichever is shorter.

Deductibles:    The Insured shall, in respect of any one Claim bear:

The first

Policy Period:

From:

This is a continuous policy subject to 45 days notice of cancellation at the anniversary date.

*SPECIMEN COPY*

The first anniversary date is:

12.01 a.m. standard time at the address of the Insured stated above.

Annual Premium:                                              subject to annual premium review.

1. In consideration of the Premium and subject to the limitations, terms and conditions herein expressed, the Insurers agree to indemnify the Insured against all sums which the Insured shall be obligated to pay for damages by reason of the liability imposed upon the Insured by law or on account of:—

   (a) Personal Injury;

   (b) Property Damage;

   (c) Impairment or diminution of or other interference with any other environmental right or amenity protected by law;

   arising within the Territorial Limits designated in the Declarations and caused by Environmental Impairment in connection with the Business of the Insured at the locations designated in the Declarations and in respect of which a claim has been made against or other due notice has been received by the Insured during the Policy Period.

2. In the event of liability arising as a result of the Insured being held responsible under the concept of joint and several liability for Environmental Impairment caused or contributed to by others Insurers shall indemnify the Insured for such Environmental Impairment Liability including such liability as has been accepted by the Insured under any written contractual agreement existing prior to such Environmental Impairment.

3. Insurers shall reimburse the Insured for costs and expenses of operations designed to remove, neutralize or clean up any substance released or escaped which has caused Environmental Impairment, or could cause Environmental Impairment if not removed, neutralized or cleaned up to the extent that such costs and expenses have been incurred or have become payable by the Insured either in the endeavour to avert or reduce a loss covered by this Policy or for operations outside the Insured's premises as a result of legal obligation provided that such costs and expenses, except in respect of emergency measures undertaken to avert a loss, are incurred with prior written consent of Insurers, such consent not to be unreasonably withheld.

4. Insurers shall reimburse the Insured for all costs and expenses of litigation incurred by the Insured with the written consent of insurers in the defence of any claim covered by this Policy. If suit shall be brought against the Insured on any claim falling within the coverage hereof seeking both damages and fines or penalties then the Insurers will be liable for all costs and expenses of the defence to this action, but without any liability whatsoever for such fines or penalties.

5. In the event that Insurers decline to renew this Policy a discovery period of a minimum period of 12 months shall be made available to the Insured at an additional premium of not more than half of the annual premium but only as respects liability arising out of Environmental Impairment which had occurred prior to the expiration date of this Policy. The Insured must exercise the right to such discovery period before expiry of this policy.

## II EXCLUSIONS

This Policy shall not apply to or include Liability for, nor costs and expenses of or in connection with:—

1. Except in respect of occurrences taking place in the United States of America, its territories or possessions, or Canada, any Environmental Impairment directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

2. Environmental Impairment of whatsoever nature directly or indirectly caused by or contributed to, by or arising from:—

   (a) ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel;

   (b) the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof.

3. (a) Any obligation for which the Insured or any carrier as its insurer may be held liable under Worker's Compensation, unemployment compensation or disability benefits law, or similar law;

   (b) personal injury to any employee of the Insured arising out of and in the course of his employment by the Insured; provided however, that this exclusion does not apply to liability of others assumed by the Insured under contract or agreement.

4. Environmental Impairment, arising out of the Insured's noncompliance with any valid and applicable statute, regulation or written instruction relating to Environmental Impairment issued by competent authority, if, after such noncompliance becomes actually known by any officer or director of the Insured or any employee with specific responsibility for environmental control, the Insured fails to take reasonable and necessary action, in a timely and proper manner, to cure such noncompliance PROVIDED ALWAYS, that until the next renewal date of this Policy, this exclusion shall not apply to the Insured's noncompliance to the extent such is covered by a compliance schedule or programme or waiver of compliance contained in a permit, order or other valid instruction of competent governmental authority.

