12. arising out of goods or products manufactured, sold, handled or distributed by the INSURED or by others trading under his name including any container thereof, any reliance upon a representation or warranty made at any time with respect thereto, but only if the BODILY INJURY or PROPERTY DAMAGE occurs away from premises owned by or rented to the INSURED and after physical possession of such products has been relinquished to others;

arising out of operations performed by or on behalf of the INSURED or reliance upon a representation or warranty made at any time with respect thereto, but only if the PERSONAL INJURY or PROPERTY DAMAGE occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the INSURED. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

   a. When all operations to be performed by or on behalf of the INSURED under the contract have been completed.

   b. When all operations to be performed by or on behalf of the INSURED at the site of the operations have been completed, or

   c. When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

14. due to PROPERTY DAMAGE to goods or products manufactured, sold, handled or distributed by the INSURED arising out of such goods or products or any part thereof, or due to PROPERTY DAMAGE to work performed by on or on behalf of the IN-SURED arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

15. based upon or attributable to any INSURED'S willful or deliberate non-compliance with any statute, regulation, ordinance or instruction of any governmental body;

16. based upon or attributable to acid rain conditions;

## V. EXTENDED DISCOVERY PERIOD

The provisions of this Clause shall only apply if a period of at least 12 months has elapsed from the date set forth in Item 7 of the Declarations when the NAMED INSURED seeks to exercise the option hereunder.

The NAMED INSURED shall be entitled to an extension of this coverage on non-renewal or cancellation of the policy subject to the following terms and conditions:

   Where cancellation or non-renewal is by the Company the NAMED INSURED shall be entitled to purchase 12 months extension from the date of cancellation or expiration of the policy upon payment of an additional premium of 25% of the premium shown in Item 6 of the Declarations.

2. Where cancellation or non-renewal is by the NAMED INSURED, the NAMED INSURED shall be entitled to purchase 12 or 24 months extension from the date of cancellation or expiration of the policy upon payment of 25% for 12 months or 60% for 24 months of the premium shown in Item 6 of the Declarations.

The extension of coverage granted hereunder shall only apply as respects POLLUTION CONDITIONS existing as of or prior to the date of expiration or cancellation of this policy, and otherwise covered by this policy. It is a condition precedent to the operation of the rights granted under this clause that payment of the appropriate premium shall be made not later than ten days after expiration in the case of non-renewal or prior to cancellation in the case of cancellation.

For purposes of this clause the quotation of different terms and conditions by the Company shall not be construed as non-renewal.

## VI. LIMIT OF LIABILITY AND RETENTION

This policy is only to pay 90% of any LOSS in excess of the retention amount stated in Item 4 of the Declarations. The retention amount is to be borne by the INSURED and is not to be insured. LOSS arising out of POLLUTION CONDITIONS at any one site or arising from related circumstances shall be considered as a single loss and only one retention amount shall apply thereto.

Subject to the foregoing, the Company's total liability for all LOSSES during the POLICY PERIOD and inclusive of the EXTENDED DISCOVERY PERIOD if the right is exercised by the NAMED INSURED shall be the Limit of Liability shown in Item 3 of the Declarations.

The inclusion herein of more than one INSURED shall not serve to increase the Company's limit of liability.

## VII. CLAIM OR SUIT PROVISIONS

   a. This policy shall only apply to claims or suits, which are covered hereunder, and which are first made against the INSURED and reported to the Company during the POLICY PERIOD, or during the EXTENDED DISCOVERY PERIOD if applicable.

   b. In the event of a claim or suit immediate written or oral notice containing particulars sufficient to identify the INSURED and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the INSURED to the Company or any of its authorized agents. In the event of oral notice, the INSURED agrees to furnish a written report as soon as possible.

29700 (9/80)

c.  If claim is made or suit is brought against the INSURED, the INSURED shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

d.  No costs, charges or expense shall be incurred without the Company's consent which shall not be unreasonably withheld. The Company shall have the right but not the duty to designate legal counsel to associate in the investigation of claims and the defense of suits. The Company shall be kept informed of all settlement discussions. If the Company recommends settlement of any claim or suit and the INSURED refuses to consent to such settlement, liability for LOSS shall be limited to that portion of the amount of the settlement recommended by the Company and the costs, charges and expenses as of the time of the INSURED'S refusal which exceed the retention and fall within the Limit of Liability. The INSURED shall not settle any claim or suit without the Company's consent. The INSURED shall not admit liability.

e.  The Company shall have the right but not the duty to assume the adjustment of any claim or the defense of any suit. In case of the exercise of this right, the INSURED, on demand of the Company, shall promptly reimburse the Company for any element of LOSS falling within the INSURED'S retentions. The INSURED shall assist and cooperate with the Company.