5. Any amount which the Insured may become obligated to pay for fines or penalties.

6. (a) Improving pre-existing conditions at any premises owned, leased or rented by the Insured or for which the Insured may otherwise be responsible in order to maintain or obtain compliance with any valid and applicable statute, regulations or written instructions issued by competent authority;

   (b) any cleaning-up operations reasonably considered to be routine and normal in connection with the business of the Insured;

   (c) upgrading, monitoring, neutralizing, restoring, landfilling, cleaning up or inactivating any waste disposal sites used directly or indirectly by the Insured or for which they may otherwise be responsible.

   PROVIDED ALWAYS that notwithstanding this exclusion the cover provided by this insurance shall apply, subject to the terms and conditions of this Policy, to Environmental Impairment Liability arising away from any such premises or outside of any such disposal sites.

7. *Environmental Impairment arising from:—*

   *(a) any commodity, article or thing supplied, repaired, altered or treated by the Insured and happening elsewhere than at the Insured's premises after the Insured has ceased to own and exercise physical control over that commodity, article or thing supplied, repaired, altered or treated.*

   *(b) any operations, installations, erections, repairs or treatments performed elsewhere than at the Insured's premises by the Insured for others after such operations, installations, erections, repairs or treatments have been completed.*

*Exclusions printed in italics may be deleted or amended by endorsemen*

8. Environmental Impairment caused by a sudden and accidental happening whether the Environmental Impairment is sudden and accidental or not.

9. Heritable genetic damage or teratagenic damage to persons, animals or plants.

10. Damage to property:

    (a) owned or occupied by or rented to the Insured; or

    (b) used by the Insured; or

    (c) in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control; provided however, that this exclusion does not apply to property while within or upon premises owned by or rented to the Insured for the parking of automobiles.

11. Environmental Impairment arising from the ownership, possession or use by or on behalf of the Insured of:

    (a) any automobile (meaning a land motor vehicle, trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration), including any machinery or apparatus attached thereto;

    (b) any vessel or craft (other than hand-propelled boats) made or intended to float on or in or travel through water, air or space;

    (c) oil or gas drilling platforms situated offshore;

    (d) deep water ports.

12. Noise, vibration or sonic boom arising from the ownership, possession and operation of airports.

13. Environmental Impairment arising from the deliberate and intentional dumping or disposal of toxic or radioactive substances in the open sea.

## III DEFINITIONS

For the purpose of this Policy:—

1. ENVIRONMENTAL IMPAIRMENT is defined as:—

    (a) the emission, discharge, dispersal, disposal, seepage, release or escape of any liquid, solid, gaseous or thermal irritant, contaminant or pollutant into or upon land, the atmosphere or any watercourse or body of water;

    (b) the generation of smell, noises, vibrations, light, electricity, radiation, changes in temperature or any other sensory phenomena but not fire or explosion

    arising out of or in the course of the Insured's operations, installations or premises, all as designated in the Declarations.

2. BUSINESS OF THE INSURED shall include the provision and management of canteens, social, sports and welfare organizations for the benefit of the Insured's employees and first aid, fire and ambulance service.

3. The word "CLAIM" comprises any single claim or any series of claims from one or multiple claimants resulting from the same isolated, repeated or continuing Environmental Impairment.

4. The term "PERSONAL INJURY" means bodily injury, mental anguish, shock, sickness, disease or disability, including death at any time resulting therefrom.

5. The term "PROPERTY DAMAGE" means physical injury to or physical destruction of tangible property, including loss of use of tangible property whether or not physically injured or destroyed.

6. COSTS AND EXPENSES OF LITIGATION incurred by the Insured shall include all costs and expenses of litigation, compromise, settlement, adjustment and investigation of claims and suits which are incurred in connection with any claim as defined herein, but shall exclude the salaries of the Insured's permanent employees.