## VIII. CONDITIONS

1.  INSPECTION AND AUDIT — The Company shall be permitted but not obligated to inspect the INSURED'S property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the INSURED or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

    The Company may examine and audit the INSURED'S books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

2.  CANCELLATION — This policy may be cancelled by the NAMED INSURED by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the NAMED INSURED at the address shown in this policy, written notice stating when not less than 30 days (10 days for non-payment of premium) thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the POLICY PERIOD. Delivery of such written notice either by the NAMED INSURED or by the Company shall be equivalent to mailing.

    If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

3.  DECLARATIONS — By acceptance of this policy, the INSURED agrees that the statements in the declarations and application are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance.

4.  ACTION AGAINST COMPANY — No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the Company.

    Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the INSURED to determine the INSURED'S liability, nor shall the Company be impleaded by the INSURED or his legal representative. Bankruptcy or insolvency of the INSURED or of the INSURED'S estate shall not relieve the Company of any of its obligations hereunder.

5.  ASSIGNMENT — Assignment of interest under this policy shall not bind the Company until its consent is endorsed thereon.

6.  SUBROGATION — In the event of any payment under this policy, the Company shall be subrogated to all the INSURED'S rights of recovery therefor against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The INSURED shall do nothing after loss to prejudice such rights.

7.  CHANGES — Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

8.  SOLE AGENT — The INSURED first named in Item 1 of the declarations shall act on behalf of all INSUREDS for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, giving and receiving notice of cancellation or non-renewal, and the exercise of the rights provided in the EXTENDED DISCOVERY PERIOD clause.

WITNESS WHEREOF the Company has caused this policy to be signed by its president and secretary and countersigned on the declarations page by a duly authorized agent of the Company.

Marion E. Fapin
Secretary

President

29700 (9/80)

Exhibit C

INSURANCE SERVICES OFFICE  (Used by PLIA, INA, Continental and Others)

GL 00 29
(Ed. 10/81)

-1-

BLANK INSURANCE COMPANY

(A _____ insurance company, herein called the company)[4]


Pollution Liability Insurance


[THIS IS A CLAIMS MADE POLICY - PLEASE READ CAREFULLY][1]


In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof, and subject to all terms of this policy, the company agrees with the named insured as follows:

I.  POLLUTION LIABILITY COVERAGE

   A.  The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as compensatory damages because of bodily injury or property damage to which this insurance applies, provided that:

      (1)  such bodily injury or property damage is caused by a pollution incident which commences subsequent to the retroactive date shown in the declarations of this policy; and

      (2)  the claim for such damages is first made against the insured during the policy period and reported to the company during the policy period or within fifteen days after its termination.

   A claim shall be deemed to have been made only when suit is brought or written notice of such claim is received by either the insured or the company.

   All claims for damages because of bodily injury or property damage sustained by any one person or organization as a result of any one pollution incident shall be deemed to have been made at the time the first of those claims is made.

   The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent. The company may make such investigation and settlement of any claim or suit as it deems expedient. The company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

   B.  The company will reimburse the insured for reasonable and necessary clean-up costs incurred by the insured in the discharge of a legal obligation validly imposed through governmental action which is initiated during the policy period, provided that:

Copyright, Insurance Services Office, 1981

-2-

(1)   such clean-up costs are incurred because of environmental damage to
      which this insurance applies; and

(2)   the environmental damage is caused by a pollution incident which
      commences subsequent to the retroactive date shown in the declarations
      of this policy.

The company shall have the right, but not the duty, to participate at its
expense in any proceeding seeking to impose legal obligations because of
such environmental damage.

The company will also reimburse the insured for other clean-up costs which
the insured incurs, provided that:

(1)   the clean-up costs are reasonable and necessary; and

(2)   during the policy period, the company grants the insured prior
      written consent to undertake the clean-up. The company will grant
      its consent when, in its sole discretion, a pollution incident which
      commences subsequent to the retroactive date shown in the declarations
      of this policy or the threat of a pollution incident presents an
      imminent and substantial danger of bodily injury, property damage, or
      environmental damage to which this insurance applies.


                              EXCLUSIONS

This insurance does not apply:

(a)   to bodily injury, property damage, or environmental damage which is
      expected or intended from the standpoint of the insured;

(b)   to liability assumed by the insured under any contract or agreement,
      but this exclusion does not apply to liability that the insured would
      have in the absence of such contract or agreement;

(c)   to any obligation for which the insured or any carrier as his insurer
      may be held liable under any workers' compensation, unemployment
      compensation, or disability benefits law, or under any similar
      law;

(d)   to bodily injury to any employee of the insured arising out of and
      in the course of his employment by the insured or to any obligation
      of the insured to indemnify another because of damages arising out
      of such injury;