7. The unqualified word "INSURED" shall include not only the named Insured stated in the Declarations, but also:—

    (a) any officer, director, stockholder, partner or employee of the named Insured while acting in his capacity as such;

    (b) any organization or proprietor with respect to real estate management for the named Insured;

    (c) the personal representatives of the named Insured in respect of liability incurred by the named Insured;

    (d) any person, organization, trustee or estate to whom the named Insured stated in the Declarations is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this Policy, but only in respect of operations by or on behalf of the named Insured or of facilities of the named Insured or used by them;

    PROVIDED ALWAYS that the inclusion or addition of more than one Insured shall not operate to increase the aggregate liability of the Insurers beyond the Limits of Liability stated in the Declarations; and PROVIDED FURTHER that each such Insured shall be subject, insofar as applicable, to all the terms and conditions of this Policy.

8. The term "EACH ANNUAL PERIOD" shall mean each consecutive period of one year commencing from the inception date of this Policy.

9. The term "DEEP WATER PORTS" means installations having no structural connections with dry land, for charging and discharging vessels in the open sea.

10. The term "HERITABLE GENETIC DAMAGE" means any defect or abnormality which is passed on from one generation to another.

11. The term "TERATAGENIC DAMAGE" means any abnormality, deformity or damage to any foetus.

*Policy on payment of appropriate additional premium(s).*

## IV INTERPRETATIONS

1. With regard to the Indemnity provided for in the Insuring Agreements, it is expressly noted and agreed as follows:—

   (a) Such indemnity shall not apply to any such costs and expenses incurred in respect of Environmental Impairment for which
      
      (i) claims are excluded in Section II hereof;
      
      (ii) claims covered by this Policy are combined with any claims excluded under Section II hereof (hereinafter referred to as "combined claims").
   
   (b) In respect of any combined claims, the Insurers shall (subject to proof of loss and the Limits of Liability) reimburse the Insured for that portion of the costs and expenses here referred to which may be allocated to the claims covered by this Policy.
   
   (c) Nothing herein shall override nuclear or other exclusions applying under this Policy.

2. In applying the Limits of Liability, any amounts payable by the Insurers in respect of the Indemnity provided in Insuring Agreements 1, 2, 3 and 4 shall be included and the amounts borne by the Insured in respect of the Deductibles shall be excluded from the calculation.

3. The Deductibles shall be applied to the total amount paid or payable by the Insured for damages, costs and/or expenses as referred to in Insuring Agreements 1, 2, 3 and 4 above in respect of any one claim.

## V CONDITIONS

1. This Policy and the Declarations shall be read together as one contract and any word or expression to which a specific meaning has been attached in any part of this Policy or of the Declarations shall bear such specific meaning wherever it may appear.

   It is hereby agreed that the statements in the application and declaration and statements made to an ERAS surveyor are the Insured's agreements and representations and that this Policy is issued in reliance upon the truth of such representations and embodies all agreements existing between the Insured and the Insurers or any of their agents relating to this insurance.

2. The Insured shall promptly give written notice to the Insurers of any incident or claim or proceedings relating to the insurance herein expressed as soon as the same shall have come to the knowledge of the Insured.

3. The Insured shall not, without the consent in writing of the Insurers, make any admission or negotiate any offer, promise or payment in connection with any incident or claim related to the insurance herein expressed.

4. The Insurers shall be entitled, if they so desire, to take over and conduct, in the name of the Insured, the defence of any claim and shall have full discretion in the conduct of any proceedings and in the settlement of any claim; and the Insured shall give all such information and assistance as the Insurers may reasonably require.

5. The Insurers shall be entitled, if they so desire, to prosecute in the name of the Insured, at their own expense and for their own benefit, any claim for indemnity or damages or otherwise against any persons and the Insured shall give all such information and assistance as the Insurers may reasonably require.

6. In the event of any payment under this policy the Insurers shall be subrogated to all the Insured's rights of recovery therefore against any person or organisation and the Insured shall give all such information and assistance as the Insurers may reasonably require to secure such rights.