(e)   to property damage or environmental damage to

      (1)   an insured site, or

      (2)   property owned or occupied by or rented to the insured, or


Copyright, Insurance Services Office, 1981

-3-

(3)  property used by the insured, or

(4)  property in the care, custody, or control of the insured or as to which the insured is for any purpose exercising physical control;

(f)  to property damage or environmental damage to premises alienated by the named insured arising out of such premises or any part thereof;

(g)  to bodily injury, property damage, or environmental damage included within the completed operations hazard or the products hazard, and arising out of an emission, discharge, release, or escape which takes place away from any insured site owned by, rented or loaned to a named insured;

(h)  to bodily injury, property damage, or environmental damage arising out of the ownership or operation of any "offshore facility" as defined in the Outer Continental Shelf Lands Act Amendment of 1978 or the Clean Water Act of 1977 as amended 1978, or any "deepwater port" as defined in the Deepwater Port Act of 1974, as amended or as may be amended;

(i)  to bodily injury, property damage, or environmental damage arising out of any pollution incident emanating from a site used for the storage, disposal, processing, or treatment of any waste material, if the pollution incident occurs after the site is no longer in active use because of sealing off, abandonment, alienation, or closure, whether or not in compliance with the requirements of any statute, regulation, ordinance, directive, or order promulgated by any governmental body;

(j)  to bodily injury, property damage, or environmental damage arising out of the ownership, maintenance, operation, use, loading, or unloading of

(1)  any aircraft, automobile, rolling stock, or watercraft owned or operated by or rented or loaned to any insured, or

(2)  any other aircraft, automobile, rolling stock, or watercraft operated by any person in the course of employment by any insured;

(k)  to bodily injury, property damage, or environmental damage arising out of the emission, discharge, release, or escape of drilling fluid, oil, gas, or other fluids from any oil, gas, mineral, water, or geothermal well;

Copyright, Insurance Services Office, 1981

-4-

(1) to bodily injury, property damage, or environmental damage arising
out of a pollution incident which results from or is directly or
indirectly attributable to failure to comply with any applicable
statute, regulation, ordinance, directive, or order relating to the
protection of the environment and promulgated by any governmental
body, provided that failure to comply is a willful or deliberate
act or omission of

    (1) the insured, or

    (2) any named insured, or any member, partner, or executive
        officer thereof;

(m) to bodily injury, property damage, or environmental damage arising
out of acid rain;

(n) to environmental damage outside the United States of America, its
territories or possesions, Puerto Rico, or Canada;

(o) 1. to bodily injury, property damage, or environmental damage

    (a) with respect to which an insured under the policy is
        also an insured under a nuclear energy liability policy
        issued by Nuclear Energy Liability Insurance Association,
        Mutual Atomic Energy Liability Underwriters, or Nuclear
        Insurance Association of Canada, or would be an insured
        under any such policy but for its termination upon
        exhaustion of its limit of liability; or

    (b) resulting from the hazardous properties of nuclear
        material and with respect to which (1) any person
        or organization is required to maintain financial
        protection pursuant to the Atomic Energy Act of 1954,
        or any law amendatory thereof, or (2) the insured is,
        or had this policy not been issued would be, entitled
        to indemnity from the United States of America, or
        any agency thereof, under any agreement entered into
        by the United States of America, or any agency thereof,
        with any person or organization;

   2. under the Supplementary Payments provision relating to first
     aid, to expenses incurred with respect to bodily injury result-
     ing from the hazardous properties of nuclear material and arising
     out of the operation of a nuclear facility by any person or
     organization;

   3. to bodily injury, property damage, or environmental damage
     resulting from the hazardous properties of nuclear material,
     if

    (a) the nuclear material (1) is at any nuclear facility
        owned by, or operated by or on behalf of, an insured
        or (2) has been discharged or dispersed therefrom;

Copyright, Insurance Services Office, 1981

-5-

(b)   the nuclear material is contained in spent fuel
      or waste at any time possessed, handled, used,
      processed, stored, transported, or disposed of by
      or on behalf of an insured; or

(c)   the bodily injury, property damage, or environmental
      damage arises out of the furnishing by an insured of
      services, materials, parts, or equipment in connection
      with the planning, construction, maintenance, operation,
      or use of any nuclear facility, but if such facility
      is located within the United States of America, its
      territories or possessions, or Canada, this exclusion
      (c) applies only to property damage to such nuclear
      facility and any property thereat.

As used in this exclusion:

"hazardous properties" include radioactive, toxic, or explosive
properties;

"nuclear material" means source material, special nuclear material,
or byproduct material;

"source material", "special nuclear material", and "byproduct material"
have the meanings given them in the Atomic Energy Act of 1954 or in
any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or
liquid, which has been used or exposed to radiation in a nuclear
reactor;

"waste" means any waste material (a) containing by-product material
other than the tailings or wastes produced by the extraction or
concentration of uranium or thorium from any ore processed primarily
for its source material content, and (b) resulting from the operation
by any person or organization of any nuclear facility included under
the first two paragraphs of the definition of nuclear facility;

"nuclear facility" means

(a)   any nuclear reactor,

(b)   any equipment or device designed or used for (1) separat-
      ing the isotopes of uranium or plutonium, (2) processing
      or utilizing spent fuel, or (3) handling, processing, or
      packaging waste,

Copyright, Insurance Services Office, 1981

-6-

(c) any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.


### SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company, and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit and premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the insured for first aid to others at the time of any accident, for bodily injury to which this policy applies;

(d) reasonable expenses incurred by the insured at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

Copyright, Insurance Services Office, 1981

-7-

II. PERSONS INSURED

Each of the following is an insured under this policy to the extent set forth below:

(a) if the named insured is designated in the declarations as an individual, the person so designated, but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the named insured with respect to the conduct of such a business;

(b) if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof, but only with respect to his liability as such;

(c) if the named insured is designated in the declarations as other than an individual, partnership, or joint venture, the organization so designated and any executive officer, director, or stockholder thereof while acting within the scope of his duties as such;

(d) any employee of the named insured, other than an executive officer, while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

  (1) to bodily injury to (a) another employee of the named insured arising out of or in the course of his employment, or (b) the named insured, or, if the named insured is a partnership or joint venture, any partner or member thereof;

  (2) to property damage or environmental damage to property owned, occupied or used by, rented to, in the care, custody, or control of, or over which physical control is being exercised for any purpose by (a) another employee of the named insured or (b) the named insured, or, if the named insured is a partnership or joint venture, any partner or member thereof.

This insurance does not apply to bodily injury, property damage, or environmental damage arising out of the conduct of any partnership or joint venture of which the insured is or was a partner or member and which is not designated in this policy as a named insured.

Copyright, Insurance Services Office, 1981

-8-

## III. LIMITS OF LIABILITY AND DEDUCTIBLE PROVISIONS

Regardless of the number of insureds under this policy, the number of claims made or suits brought, or the amount of clean-up costs incurred, the company's liability is limited as follows:

(a) The total liability of the company for all damages because of all bodily injury and property damage to which this insurance applies and all clean-up costs incurred because of all environmental damage to which this insurance applies shall not exceed the limit of liability stated in the declarations as "aggregate".

(b) Subject to the above provision with respect to "aggregate", the total liability of the company in any one pollution incident for all damages because of all bodily injury and property damage and all clean-up costs incurred because of all environmental damage shall not exceed the lesser of:

(1) the limit of liability stated in the declarations as "each pollution incident" reduced by the deductible amount, if any, shown therein, or

(2) the combined amount of such damages and clean-up costs in excess of any such deductible amount.

The company may, or will if required by law, pay part or all of the deductible amount to effect settlement of any claim or suit; and upon notification of the action taken, the named insured shall promptly reimburse the company for such part of the deductible amount as has been paid by the company.

## IV. POLICY TERRITORY

This insurance applies only to bodily injury, property damage, or environmental damage caused by a pollution incident emanating from an insured site in the United States of America, its territories or possessions, Puerto Rico, or Canada, but not to any such bodily injury or property damage for which original suit for damages is brought elsewhere.

## V. EXTENDED REPORTING PERIOD OPTION

If, for any reason other than non-payment of premium, the company cancels or refuses to renew this policy, the named insured may:

(1) by giving written notice to the company on or before the effective date of the cancellation, or no later than ten days after the effective date of non-renewal; and

Copyright, Insurance Services Office, 1981

(2)  by paying promptly when due an additional premium of not
     more than 50% of the annual premium developed under this
     policy,

have an endorsement issued providing an extended reporting period of one
year following the effective date of the cancellation or non-renewal.
Any claims for damages because of bodily injury or property damage first
made against the insured and reported to the company during that extended
reporting period shall be deemed to be so made and reported during the
policy period, but only if the bodily injury or property damage occurred
prior to the effective date of the cancellation or non-renewal. All other
provisions of this policy, including those relating to the company's limit
of liability, shall be unchanged by this provision.

For the purpose of this provision, failure of the company to offer to
renew this policy at the same rates or with the same form shall not con-
stitute cancellation or non-renewal by the company.