7. If the Premium for this Policy has been calculated on any estimates furnished by the Insured, the Insured shall keep an accurate record containing all particulars relative thereto and shall at all times allow the Insurers to inspect such records.

   If the premium for this Policy is adjustable the Insured shall, within 30 days from the expiry of each Policy Period (or each anniversary date when this policy is written for more than one year) or within such other period as may have been agreed in writing, to furnish the Insurers such particulars and information as the Insurers may require. The Premium for such period shall thereupon be adjusted and the difference paid by or allowed to the Insured, as the case may be.

   If such information is also required for annual premium review, this review must be completed by Insurers within 45 days of receipt of such information and any increase in premium at an annual review shall not be considered as a refusal to renew by Insurers.

8. This Policy shall not be called upon in contribution and no liability shall attach hereunder for any injury, loss, damage, costs or expenses recoverable under any other insurance whether primary or excess insuring to the benefit of the Insured except as regards any excess over and above the amounts collectible under such other insurance; provided always that this clause shall not apply to any policy that is specifically arranged by the Insured to cover limits in excess of those stated in this Policy. Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of any other insurance.

9. If, at any time or from time to time, any change shall occur materially varying any of the facts declared to the Insurers or ERAS Surveyor, if any, prior to the inception of this Policy, or if the Insured shall subsequently receive information indicating material increase in the risks to which this Policy relates, the Insured shall, within thirty (30) days of such change or information becoming known, give notice in writing to the Insurers and the terms of this Policy shall then be subject to renegotiation with regard to any new, additional or increased exposures resulting from such change of information.

10. The Insurers or their representatives shall at all reasonable times have free access to inspect any property and, in the event of any defect or danger being apparent to the Insurers which the Insured can reasonably be expected to correct or minimize, the Insurers, without prejudice to the provisions of Exclusion 4, may give notice in writing to the Insured, and thereupon all liability of the Insurers in respect of such defect or danger or arising therefrom shall be suspended until the same be corrected or minimized to the satisfaction of the Insurers.

    Neither the rights of Insurers and any other person or organisation to make such inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Insured or others to determine or warrant that such property is safe or in compliance with any law, rule or regulation.

11. It is hereby agreed that should there be no judicial or otherwise official determination as to the allocation in cases of "combined claims" as referred to in paragraph 1 of the Interpretation Section the Insured will submit such determination or allocation to arbitration to be conducted by an arbitrator acceptable to all Parties. Within the United States such arbitration is to be made by the American Arbitration Association.

12. Assignment of interest under this Policy shall not bind Insurers unless their consent is given in writing.

13. No action shall lie against Insurers unless as a condition precedent thereto there shall have been full compliance with all terms and conditions of this policy.

INTERNATIONAL INSURANCE CO./ISLIC (Alexander Howden, Etc.) - EIL Application

# Pollution Liability & Cleanup Coverage
## PROPOSAL FORM

Please complete a separate Proposal for each manufacturing location

1  Name and address of Proposer:

2  Name and address of location (if different from 1)

3  Name and address of Company legally responsible for the location (if different from 1)

4  a) Total number of people employed and wage roll at location:

   i  Non-manual     number          wages
   ii All others     number          wages

   b) Gross Receipts

5  Products or finished goods produced and/or stored at location:
   (use separate sheet if space here provided insufficient)

   Description                      Output per year           Maximum quantity
                                                              stocked any one time

6  Please list:

   a) Major raw materials used at location

   b) Raw materials used in minor quantities which constitute a hazard in the context of this proposal

   Description                      Quantity used per year    Maximum quantity
                                                              stocked any one time

(use separate sheet if space here provided insufficient)

A-0613 Rev. 3/78

**7    Has there been any change in process during the last 5 years that has altered (lessened or increased) the risk of environmental impairment?**

If so, give details

___

**8    Do you have an environmental safety committee or any employees vested with specific responsibility for environmental control?**

If so, describe their duties and to whom they report

___

**9    Are there any statutes, standards, or other regulations relating to the protection of the environment which apply to the location but with which you cannot at present comply?**