VI.  DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

"automobile" means a land motor vehicle, trailer, or semitrailer
designed for travel on public roads (including any machinery or
apparatus attached thereto), but does not include mobile equipment;

"bodily injury" means bodily injury, sickness, or disease sustained by
any person, including death at any time resulting therefrom;

"clean-up costs" means expenses for the removal or neutralization of
contaminants, irritants, or pollutants;

"completed operations hazard" includes bodily injury, property damage,
and environmental damage arising out of operations or reliance upon a
representation or warranty made at any time with respect thereto, but
only if the bodily injury, property damage, or environmental damage
occurs after such operations have been completed or abandoned and
occurs away from premises owned by or rented to the named insured.
"Operations" include materials, parts, or equipment furnished in
connection therewith. Operations shall be deemed completed at the
earliest of the following times:

Copyright, Insurance Services Office, 1981

-10-

(1)  when all operations to be performed by or on behalf of the named insured under the contract have been completed, or

(2)  when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3)  when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair, or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury, property damage, or environmental damage arising out of:

(1)  operations in connection with the transportation of property unless the bodily injury, property damage, or environmental damage arises out of a condition in or on a vehicle created by the loading or unloading thereof, or

(2)  the existence of tools, uninstalled equipment, or abandoned or unused materials;

"environmental damage" means the injurious presence in or upon land, the atmosphere, or any watercourse or body of water of solid, liquid, gaseous, or thermal contaminants, irritants, or pollutants;

"insured" means any person or organization qualifying as an insured in the "Persons Insured" provision of this policy. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

"insured site" means

(1)  the specific location or part thereof specified as such in the declarations of this policy, or

(2)  any site to which waste materials were legally consigned or delivered by a named insured for storage, disposal, processing, or treatment, provided that the site

Copyright, Insurance Services Office, 1981

-11-

    (a)  is not and was never owned by, operated by, rented or
         loaned to a named insured; and

    (b)  was duly authorized for such storage, disposal,
         processing, or treatment under a permit issued by
         state or federal authority and in force at the
         time of all such consignment or delivery.

The coverage with respect to an "insured site" under part (2) of this
definition shall be excess insurance over any other valid and collectible
insurance available to the insured;

"mobile equipment" means a land vehicle (including any machinery or
apparatus attached thereto), whether or not self propelled, (1) not
subject to motor vehicle registration, or (2) maintained for use
exclusively on premises owned by or rented to the named insured, including
the ways immediately adjoining, or (3) designed for use principally off
public roads, or (4) designed or maintained for the sole purpose of
affording mobility to equipment of the following types forming an integral
part of or permanently attached to such vehicle: power cranes, shovels,
loaders, diggers, and drills; concrete mixers (other than the mix-in-transit
type); graders, scrapers, rollers, and other road corstruction or repair
equipment; air-compressors, pumps, and generators, including spraying,
welding, and building cleaning equipment; and geophysical exploration and
well servicing equipment;

"named insured" means the person or organization named in Item 1 of the
declarations of this policy;

"named insured's products" means goods or products manufactured, sold,
handled, or distributed by the named insured or by others trading under
his name, including any container therefor (other than a vehicle); but
"named insured's products" shall not include a vending machine or any
property other than such container rented to or located for use of others
but not sold;

"pollution incident" means emission, discharge, release, or escape of any
solid, liquid, gaseous, or thermal contaminants, irritants, or pollutants
directly from the insured site into or upon land, the atmosphere, or any
watercourse or body of water, provided that such emission, discharge,
release, or escape results in environmental damage.  The entirety of any
sudden or gradual emission, discharge, release, or escape from an insured
site shall be deemed to be one "pollution incident";

Copyright, Insurance Services Office, 1981

-12-

"products hazard" includes bodily injury, property damage, and environ-
mental damage arising out of the named insured's products or reliance
upon representation or warranty made at any time with respect thereto,
but only if the bodily injury, property damage, or environmental
damage occurs away from premises owned by or rented to the named
insured and after physical possession of such products has been
relinquished to others;

"property damage" means (1) physical injury to, destruction of, or con-
tamination of tangible property, including the loss of use thereof at any
time resulting therefrom, or (2) loss of use of tangible property which
has not been physically injured, destroyed, or contaminated but has been
evacuated, withdrawn from use, or rendered inaccessible because of a
pollution incident.

## VII. CONDITIONS

1. PREMIUM

   All premiums for this policy shall be computed in accordance with the
   company's rules, rates, rating plans, premiums, and minimum premiums
   applicable to the insurance afforded herein.

   Premium designated in this policy as "advance premium" is a deposit
   premium only which shall be credited to the amount of the earned
   premium due at the end of the policy period. At the end of each
   period (or part thereof terminating with the end of the policy
   period) designated in the declarations as the audit period, the earned
   premium shall be computed for such period and, upon notice thereof to
   the named insured, shall become due and payable. If the total earned
   premium for the policy period is less than the premium previously
   paid, the company shall return to the named insured the unearned
   portion paid by the named insured.

   The named insured shall maintain records of such information as is
   necessary for premium computation, and shall send copies of such
   records to the company at the end of the policy period and at such
   times during the policy period as the company may direct.