If so, give details

___

**10   Effluent discharge and other liquid waste:**
Please complete the following schedule

| Analysis (where known): | Discharge to: Sewer | River | Sea | How many years have you so discharged? | Quantity last year |
|---|---|---|---|---|---|
| Oxygen demand | | | | | |
| Suspended solids | | | | | |
| Temperature | | | | | |
| Toxic metals | | | | | |
| Cyanide | | | | | |
| Pesticides/Herbicides | | | | | |
| Other organic chemicals | | | | | |
| Grease/oil | | | | | |
| Nutrients | | | | | |
| pH (measurement of acidity or alkalinity in any liquid solution) | | | | | |

**11   Effluent semisolid and solid waste removed other than by discharge to sewer, river or sea:**

Quantity per year

Composition

Who removes it?
If not yourselves, for how long have they carried out this task?

Where is it deposited?

Who owns the tip(s)?

How long have tips been used for your waste?

___

**12   Air emissions:**

Nature of any emissions

Quantity (where known)

Composition (where known)

Number and height of chimneys and other extraction units that vent into the open

Are you required to comply with any emission standards?

Have you ever had complaints about smell noise or dirt from the location?

___

**13  Waste treatment plant (if any):**

Supply main technical data, year of installation and of last inspection/overhaul/adaptation and whether in use always or only intermittently:

To reduce the concentration of contaminants in the effluent

To reduce air emission

To recycle, re-use or separate out materials from the process wastes

**14  Pipelines and storage tanks:**
Please supply details of:

Type, capacity and content of storage tanks at location

Dimensions, lengths and purpose of any pipelines leading to and/or from the location

**15  The location's environment:**
Distance from location to any of the following:

|  | less than 3 miles | radius 3 to 13 miles |
|---|---|---|
| Agriculture | | |
| Industry | | |
| Residential area | | |
| Tourist/recreation area | | |
| Forests | | |

Are there any nature conservation areas within 13 miles radius or in or surrounding a waterway into which you discharge?

If so, please describe

Please describe nature of other industries located within radius of 3 miles.

**16  Record:**

Have you during last 5 years been prosecuted for contravention of any standard or law relating to the release from the location of a substance into sewers rivers sea air or on to land?

If so, give details

Have you during last 5 years been claimed against by Third Parties for injury or damage or nuisance caused by operations at the location?

If so, give details

At the time of signing this proposal, are you aware of any environmental impairment arising from operations at the location that may give rise to a claim in the future?

If so, give details

**17 Extent of cover:**

Certain standard exclusions contained in the Policy Form EIL 1276 may be deleted upon satisfactory additional information being supplied and subject to an appropriate additional premium. Indicate which of the exclusions listed hereafter you require to be deleted and give brief reasons for your request.

| Exclusions to be deleted | Reason for this request |
|---|---|
| Exclusion 5 (a) | |
| Exclusion 5 (b) | |
| Exclusion 5 (c) | |
| Exclusion 6 | |
| Exclusion 7 | |
| Exclusion 8 | |
| Exclusion 9 | |
| Exclusion 10 | |
| Exclusion 11 | |

**18 Limit of indemnity required:**

I/We declare that the above statements and particulars are true and that I/We have not suppressed or mis-stated any facts which we consider material. I/We agree that this declaration shall become a part of the contract between me/us and the Insurers.

Signed on behalf of the Proposers on (date) .................................................................................

By ..........................................................    ..........................................................

(Please enclose any brochure describing the operations carried out at the location if available)

**19**                            **SUPPLEMENT TO**

**ENVIRONMENTAL IMPAIRMENT LIABILITY INSURANCE**
**(Non Marine Pollution Liability & Cleanup)**

**COVERAGE PROPOSAL FORM**

Please complete the following:

A) Complete description of proposer's business.

B) Have any processes or products or activities been discontinued during the last five years? Should any of the above apply, please give details.