2. INSPECTION AND AUDIT

   The company shall be permitted but not obligated to inspect the named
   insured's property and operations at any time. Neither the company's
   right to make inspections nor the making thereof nor any report
   thereon shall constitute an undertaking, on behalf of or for the
   benefit of the named insured or others, to determine or warrant that
   such property or operations are safe or healthful, or are in compliance
   with any law, rule, or regulation.

Copyright, Insurance Services Office, 1981

-13-

The company may examine and audit the named insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

3. ASSISTANCE AND COOPERATION OF INSURED

The insured shall give written notice to the company as soon as practicable of:

(1) any claim made against the insured; or

(2) any action or proceeding to impose an obligation on the insured for clean-up costs.

The notice shall identify the insured and contain reasonably obtainable information with respect to the time, place, circumstances, and nature of the incident, injury, or damage, including the names and addresses of any persons or organizations sustaining injury or damage and of available witnesses. If a claim is made, a suit is brought, or an action is initiated against the insured, the insured shall immediately forward to the company every demand, notice, summons, or other process received by the insured or the insured's representatives.

The insured and each of its employees shall cooperate with the company and, upon the company's request, assist in (a) making settlements, (b) the conduct of suits or proceedings, and (c) enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured, and any of its members, partners, officers, directors, administrators, stockholders, and employees that the company deems necessary, shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at the insured's own cost, voluntarily make any payment, assume any obligation, or incur any expense.

4. ACTION AGAINST COMPANY

No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance

Copyright, Insurance Services Office, 1981

-14-

afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

5.  OTHER INSURANCE

The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess, or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a)  Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid; and, with respect to any amount of loss not so paid, the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b)  Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

6.  SUBROGATION

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

Copyright, Insurance Services Office, 1981

-15-

7.  **CHANGES**

Notice to any agent or knowledge possessed by any agent or by any
other person shall not effect a waiver or a change in any part
of this policy or estop the company from asserting any right under
the terms of this policy, nor shall the terms of this policy be
waived or changed, except by endorsement issued to form a part
of this policy.

8.  **ASSIGNMENT**

Assignment of interest under this policy shall not bind the company
until its consent is endorsed hereon; if, however, the named insured
shall die, such insurance as is afforded by this policy shall apply
(1) to the named insured's legal representative, as the named insured,
but only while acting within the scope of his duties as such, and (2)
with respect to the property of the named insured, to the person
having proper temporary custody thereof, as insured, but only until
the appointment and qualification of the legal representative.

9.  **CANCELLATION**

This policy may be cancelled by the named insured by mailing to
the company written notice stating when thereafter the cancella-
tion shall be effective.  This policy may be cancelled by the
company by mailing to the named insured, at the address shown
in this policy, written notice stating when not less than thirty
days thereafter such cancellation shall be effective.  The
mailing of notice as aforesaid shall be sufficient proof of
notice.

The effective date of cancellation stated in the notice shall
become the end of the policy period.  Delivery of such written
notice either by the named insured or by the company shall be
equivalent to mailing.

If this policy is issued to comply with any law or regulation
which requires notice of cancellation to any governmental body,
cancellation may not be effected until the required notice has
been provided by the named insured or the company.

If the company cancels, earned premium shall be computed pro rata.
If the named insured cancels, the earned premium shall be the pro
rata earned premium plus 10% of the pro rata unearned premium.
Premium adjustment may be made either at the time cancellation
is effected or as soon as practicable after cancellation becomes
effective, but payment or tender of unearned premium is not a
condition of cancellation.

10.  **DECLARATIONS**

By acceptance of this policy, the named insured agrees that the
statements in the declarations are his agreements and represen-
tations, that this policy is issued in reliance upon the truth
of such representations, and that this policy embodies all agree-
ments existing between himself and the company or any of its
agents relating to this insurance.

Copyright, Insurance Services Office, 1981

Exhibit D

SHAND, MORAHAN / Evanston Insurance Co. - EIL Application

SUBMITTED BY: _____

PRODUCER: _____

ADDRESS: _____

_____ ZIP _____

SURPLUS LINES LICENSE NO.: _____

**ECI**

UNDERWRITING MANAGER

**SHAND, MORAHAN & COMPANY, INC.**
**ONE AMERICAN PLAZA**
**EVANSTON, ILLINOIS 60201**
Telex: 72 4328    Phone: (312) 866-2800

## APPLICATON FOR ENVIRONMENTAL IMPAIRMENT LIABILITY INSURANCE
### (CLAIMS MADE BASIS)

**APPLICANT'S INSTRUCTIONS:**

1. Answer all questions. If the answer to any question is NONE, please state NONE.
2. Application must be signed and dated by owner, partner or officer.
3. Complete a separate application for each site, facility or operation.
4. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.

### (PLEASE TYPE OR PRINT)

1. **APPLICANT**
   a. Full name of all entities to Le Named Insureds: _____

   _____

   b. Principal address: _____

   _____

   c. Location of site or facility: _____

   _____

   d. Business conducted: _____

   e. Corporation ☐  Partnership ☐  Proprietorship ☐  Other ☐ _____

   f. Years in business at this location: _____

   g. Prior experience in this business: _____

   _____

   h. Present affiliation with other firms: _____

   _____

**WASTE STORAGE AND TREATMENT FACILITIES** complete sections 2 through 8.

**WASTE GENERATORS** complete sections 3, 4, 6, 7, 9.

**WASTE TRANSPORTERS** complete sections 6, 7, 10 (& 3 if applicable).

2. **A SITE OR FACILITY**
   a. Describe the ultimate waste disposal methods utilized.  ☐ Landfill  ☐ Incineration  ☐ Other Treatment

   Describe: _____

   _____

   _____

   _____

SM 1410 4/80

b. If any waste materials are temporarily stored on-site for more than 24 hours before ultimate disposal, please describe the wastes that might be so stored (chemical names, loose piles, etc.) and the longest estimated period of time that wastes might be stored before ultimate disposal.

| Types of Waste that might be stored | Nature of Storage | Estimated longest storage period |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

c. Describe for each applicable disposal category, the capacity and life expectancy of the facility.

| Disposal Category | Capacity | Estimated Life Remaining (years) |
|---|---|---|
| Landfill | | |
| Area: used acres | _____ | |
| remaining acres | _____ | _____ |
| Daily Handling Capacity (Specify as tons, cubic yards, drums, etc.) | _____ | |
| Incineration | | |
| Daily Handling Capacity: | _____ tons | _____ |
| Other | | |
| Daily Handling Capacity: (Specify units) | _____ | _____ |

d. Describe for applicable disposal category, how the release or migration of hazardous wastes from the facility is controlled. **Landfill:** (Example: Plastic liner barrier keeps leachate within landfill) _____

_____

**Incinerator:** (Example: Facility is especially designed for high temperature operation to burn hazardous wastes.) _____

_____

**Other:** _____

_____

e. To the best of your knowledge, were there any prior activities at this location which might increase the probability of release or migration of hazardous wastes from the facility? Yes ☐   No ☐. If yes, describe: _____

_____

f. Do you have a preventive maintenance program? Yes ☐   No ☐. If yes, please attach copy or describe: _____

_____

g. Does the disposal facility have official approval by an agency of government? Yes ☐   No ☐. If yes, describe the form of approval (EPA hazardous Waste Disposal permit, local permit to operate, etc.). _____

_____

3. PROTECTION OF FACILITY OR TERMINAL

a. Describe how access to this location is controlled. _____

_____

b. Describe any systems and/or equipment currently used to monitor the release or migration of hazardous wastes from the facility. _____

_____

_____

c. Is the location subject to periodic flooding or other weather phenomena which might result in damage to the facility or removal of material from the site? _____

_____

4.  EXPOSURES

a. Check the one that most adequately describes the area in which you are located: Industrial ☐   Commercial ☐
   Residential ☐   Rural Agricultural ☐   Other ☐   Describe: _____
   _____

b. Describe immediate adjacent properties: _____
   _____

c. State the horizontal distance to the nearest surface water: _____

   State vertical distance to the water table: _____

d. Identify persons, other than employees, who regularly enter or have duties at this location: _____
   _____

5.  WASTE TYPES

a. Describe in detail the types of waste currently accepted at this facility (chemical names, if known, or other identifica-
   tion), their method of containment, and estimated quantities for the coming year.

| Type of Waste (Chemical name, if known) | Containment Method (Drums, loosebulk, etc.) | Estimated Quantities for year (tons, cubic yards, drums, etc. Specify) |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

b. If waste material from prior activities remain at this site, please describe them (chemical names, if known, or other
   identification), how they are presently contained (drums on surface, drums buried in landfill, loose solids on surface,
   etc.), and their estimated quantities.

| Type of Waste | Present Containment | Total Estimated Quantities (specify units) |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

c. List five major customers and their waste: _____
   _____
   _____

d. Describe types of waste not accepted at this location: _____
   _____

6.  CLAIM HISTORY

a. Individual losses including deductibles and/or defense costs:

| Date of Claim | Describe Impairment and Injury or Damage | Amount Paid and Reserved | Date Evaluated |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

details: _____

c. Have you ever been accused or prosecuted for failure to comply with any federal, state or local statute or regulation relating to the protection of the environment? Yes ☐   No ☐. If yes, please describe: _____
_____

d. Are you presently in compliance with all statutes and regulations? Yes ☐   No ☐. If yes, please describe: _____
_____

## 7.  LOSS PREVENTION & CONTROL

a. Designate the person(s) responsible for environmental protection:

   i) at this site or facility: _____

   ii) Corporate official: _____

b. Is there a written plan to minimize damage in the event an incident takes place? Yes ☐   No ☐. If yes, please attach copy.

c. Is there a written procedure for obtaining information concerning complaints from workers or other persons? Yes ☐   No ☐. If yes, please attach.

d. Is a formal health and safety program conducted for employees? Yes ☐ No ☐. If yes, please describe: _____
_____

## 8.  OTHER CONSIDERATIONS

a. State number of persons employed at this location and the annual payroll: _____
_____

b. State the projected annual income and/or budget for this location: _____
_____

c. State your current Workers Compensation experience modification: _____
_____

## 9.  GENERATORS

a. Describe the operations and/or processes which produce solid or liquid wastes that require landfilling, permanent container storage, incineration, or some other bulk disposal method.

| Operation/Process | Manufactured Product | Raw Materials |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

| Identity Waste (chemical name, if known) | Waste Form (liquid, solid, sludge, etc.) | Quantity Per Year (tons, cubic yds., drums, etc.) |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**4.** **EXPOSURES**

b. If any waste materials are temporarily stored on-site for more than 24 hours before ultimate disposal, please describe the wastes that might be so stored, the nature of storage, and the longest estimated period of time that wastes might be stored before ultimate disposal.

| Types of Waste that might be stored | Nature of Storage | Estimated longest storage period |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

c. Describe the location of your waste disposal facilities. ☐ On manufacturing/Processing Site    ☐ Off-site

   i) If, off-site, state whether disposal facility is operated by:   ☐ Self  ☐ Contractor.

   ii) If, off-site, state whether transport to facility is performed by:   ☐ Self  ☐ Contractor.

d. If contractor hauls your waste to the disposal site, please name: _____
_____

e. Was the location originally designed for its current usage? Yes ☐   No ☐. If no, please explain: _____
_____

f. Does the facility have offical approval by an agency of government? Yes ☐   No ☐. If yes, describe the form of approval (EPA Hazardous Waste Disposal permit, local permit to operate, etc.).

**10.** **TRANSPORTERS**

a. Describe the wastes transported, means of transportation for each, method of containment during transport, and quantity of waste materials expected to be transported during the coming year.

| Wastes Transported (Give chemical name, if known) | Transportation Means (Truck, barge, etc.) | Containment Method (drums, tank, etc.) | Estimated Quantity (tons, cubic yards, drums etc. Specify) |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

b. Describe occupancy of the areas through which each waste type is transported (i.e. towns, residential, rural, agricultural etc.): _____
_____
_____
_____
_____
_____

c. Are vehicles used in transportation of waste used for other activities? Yes ☐   No ☐. If yes, please describe use:
_____
_____

d. Are waste materials ever temporarily stored at a facility under your ownership or management while awaiting transport to a disposal site? ☐ Occasionally   ☐ Usually   ☐ No. If occasionally or usually, complete part 3.

e. Does the *disposal facility* have offical approval by an agency of government? Yes ☐   No ☐. If yes, describe the form of approval (EPA Hazardous Waste Disposal permit, local permit to operate, etc.). _____
_____

f. Do the *waste transportation activities* described in this application have formal approval by an agency of government
Yes ☐   No ☐. If yes, describe the form of approval (local permit to operate, etc.). _____

_____

ATTACH A COPY OF THE FOLLOWING:

1. A map or sketch of this location and surrounding areas.

2. Applicant's last annual report or financial statement.

3. Other material describing your facilities and/or operations.

NOTICE TO APPLICANT: The coverage applied for is SOLELY AS STATED IN THE POLICY, which provides coverage on a
"CLAIMS MADE" basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY
PERIOD.

The undersigned authorized officer of the Applicant represents that to the best of his knowledge the statements herein are
true, and it is agreed that this application shall be the basis of the contract and shall be deemed incorporated therein
should the insurer evidence its acceptance of this application by issuance of a policy. It is agreed that this application
shall be on file with the insurer, and that it shall be deemed to be attached to and made part of the policy, if issued, as if
physically attached to the policy.

Shand, Morahan & Company, Inc., Underwriting Manager for the insurer, is hereby authorized to make any investigation
and inquiry in connection with this application as it deems necessary.

The Undersigned hereby authorizes the release of loss information from any prior insurer to Shand, Morahan & Company,
Inc., Underwriting Manager for the insurer.

Dated at _____ this _____ day of _____, 19 ____.


_____
(Exact Corporate Name of Applicant)

By _____
(Signature and Title of Officer)*

*SIGNING OF THIS FORM DOES NOT BIND THE APPLICANT OR THE INSURER OR THE UNDERWRITING MANAGER
TO COMPLETE THE INSURANCE. Application MUST be currently signed and dated to be considered for quotation.


ADDITIONAL EXPLANATION TO THE QUESTIONS DESIGNATED

Question
#

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Exhibit E